## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YUSEF SALAAM, RAYMOND SANTANA, KEVIN RICHARDSON, ANTRON BROWN AND KOREY WISE, **Plaintiffs,** | CIVIL ACTION |
| **v.** | NO. 24-5560 |
| DONALD J. TRUMP, **Defendant.** | |

## <u>OPINION</u>

Plaintiffs Yusef Salaam, Raymond Santana, Kevin Richardson, Antron Brown, and Korey Wise have sued Defendant Donald J. Trump for certain comments he made about them during the 2024 Presidential Election cycle. The only issue before the Court is whether Plaintiffs' claims for defamation, false light, and intentional infliction of emotional distress ("IIED") can survive given Pennsylvania's Uniform Public Expression Protection Act, otherwise known as its Anti-Strategic Lawsuits Against Public Participation Statute (Pennsylvania's "Anti-SLAPP Statute," or "the Statute"), 42 Pa. Cons. Stat. § 8340.11, *et seq.*

Specifically, Defendant's challenge here to Plaintiffs' Amended Complaint is not brought under the typical mechanism through which litigants move to dismiss pleadings in federal court—Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). Rather, Defendant specifically states that he is not moving to dismiss Plaintiffs' Amended Complaint under Rule 12(b)(6), but only under Pennsylvania's Anti-SLAPP Statute.[1]

---

[1] In challenging Plaintiffs' initial Complaint, Defendant similarly invoked a portion of the Anti-SLAPP Statute, 42 Pa. Cons. Stat. § 8340.15(1)(ii). At oral argument regarding that Motion, his counsel acknowledged that whether the Court applied his arguments under the Statute or the usual standard under Rule 12(b)(6) was a matter of swings and roundabouts—it would not impact the outcome of the Court's analysis, and so it was determined that "there is no

For the reasons set forth below, Pennsylvania's Anti-SLAPP Statute (a state law) does not apply here, in federal court.  Accordingly, Defendant's Motion shall be denied.

## I.      BACKGROUND

The facts underlying Plaintiffs' Amended Complaint are spelled out at length in the Court's prior opinion in this matter, *Salaam v. Trump*, __ F. Supp.3d __, 2025 WL 1075034 (E.D. Pa. Apr. 10, 2025), but are briefly summarized herein.

Plaintiffs were convicted—in large part based on four of them providing coerced, recorded, false confessions—in connection with a string of violent crimes that occurred in New York City's Central Park in April 1989.  When another individual confessed that it had been him, not any of the Plaintiffs, who had raped and assaulted one of the victims of the crimes, the Manhattan District Attorney's Office reopened its investigation into the crimes.  Ultimately, all Plaintiffs' convictions were vacated and the indictments dismissed.  Although the media attached to Plaintiffs the moniker the "Central Park Five," Plaintiffs now refer to themselves as "The Exonerated Five."

Over the years, Defendant has commented on Plaintiffs' convictions and exonerations numerous times:

- In 1989, after Plaintiffs were identified as suspects, but before their indictments, Defendant took out a full-page advertisement, which contained the headline: "BRING BACK THE DEATH PENALTY.  BRING BACK OUR POLICE!"  And in the body of the ad, Defendant commented, in part, how he "want[ed] to hate these muggers and murderers," and how Plaintiffs "should be executed for their crimes."

- In 2013, Defendant—on Twitter (now, X)—described a film documenting Plaintiffs' convictions and exonerations as a "one sided piece of garbage that didn't explain the.horrific [sic] crimes of these young men while in park [sic]."  A few months later,

---

need to address at [that] juncture whether the Anti-SLAPP statute applies in federal court." *Salaam v. Trump*, __ F. Supp.3d __, 2025 WL 1075034, at *4 n.3 (E.D. Pa. Apr. 10, 2023).  Because Defendant forswears any reliance on Rule 12(b)(6) in bringing his Motion, the issue is now squarely presented.

Defendant was asked on the same platform: "How do you feel that the central park 5 were innocent." He responded: "Innocent of what—how many people did they mugg [sic]?"

