**KLINE & SPECTER, PC**

ATTORNEYS AT LAW

THE NINETEENTH FLOOR
1525 LOCUST STREET
PHILADELPHIA, PENNSYLVANIA 19102

_____

215-772-1000

Charles L. Becker, Esquire
Direct Dial (215) 772-1394
charles.becker@klinespecter.com

July 23, 2025

Patricia S. Dodszuweit, Clerk
Office of the Clerk
United States Court of Appeals for the Third Circuit
21400 United States Courthouse
601 Market Street
Philadelphia, PA 19106-1790

      Re:    *Yusef Salaam, et al. v. Donald J. Trump*
             No. 25-2230

Dear Ms. Dodszuweit:

This letter is responsive to the Court's order directing the parties to address whether the order sought to be appealed by Defendant Donald J. Trump is appealable under 28 U.S.C. § 1291 or otherwise appealable at this time.

The district court's order denying Defendant's motion to dismiss is not a final order appealable under 28 U.S.C. § 1291 or appealable under a federal jurisdictional statute. The question is whether the order is otherwise appealable under the collateral order doctrine. Under this doctrine, an interlocutory decision of a district court is appealable if it falls within "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949). The instant order does not meet the prerequisites of the collateral order doctrine, as set forth below.

### I.    Factual and procedural background

This case arises from a series of assaults that occurred in Central Park in New York City on April 19, 1989. *See* Am. Compl., ¶¶ 16–17, ECF No. 40. Plaintiff-Appellees Yusef Salaam, Raymond Santana, Kevin Richardson, Antron Brown and Korey Wise ("Plaintiffs") were between

14 and 16 years old at the time. They were wrongfully convicted of crimes related to the assaults. *Id.*, ¶¶ 18–19. In December 2002, Plaintiffs were exonerated of all wrongdoing and their convictions were vacated. *Id.*, ¶¶ 32–39.

Since the assaults, Defendant has made repeat false and hateful statements about Plaintiffs beginning shortly after Plaintiffs were first arrested. *Id.*, ¶¶ 67–101. For example, Defendant has falsely claimed that Plaintiffs committed "horrific crimes . . . while in [the] park," that they are "Innocent of what-how [sic] many people did they mugg [sic]," that "these young men do not exactly have the pasts of angels," that they "brutalized [people] that night," that the City's decision to settle their civil lawsuit was a "disgrace," and that they threw the victim "off a building – thrown off a building on top of everything else." *Id.* This harassment campaign continued at the Presidential Debate that occurred in Philadelphia on September 10, 2024. At the debate, Defendant told an audience of over 67 million Americans that Plaintiffs "pled guilty" to having "badly hurt a person, killed a person ultimately." *Id.*, ¶ 44. Plaintiffs never pled guilty to anything. They were never accused or charged with having killed a person. They were exonerated of all charges over 20 years ago. *Id.*, ¶¶ 27–31, 50. Defendant knows that his accusations are false and that Plaintiffs have been fully cleared of all wrongdoing. Defendant has admitted that his conduct is intended to foment "hate and rancor" toward Plaintiffs because by bullying and harassing five vulnerable individuals, Defendant appeals to "people [who] are tired of politically correct." *Id.*, ¶¶ 72–73. Defendant says that he has received tens of thousands of letters from individuals who he says embrace his rhetoric toward Plaintiffs. *Id.*, ¶ 76.

On October 21, 2024, Plaintiffs filed a complaint in the Eastern District of Pennsylvania asserting claims for defamation, false light, and intentional infliction of emotional distress. *See* Compl., ECF No. 1. Defendant moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). *See* Def's First Motion to Dismiss, ECF No. 26–1. Defendant argued that his statements about Plaintiffs were not actionable because they were protected statements of opinion or because they were substantially true. Defendant argued that he was entitled to "immunity" under Pennsylvania's Uniform Public Expression Protection Act ("UPEPA"). *Id.* Under UPEPA, "a person is immune from civil liability for a cause of action based on protected public expression if . . . [t]he party asserting the cause of action . . . fails to . . . state a cause of action upon which relief can be granted." 42 Pa.C.S. § 8340.15. As this language makes clear, UPEPA "immunity" does not vitiate a plaintiff's claims independent of the merits. It does not insulate a defendant from litigation as a threshold matter. Rather, the "immunity" provided by UPEPA is defined by reference to whether a court has dismissed a plaintiff's claim as a substantive matter. In other words, UPEPA immunity is another terms for a judicial ruling dismissing Plaintiffs' claims on the merits.