- A year after that, Defendant authored an editorial in the wake of Plaintiffs' settling a civil lawsuit against the City of New York for their wrongful convictions, describing the settlement as a "disgrace;" stating that Plaintiffs did "not exactly have the pasts of angels;" and asking "[w]hat about the other people who were brutalized that night, in addition to the jogger?"

- In 2019, while Defendant was serving his first term as President, a reporter confronted him: "The Central Park Five, they've been exonerated, there have been movies and videos . . . . You came out with a full-page ad saying they should die, they should have the death penalty." Defendant replied: "Why do you bring that question up now? It's an interesting time to bring it up. You have people on both sides of that. They admitted their guilt. If you look at Linda Fairstein and if you look at some of the prosecutors, they think that the City should never have settled that case. So we'll leave it at that."

The comment that sparked this lawsuit was made by Defendant during his 2024 Presidential campaign when he faced off against then-Vice President and Democratic Nominee for President, Kamala Harris, in a televised debate (the "Debate"), hosted by the National Constitution Center in Philadelphia. During a portion of the Debate concerning "race and politics," Harris commented, "[l]et's remember, this is the same individual [referring to Defendant] who took out a full-page ad in The New York Times calling for the execution of five young Black and Latino boys who were innocent, the Central Park Five. Took out a full-page ad calling for their execution." About sixty seconds later, after some back and forth between Harris and the Debate's moderators, Defendant said:

> This is the most divisive presidency in the history of our country. There's never been anything like it. They're destroying our country. And they come up with things like what she just said going back many, many years when a lot of people including Mayor Bloomberg agreed with me on the Central Park Five. They admitted—they said, they pled guilty. And I said, well, if they pled guilty they badly hurt a person, killed a person ultimately. And if they pled guilty—then they pled we're not guilty. But

this is a person that has to stretch back years, 40, 50 years ago because there's nothing now.

## II.     THE *ERIE* DOCTRINE

Pennsylvania's Anti-SLAPP Statute's applicability is in question because, according to the seminal case, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), a state law—like the Statute here—only applies in federal court in certain situations.  Under *Erie* and its progeny (cases which have collectively been christened, "the *Erie* doctrine") state laws are sorted into two buckets: substantive law and procedural law.  *Liggon-Redding v. Est. of Sugarman*, 659 F.3d 258, 262 (3d Cir. 2011).  The general rule is that federal courts sitting in diversity jurisdiction—like the Court is today—apply state substantive law, but they do not apply state procedural law. *Id.*

"Under *Erie*, a court assesses the substantive/procedural dichotomy with the objective that 'the outcome of the litigation in the federal court [will] be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.'" *Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 302 (3d Cir. 2012) (quoting *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945)). "This 'outcome determinative test' focuses on the 'twin aims' of discouraging forum shopping and avoiding 'the inequitable administration of the laws.'" *Id.* (quoting *Hanna v. Plumer,* 380 U.S. 460, 468 (1965)).

But the *Erie* doctrine contains a caveat.  Before engaging in the outcome-determinative test, "a court must determine whether there is a direct collision between a federal rule and the state law or rule that the court is being urged to apply." *Liggon-Redding*, 659 F.3d at 262.  Put another way, courts must determine whether a Federal Rule "answer[s] the same question" as the state law.  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398-99

(2010). If there is a direct collision (*i.e.*, if the state law and Federal Rule answer the same question), and the Federal Rule is "constitutional and within the scope of the Rules Enabling Act" (the statute authorizing the creation of the Federal Rules of Civil Procedure), then the Court must apply the Federal Rule—the Court may not engage in the outcome-determinative test or concern itself with advancing *Erie*'s twin aims. *Chamberlain v. Giampapa*, 210 F.3d 154, 159 (3d Cir. 2000); *Shady Grove*, 559 U.S. at 398.

## III.      DISCUSSION

Here, the analysis begins and ends with the direct collision between the Federal Rules and the Anti-SLAPP Statute, so the Court need "not wade into *Erie*'s murky waters." *Shady Grove*, 559 U.S. at 398 (citing *Hanna*, 380 U.S. at 469-71)).