On April 10, 2025, the district court denied Defendants' motion on the merits with respect to Plaintiffs' defamation and false light claims. *See* April 10, 2025 Op., ECF No. 37. The court dismissed Plaintiffs' IIED claim without prejudice because Plaintiffs had not pleaded physical injuries. *Id.* The court declined to reach the issue of whether UPEPA applies in federal court given Defendant's concession that the standards under UPEPA and Rule 12(b)(6) are functionally the same. *Id.*

Plaintiffs filed an amended complaint that added allegations of physical injury. *See* Am. Compl., ECF No. 40. Defendant moved to dismiss the amended complaint. *See* Second Motion to Dismiss, ECF No. 42–1. In this second motion to dismiss, Defendant renounced any reliance on Rule 12(b)(6) and sought dismissal solely under UPEPA. *Id.* at 1. UPEPA provides for a "special motion for dismissal." However, this procedural construct is currently inoperative because it would require implementation of a Rule of Civil Procedure by the Pennsylvania Supreme Court and the Court has not taken steps to implement such a rule. Defendant otherwise made the same merits arguments previously expressed in the first motion to dismiss. Defendant stated that the district court should treat its prior ruling as law of the case. *Id.* at 15, n. 7.

On June 27, 2025, the district court denied Defendant's second motion to dismiss. *See* June 27, 2025 Op., ECF No. 45. The court noted that "there is no dispute that § 8340.16 is not yet in effect." The Court added that because "Defendant has explicitly renounced any reliance on the Federal Rules of Civil Procedure, it is not clear through which mechanism he intends to invoke his purported immunity." *Id.* at 6, n. 3. The district court held that a UPEPA motion to dismiss could not be brought in federal court. The Court reasoned that, under the *Erie* doctrine, the Federal Rules of Civil Procedure provide the exclusive mechanism for challenging the sufficiency of a complaint and hence that statute procedural rules did not apply. *Id.* at 2. This appeal followed.

## II. Reasons why the collateral order doctrine does not confer jurisdiction

### A. Legal Principles

Under the collateral order doctrine, an interlocutory order is appealable as of right if (1) it "conclusively determine[d] the disputed question"; (2) it "resolve[d] an important issue completely separate from the merits of the action"; and (3) it is "effectively unreviewable on appeal from a final judgment." *Graber v. Doe II*, 59 F.4th 603, 608 (3d Cir. 2023). The analysis here focuses on the second and third prongs.

Under the second prong, the issue under review be "important in a jurisprudential sense." *In re Search of Elec. Commc'ns in the Acct. of chakafattah gmail.com at Internet Serv. Provider Google, Inc.*, 802 F.3d 516, 524 (3d Cir. 2015). "As an additional requirement . . . the collateral appeal of an interlocutory order must 'presen[t] a serious and unsettled question.'" *Nixon v. Fitzgerald*, 457 U.S. 731, 742 (1982) (quoting *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 547 (1949)). The issue on appeal must also be "completely separate from the merits of the action." *Graber*, 59 F.4th at 608.

Under the third prong, an order is "effectively unreviewable on appeal from final judgment" if it involves an immunity that "entails '*an immunity from suit* rather than a mere defense to liability," such as absolute or qualified immunity. *We, Inc. v. City of Philadelphia*, 174 F.3d 322, 325 (3d Cir. 1999) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)) (emphasis in original). "The Supreme Court has repeatedly urged courts to employ caution and restraint, however, in reviewing claims of a right not to stand trial." *Id.* Accordingly, the Third Circuit has declined to extend the doctrine to "private party immunity," such as immunity under the *Noerr-Pennington* doctrine. *Robinson v. Hartzell Propeller, Inc.*, 454 F.3d 163, 172 (3d Cir. 2006). Only

3

immunities that protect "public officials . . . carrying out the discretionary functions of their office," such as absolute, qualified, and Eleventh Amendment immunity, are entitled to interlocutory review. *Id.* at 173.

"The Supreme Court has described these elements as 'stringent' to ensure that the collateral order doctrine does not 'overpower the substantial finality interests § 1291 is meant to further.'" *Id.* (quoting *Will v. Hallock*, 546 U.S. 345, 349–350 (2006)). "If any one prong is not satisfied, jurisdiction is defeated." *Pierce v. Blaine*, 467 F.3d 362, 369 (3d Cir. 2006).

### B. The district court's order does not meet the requirements of the collateral order doctrine.

This Court lacks appellate jurisdiction because the district court's order does not satisfy the second or third prongs of the collateral order doctrine.

#### 1. The second prong

The second prong of the collateral order doctrine asks the underlying order "resolve[d] an important issue completely separate from the merits of the action." *Graber*, 59 F.4th at 608.