### A.  The Federal Rules Directly Collide with § 8340.15

The primary provision of the Statute that Defendant relies upon is one purporting to create an immunity from suit. That provision, 42 Pa. Cons. Stat. § 8340.15 ("Section 8340.15," "§ 8340.15," or "the Section"), reads:

> A person is immune from civil liability for a cause of action based on protected public expression if any of the following paragraphs apply:
>
> (1) The party asserting the cause of action based on protected public expression fails to:
>
>> (i) establish a prima facie case as to each essential element of the cause of action; or
>
>> (ii) state a cause of action upon which relief can be granted.
>
> (2) There is no genuine issue as to any material fact, and the person against whom the cause of action based on protected public expression has been asserted is entitled to judgment as a matter of law in whole or in part.

42 Pa. Cons. Stat. § 8340.15.[2]

This Court has previously dismissed Plaintiffs' Complaint without prejudice as to their IIED claim and defamation-by-implication theory under Rule 12(b)(6), meaning that they had "failed to state" those claims. *Salaam*, 2025 WL 1075034, at *9 n.11, 10-11. But because said Complaint was their first shot at pleading, Plaintiffs were given leave to amend their Complaint and supplement their factual allegations (Plaintiffs did so, and the Amended Complaint is now the operative pleading). *Id.* at *11. In Defendant's view, the prior dismissal—because of the determination that Plaintiffs had failed to state some claims—means that he is now immune from such claims by virtue of § 8340.15.[3] Defendant argues that there can be no direct collision between § 8340.15 and the Federal Rules, because the Section incorporates the Federal Rules' standards. As Defendant sees it, "[i]f two rules are the same, they do not conflict," but he does not cite any authority for that proposition—nor does he meaningfully engage with the issue of whether the Section and the Federal Rules answer the same question.[4]

---

[2] Section 8340.15 kicks in only when a plaintiff brings a cause of action based on "protected public expression." Plaintiffs do not contest that Defendant's comments were "protected public expression" for purposes of this Motion.

[3] It is not obvious whether Defendant's invocation of immunity is procedurally proper. In § 8340.16 of the Anti-SLAPP Statute, the Pennsylvania legislature provided a mechanism permitting litigants to file a "special motion for dismissal" predicated on the "immunity" Defendant invokes. 42 Pa. Cons. Stat. § 8340.16(a). But there is no dispute that § 8340.16 is not yet in effect. *See also Jakes v. Youngblood*, __ F. Supp.3d __, 2025 WL 1208276, at *2 (detailing that § 8340.16 is only effective if the Supreme Court of Pennsylvania promulgates a rule giving it effect, which it has yet to do). Because Defendant has explicitly renounced any reliance on the Federal Rules of Civil Procedure, it is not clear through which mechanism he intends to invoke his purported immunity. Nevertheless, "[e]ven assuming that § 8340.15 could apply independently of § 8340.16, the Court holds that § 8340.15 does not apply in federal court." *Id.* at *3.

[4] In previously deciding Defendant's Motion, the Court accepted his concession that the arguments he presented—made both under 42 Pa. Cons. Stat. § 8340.15(1)(ii) and Rule 12(b)(6)—did not depend on whether the Anti-SLAPP Statute applied. *Salaam*, 2025 WL 1075034, at *3 n.3. In other words, because Defendant had brought his Motion purportedly under both the Anti-SLAPP Statute and a Federal Rule, Defendant was forced to concede, and the Court acknowledged, that whether the Anti-SLAPP Statute applied was not a question which required resolution in order for the Court to decide the Motion before it. Nevertheless, Defendant argues that the Court's acceptance of his concession means that the Anti-SLAPP Statute and Rule 12(b)(6) cannot conflict. But that is not the case. First, the footnote Defendant invokes deals with a small subsection of the Statute's immunity provision, § 8340.15(1)(ii), and acknowledges what the Court notes today, that the subsection incorporates language from Rule 12(b)(6). *Id.*

Defendant is correct to note that the language of § 8340.15 and the Federal Rules are remarkably similar; when reading § 8340.15, two Federal Rules of Civil Procedure come to mind. As he points out, § 8340.15 states a party is "immune" if the "party asserting the cause of action," *i.e.*, the plaintiff, "fails to . . . state a cause of action upon which relief can be granted." 42 Pa. Cons. Stat. § 8340.15(1)(ii). Similarly, under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At the pleading stage, Rule 12(b)(6) requires courts to assume that the facts in the complaint are true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 570 (2007). The only question is whether the complaint plausibly states a claim for relief; if so, the complaint "may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable." *Id.* at 556.