Immunity under UPEPA can be invoked in one of two ways: First, "[a] party may file a special motion for dismissal . . . based on a party's protected public expression immunity." 42 Pa.C.S. § 8340.16(a). Second, a party may "assert[] protected public expression immunity through other pleadings and motions under the Pennsylvania Rules of Civil Procedure." 42 Pa.C.S. § 8340.16(c). With regard to the "special motion," UPEPA requests the Supreme Court of Pennsylvania to enact a Pennsylvania Rule of Civil Procedure that would provide for and create such a motion. The Court has not done so. The "special motion" in inoperative under state law.

Here, Defendant conceded that the special motion for dismissal provision is "still awaiting implementation by the Pennsylvania Supreme Court" and renounced any reliance on that provision. ECF No. 42-1 at n. 2; *see also Jakes v. Youngblood*, No. 2:24-CV-1608, 2025 WL 1208276, at *2 (W.D. Pa. Apr. 25, 2025) ("§ 8340.16 is not effective and has no bearing on this litigation. It is not operative law."). Despite this concession, Defendant purported to file a motion to dismiss "under UPEPA." ECF No. 42-1 at 11. Defendant cited no authority that would permit a motion "under UPEPA" when the procedural mechanism established by UPEPA does not exist under Pennsylvania law (to say nothing of federal law).

Defendants has stated that his appeal focuses on whether UPEPA "applies" to Defendant's motion to dismiss. This question is not "important in a jurisprudential sense," nor is it "serious and unsettled," where the UPEPA motion that purported grounds Defendant's motion does not even exist. *Nixon*, 457 U.S. at 742. The availability of UPEPA's special motion to dismiss at best represents a question of Pennsylvania procedural law. This Court does not settle questions of state law. *Sameric Corp. of Delaware v. City of Philadelphia*, 142 F.3d 582, 592 (3d Cir. 1998) ("It is axiomatic that the highest court of a state is the final arbiter of that state's law.").

4

## 2. The third prong

The third prong of the collateral order doctrine considers whether the underlying order is "effectively unreviewable on appeal from a final judgment." *Graber*, 59 F.4th at 608.

Some immunity questions readily satisfy this third prong of the collateral order doctrine. In particular, a denial of immunity is effectively unreviewable on appeal from a final judgment if the "immunity protects . . . the right not to be subjected to trial." *Forsyth v. Kleindienst*, 599 F.2d 1203, 1209 (3d Cir. 1979). Through its focus on the right not to be subject to litigation as a threshold matter, the collateral order doctrine makes a strong distinction between the right not to be subject to litigation and the right not to be subject to liability.

The Supreme Court has cautioned that "[t]here is a 'crucial distinction between a right not to be tried and a right whose remedy requires the dismissal of charges.'" *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 801 (1989) (quoting *United States v. Hollywood Motor Car Co.,* 458 U.S. 263, 269 (1982)). Consistent with the Supreme Court's *Midland* distinction, this Court has held that only immunities protecting "public officials . . . carrying out the discretionary functions of their office" support interlocutory review under the collateral order doctrine *Robinson v. Hartzell Propeller, Inc.*, 454 F.3d 163, 173 (3d Cir. 2006). "[T]he same public policy rationale does not extend to whether a private party defendant should be forced to wait until after a final judgment to remedy an incorrect decision." *Id.*[1]

---

[1] Plaintiffs' claims are brought against Defendant only in his individual capacity for conduct he engaged in while he was a private citizen. *See Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 101 (2009) (noting that for purposes of the collateral order doctrine, "the Court does not engage in an individualized jurisdictional inquiry but focuses on the entire category of which a claim belongs.") (internal citations and quotation marks omitted). In turn, Defendant does not contend that he is immune from participating in civil litigation due to his role as President of the United States. Indeed, Defendant himself has been a frequent plaintiff in civil litigation. *See, e.g.*, *Donald J. Trump, et al.* v. *Paramount Global, et al*, No. 2:24-cv-00236-Z (N.D. Tex.); *Donald J. Trump, et al.* v. *J. Ann Selzer, et al*, No. 4:24-cv-449-RGE-WPK (S.D. Iowa). And civil litigation remains on ongoing priority for Defendant. He recently threatened to sue the Wall Street Journal based on its journalism concerning Defendant's relationship with Jeffrey Epstein. *See* [Exclusive | Jeffrey Epstein's Friends Sent Him Bawdy Letters for a 50th Birthday Album. One Was From Donald Trump. - WSJ](#) (last viewed July 18, 2025) (reporting Defendant's statement that "I'm gonna sue The Wall Street Journal just like I sued everyone else."). More recently, Defendant filed suit against the Wall Street Journal and he has initiated additional litigation as well. *See* https://apnews.com/article/trump-jeffrey-epstein-grand-jury-justice-department-ece8a837f9bd179771f801a765e242e4 (last viewed July 20, 2025); https://www.washingtonpost.com/politics/2025/07/18/trump-bob-woodward-lawsuit-dismissed/ (last viewed July 20, 2025).