But § 8340.15 also provides that a party is immune from suit if "[t]here is no genuine issue as to any material fact, and the person against whom the cause of action based on protected public expression has been asserted is entitled to judgment as a matter of law in whole or in part." 42 Pa. Cons. Stat. § 8340.15(2). That language matches that of Federal Rule of Civil Procedure 56 ("Rule 56"), which governs motions for summary judgment; summary judgment is permitted when "there is no genuine issue as to any material fact and [when] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The summary-judgment standard is more onerous than the motion-to-dismiss standard—courts no longer take everything the plaintiff says as true; "summary judgment is 'put up or shut up' time for the non-moving party," and said party must now present evidence to support its claims. *Piety Foley v. Drexel Univ.*,

---

Second, the footnote does not make a pronouncement about whether § 8340.15—in its entirety—directly collides with the Federal Rules.

2024 WL 3540445, at *3 (E.D. Pa. July 25, 2024) (quoting *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)).

For that reason, according to the Federal Rules, the summary-judgment stage occurs *after* the motion-to-dismiss stage, and after the parties have benefitted from discovery. But that is not the case with § 8340.15. According to the Section, a party is immune if the plaintiff cannot surpass *either* the traditional motion-to-dismiss standard *or* the summary-judgment standard, without the benefit of discovery. Although no appellate court in Pennsylvania—either state or federal—has provided guidance as to whether § 8340.15 directly collides with the Federal Rules due to it blurring the lines between the pleading and summary-judgment stages, one district court in this Circuit has persuasively reasoned that such a collision is inevitable.

In *Jakes v. Youngblood*, __ F. Supp.3d __, 2025 WL 1208276 (W.D. Pa. Apr. 25, 2025), the plaintiff, Jakes, alleged that the defendant, Youngblood, defamed and conspired to defame him by publicizing certain allegations that Jakes had sexually abused him. *Id.* at *1. Youngblood filed a Motion to Dismiss under Pennsylvania's Anti-SLAPP Statute, arguing that he was "immune" from suit. *Id.* In so doing, Youngblood attempted to rely on evidence not found in the operative pleading, which he normally would not have been able to do according to Federal Rule of Civil Procedure 12(b)(6). *Id.* at *3-4.

In evaluating whether § 8340.15 could apply in federal court, Judge William S. Stickman IV acknowledged that the Courts of Appeals have split as to whether other states' anti-SLAPP laws could apply in federal court under *Erie*. *Id.* at *3 (collecting cases).[5] Against that

---

[5] *See also Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1335 (D.C. Cir. 2015) (holding that D.C.'s anti-SLAPP Statute, which required plaintiffs to "demonstrate that 'the[ir] claim is likely to succeed on the merits'" answered the same question as Rules 12 and 56 of the Federal Rules of Civil Procedure, even when the defendant argued that all the statute did was layer on an attorneys fee award onto the normal summary judgment standard (quoting D.C. Code § 16-5502(b))); *La Liberte v. Reid*, 996 F.3d 79, 88 (2d Cir 2020) (holding that California's

backdrop, Judge Stickman concluded that § 8340.15 directly collided with Rules 12(b)(6) and 56. *Id.* Under Rule 12(b)(6), Judge Stickman explained, "a plaintiff can overcome a motion to dismiss by alleging facts sufficient to state a claim that is plausible on its face." *Id.* (citing *Twombly*, 550 U.S. at 570). And, if a "complaint survives a motion to dismiss, a party may move (after discovery but before trial) for summary judgment under Rule 56," which requires that summary judgment be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (citation omitted). In contrast, Judge Stickman noted, § 8340.15 "permits the Court to consider whether there are genuine issues of material fact," during (not after) the pleading stage. *Id.* Because "Rules 12 and 56 answer the same question as § 8340.15"—namely, the Federal Rules and § 8340.15 both "create[] a mechanism for a defendant to resolve a case pre-trial"—the Federal Rules and § 8340.15, Judge Stickman concluded, directly collide. *Id.* at *3-5 (citing *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 274 (9th Cir. 2013) (Kozinski, J., concurring); citing *Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1188 (9th Cir. 2013) (Watford, J., dissenting from denial of rehearing *en banc*) (stating that Rules 12(b)(6) and 56 "establish the exclusive criteria for testing the legal and factual sufficiency of a claim in federal court.")).