Here, the "immunity" conferred by UPEPA does not involve a right to avoid litigation. It applies only if a court rules that the claim must be dismissed either because (1) the plaintiff fails to "establish a prima facie case," (2) the complaint fails to "state a cause of action upon which relief can be granted," or (3) "there is no genuine issue as to any material fact and the [defendant] . . . is entitled to judgment as a matter of law." 42 Pa.C.S. § 8340.15. UPEPA immunity runs parallel with a merits determination. Such "immunity" is categorically different than absolute immunity or qualified immunity, both of which have long been recognized as triggering collateral order jurisdiction. *Cf. Mitchell v. Forsyth,* 472 U.S. 511 (1985) (qualified immunity); *Nixon v. Fitzgerald*, 457 U.S. 731 (1982) (absolute immunity); *B.S. v. Somerset Cnty.*, 704 F.3d 250, 261 & n.3 (3d Cir. 2013) (explaining that whether a defendant is immune from suit based on absolute immunity must be addressed "as a threshold issue" without reaching the merits of the claim).

In this setting, the unavailability of collateral order jurisdiction is underscored by this Court's decision in *We, Inc. v. City of Philadelphia*, 174 F.3d 322 (3d Cir. 1999). There, the plaintiff brought suit against the University of Pennsylvania for reporting suspicious activity occurring on the plaintiff's properties to the City of Philadelphia. *Id.* at 324. The University moved for summary judgment, arguing that it was immune under the *Noerr-Pennington* doctrine, which provides immunity to citizens' petitioning activities protected by the First Amendment. *Id.* at 326–327. The district court denied summary judgment and the University appealed under the collateral order doctrine. The University "liken[ed] *Noerr-Pennington* immunity to the absolute and qualified immunity enjoyed by public officials, the denial of which is immediately appealable under [the collateral order] doctrine." *Id.* at 325. This Court dismissed the appeal for lack of jurisdiction. *Id.* at 330. The Court reasoned that "[c]itizens who exercise their First Amendment rights of free speech and free press enjoy significant protection from defamation liability in order to prevent undue chill on the exercise of those rights," and that "an immunity *from suit* [is not] necessary to prevent an unacceptable chill of those First Amendment rights." *Id.* at 327 (emphasis in original). The Court added that "[w]hile of course there is value—to all but the most unusual litigant—in triumphing before trial, the interest protected by the *Noerr-Pennington* doctrine can be fully vindicated after trial. . . . [A]n order denying *Noerr-Pennington* immunity is effectively reviewable on appeal from a final judgment, and thus is not an appealable collateral order." *Id.* (internal citations and quotation marks omitted).[2]

---

[2] In the District Court, Defendant has been afforded all the rigorous substantive protections available to defamation defendants. The District Court nevertheless correctly found that the complaint was legally sufficient because, among other things (1) Defendant's statements were capable of a defamatory meaning, (2) Defendant's statements were not mere statements of opinion or political rhetoric; they were actionable statements of fact, (3) Plaintiffs have adequately alleged that Defendant acted with actual malice, (4) Defendant failed to demonstrate that his statements were substantially true. While Plaintiffs have focused this brief on jurisdictional questions, as the Court requested, Plaintiffs are confident that the Amended Complaint states a claim for defamation, false light, and IIED, and would welcome a review on the merits.

This case is on all fours with *We*. As with the *Noerr-Pennington* doctrine, UPEPA "grants immunity to those groups or parties exercising the rights to protected public expression" enshrined in the First Amendment so as to prevent those rights from being "chilled through abuse of the judicial process." 42 Pa.C.S. § 8340.12. UPEPA also only confers immunity "from civil liability," rather than immunity from suit. 42 Pa.C.S. § 8340.15. Under *We*, an order denying a defendant's claimed immunity under UPEPA is "effectively reviewable on appeal from a final judgment and thus is not an appealable collateral order." *We*, 174 F.3d at 330. *We* illustrates the clear difference between absolute immunity (which prevents a merits determination in the first instance) and UPEPA immunity (which flows from a merits determination). The collateral order doctrine applies to the former circumstance but not the latter.

## III. Conclusion

The Court should dismiss Defendant's appeal for lack of jurisdiction.

Respectfully submitted,

_____
Shanin Specter
Charles L. Becker
Alexander Van Dyke

CLB/tll