Although *Jakes* is not binding on this Court, the undersigned finds its reasoning compelling; Rules 12 and 56 govern how—and at what stage—federal courts may dispose of

---

Anti-SLAPP Statute, which required courts to "determine[] whether the plaintiff ha[d] demonstrated a probability of prevailing on their claim," and to dispose of the complaint if they had not, could not apply in federal court, because it answered the same question as Rules 12 and 56); *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1349-50 (11th Cir. 2018) (holding that Georgia's Anti-SLAPP Statute conflicts with Rules 8, 12, and 56); *Klocke v. Watson*, 936 F.3d 240, 246-48 (5th Cir. 2019) (holding that Texas's Anti-SLAPP Statute, which required that plaintiffs "establish[] by clear and specific evidence a prima facie case for each element of the claim in question" conflicted with Rules 12 and 56); *but see Godin v. Schnencks*, 629 F.3d 79, 86-87 (1st Cir. 2010) (holding that Maine's Anti-SLAPP Statute could be applied in Federal Court).

lawsuits before trial, and § 8340.15 answers that same question. As such, it cannot apply in federal court, unless Rules 12 and 56 violate the Rules Enabling Act (which, as set forth below, they do not). *Shady Grove*, 559 U.S. at 398.

Resisting that conclusion, Defendant argues that *Jakes* is distinguishable from this case. Defendant highlights that, in *Jakes*, Youngblood's arguments and the Court's analysis focused on the fact that § 8340.15 allows defendants to "effectively supplant" the Rule 12(b)(6) standard with the Rule 56 standard. *Jakes*, 2025 WL 1208276, at *4. In Defendant's view, because he does not attempt to rely on documents outside the Amended Complaint (which, under the Federal Rules, he would only be able to do later in the litigation, after discovery, pursuant to Rule 56), his use of § 8340.15 does not create any conflict with the Federal Rules.[6]

But that argument does not carry the day. First, it is unsupported; Defendant does not cite any case for the proposition that a party's intended *application* of a state law (rather than how the state law operates according to its text) drives the direct-collision analysis. And second, even taking Defendant's narrow application of § 8340.15 at face value, "[t]he central difficulty . . . is that even artificial narrowing" of the Section "cannot render" it "compatible with" the Federal Rules. *Shady Grove*, 559 U.S. at 405. As Defendant understands the Section, applying it would mean that Plaintiffs cannot assert an IIED or defamation-by-implication claim against him now, simply because the Court previously determined that they had failed to state such claims and dismissed them without prejudice. But a dismissal without prejudice leaves the door open for a plaintiff to refile—which Plaintiffs did here, and which is the operative

---

[6] In attempting to distinguish *Jakes*, Defendant argues that he is "utilizing the standard under" Rule 12(b)(6). To the extent that such a reference is an invitation to evaluate his arguments about the merits of Plaintiffs' claims under Rule 12(b)(6), it is contrary to his Motion here, which could not be more clear—*i.e.*, that Defendant brings his Motion solely under Pennsylvania's Anti-SLAPP Statute.

complaint. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) ("We have instructed that if a complaint is vulnerable to a 12(b)(6) dismissal, a district court must permit a curative amendment . . . ."); *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1504 (3d Cir. 1996) ("[T]he amended complaint supersedes the original and renders it of no legal effect . . . ." (internal quotations omitted)). *See also* Fed. R. Civ. P. 12(b) (enumerating the reasons a court may dismiss a pleading—a previous dismissal without prejudice not included among them). Even under Defendant's narrow application of § 8340.15, Rule 12(b)(6) and the Section answer the same question: whether the Plaintiffs' Amended Complaint should be dismissed. Therefore, the two rules directly collide. *See Shady Grove*, 559 U.S. at 398-99.[7]

### B. Rules 12 and 56 Do Not Violate the Rules Enabling Act

Because Rules 12(b)(6) and 56 do answer the same question as § 8340.15, the Federal Rules "govern[]—[Pennsylvania's] law not withstanding—unless" the Rules violate the Rules Enabling Act, 28 U.S.C. § 2072. *Shady Grove*, 559 U.S. at 398 (citing *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 5 (1987); *Hanna*, 380 U.S. at 463-64). To determine if the Federal Rule violates the Rules Enabling Act, courts ask whether the Federal Rule "really regulates procedure." *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14 (1941); *see also Shady Grove*, 559 U.S. at 411-12. In making that final determination, "it is not the substantive or procedural nature or purpose of the affected state law that matters, but the substantive or procedural nature of the Federal Rule." *Shady Grove*, 559 U.S. at 410; *Davis v. Hanna Holdings, Inc.*, 771 F. Supp.3d

---

[7] And indeed, Defendant's proposed application of § 8340.15 "flatly contradict[s]," *Shady Grove*, 559 U.S. at 405, Federal Rule of Civil Procedure 15, which requires that "leave [to amend] be freely given." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citing Fed. R. Civ. P. 15(a)). Surely a state law which—as construed by Defendant—creates a one-shot-at-pleading rule directly collides with the Federal Rules command that courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).

552, 572-73 n.13 (E.D. Pa. Mar. 18, 2025) (explaining that, although *Shady Grove* involved a debate between Justices Scalia and Stevens about whether the Rules-Enabling-Act question centers on the nature of the state law or federal law, the Third Circuit is likely to adopt the Scalian view—that it is the substantive-or-procedural nature of the Federal Rule, not the state one, that drives the Rules-Enabling-Act analysis).  It does not matter "whether the [federal] rule affects a litigant's substantive rights; most procedural rules do."  *Shady Grove*, 559 U.S. at 407 (citing *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 445 (1946)).

Defendant does not argue that Rules 12 or 56 are invalid under the Rules Enabling Act, nor could he reasonably do so.  *See, e.g.*, *Carbone*, 910 F.3d at 1357 ("We have little difficulty concluding that Rules . . . 12, and 56 comply with the Rules Enabling Act and the Constitution."); *Jakes*, 2025 WL 1208276, at *5-6.  Because the Federal Rules answer the same question as the Anti-SLAPP Statute, and because such Rules are valid, Section 8340.15 of Pennsylvania's Anti-SLAPP Statute is not applicable here.[8]

## IV.     CONCLUSION

In his briefing, Defendant is adamant that the Court view his Motion as one made solely under Pennsylvania's Anti-SLAPP Statute, and not Federal Rule of Civil Procedure 12(b)(6). Because the Anti-SLAPP Statute does not apply in federal court, and because Defendant has made clear that he has not moved for any relief under a statute or rule that is applicable to this

---

[8] Although Defendant argues that the Anti-SLAPP Statute's attorney's fees, 42 Pa. Cons. Stat. § 8340.18, and interlocutory appeal provisions, *id.* § 8340.17, apply in federal court, he does not in his motion seek relief under either of those provisions.  *See, e.g.*, Fed. R. Civ. P. 54(d)(2)(B) (allowing parties to move for attorney's fees and requiring that such a motion "specify the judgment . . . entitling the movant to the award"); *compare Thomson Reuters Enter. Ctr. GMBH v. Ross Intel. Inc.*, 765 F. Supp.3d 382 (D. Del. 2025) (deciding a summary judgment motion) *with Thomson Reuters Enter. Ctr. GMBH v. Ross Intel. Inc.*, 2025 WL 1488015 (D. Del. May 23, 2025) (subsequently allowing permissive interlocutory appeal upon a party's motion).  As there is not a Motion for Attorney's Fees or Interlocutory Appeal before the Court, the question of whether those provisions of the Anti-SLAPP Statute apply in federal court—and whether they can ever be triggered without an application of § 8340.15—is not addressed.

litigation (such as Rule 12(b)(6)), the Court will not "reframe [his] argument[s] to fit within the Rule 12(b)(6) . . . framework," to address such arguments. *Jakes*, 2025 WL 1208276, at *7.

An appropriate order follows.

BY THE COURT:

/s/ Wendy Beetlestone

_____

WENDY BEETLESTONE, J.