**No. 25-2230**

IN THE

# United States Court of Appeals for the Third Circuit

YUSEF SALAAM, ET AL.,

*Plaintiffs - Appellees*

v.

PRESIDENT DONALD J. TRUMP,

*Defendant - Appellant*

Appeal from the United States District Court for the Eastern District of Pennsylvania, No. 2:24-cv-05560, Hon. Wendy Beetlestone

## BRIEF FOR APPELLANT PRESIDENT DONALD J. TRUMP

Josh Halpern
**JH LEGAL PLLC**
1100 H Street NW Suite 840
Washington, DC 20005
Tel. (610) 405-5531
jhalpern@jhlegalpllc.com

Karin M. Sweigart
Jesse D. Franklin-Murdock
**SWEIGART MURDOCK, LLP**
1160 Battery St. Ste. 100,
San Francisco, CA 94111
Tel.: (415) 873-0123
karin.sweigart@sm-llp.com
jesse@sm-llp.com

Caryn G. Schechtman
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
27th Floor
New York, NY 10020
Tel. (212) 335-4500
caryn.schechtman@dlapiper.com

Dated: May 28, 2026

*Counsel for Appellant President Donald J. Trump*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................... 1

JURISDICTIONAL STATEMENT ....................................................... 5

    A.    The Order Was Conclusive. ........................................... 7

    B.    The Order Resolved an Important Issue Separate from the Merits. .......................................................... 7

    C.    The Order is Effectively Unreviewable After Final Judgment. ............................................................ 9

STATEMENT OF THE ISSUE ............................................................ 11

STATEMENT OF RELATED CASES .................................................. 12

STATEMENT OF THE CASE ............................................................. 12

    A.    Statutory Background .................................................... 12

    B.    Factual and Procedural Background ............................. 14

SUMMARY OF THE ARGUMENT ..................................................... 18

STANDARD OF REVIEW .................................................................. 21

ARGUMENT ..................................................................................... 21

    I.    UPEPA'S IMMUNITY PROVISION DOES NOT CONFLICT WITH THE FEDERAL RULES. ....................... 22

        A.    UPEPA's Section 8340.15(1)(ii) Does Not Conflict with Rule 12(b)(6) .................................................. 22

        B.    The District Court Manufactured a Conflict by Misreading a Different UPEPA Provision the President Never Invoked. ........................................... 25

II.    UPEPA'S IMMUNITY PROVISION IS SUBSTANTIVE BECAUSE FAILURE TO APPLY THE PROVISION IN FEDERAL COURT FRUSTRATES THE TWIN AIMS OF ERIE. ...................................................................30

III.   THERE ARE NO COUNTERVAILING FEDERAL INTERESTS AGAINST APPLYING UPEPA. .....................37

CONCLUSION ..................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbas v. Foreign Pol'y Group, LLC,*
   783 F.3d 1328 (D.C. Cir. 2015) ................................................. 23, 27

*Adelson v. Harris,*
   774 F.3d 803 (2d Cir. 2014) ................................................. 4, 34, 36

*Bank of Hope v. Miye Chon,*
   938 F.3d 389 (3d Cir. 2019) ......................................................... 9

*Barr v. Am. Ass'n of Pol. Consultants, Inc.,*
   591 U.S. 610 (2020) .................................................................. 27

*Batzel v. Smith,*
   333 F.3d 1018 (9th Cir. 2003) ..................................................... 33

*Berk v. Choy,*
   607 U.S. 187 (2026) .......................................................... 21, 22, 24

*Carbone v. Cable News Network, Inc.,*
   910 F.3d 1345 (11th Cir. 2018) ................................................... 27

*Chamberlain v. Giampapa,*
   210 F.3d 154 (3d Cir. 2000) ....................................................... 29

*Chin v. Chrysler LLC,*
   538 F.3d 272 (3d Cir. 2008) ....................................................... 34

*In re City of Phila. Litig.,*
   49 F.3d 945 (3d Cir. 1995) ........................................................ 10

*Cohen v. Beneficial Indus. Loan Corp.,*
   337 U.S. 541 (1949) ........................................................... *passim*

*Commonwealth v. Williams,*
   832 A.2d 962 (Pa. 2003) ........................................................... 27

*CoreCivic, Inc. v. Candide Group, LLC,*
   46 F.4th 1136 (9th Cir. 2022) ...................................................... 4, 26

*Erie R.R. v. Tompkins,*
   304 U.S. 64 (1938) ................................................................. *passim*

*FEC v. Ted Cruz for Senate,*
   596 U.S. 289 (2022) ...................................................................38, 39

*Ferri v. Ackerman,*
   444 U.S. 193 (1979) .........................................................................26

*Gacek v. Am. Airlines, Inc.,*
   614 F.3d 298 (7th Cir. 2010) ...........................................................32

*Gasperini v. Ctr. for Humanities, Inc.,*
   518 U.S. 415 (1996) .........................................................................32

*Geo Grp., Inc. v. Menocal,*
   146 S. Ct. 774 (2026) ........................................................................9

*Godin v. Schencks,*
   629 F.3d 79 (1st Cir. 2010) ................................................... 6, 10, 35

*Gopher Media LLC v. Melone,*
   154 F.4th 696 (9th Cir. 2025) .................................................... 24, 33

*Guaranty Tr. Co. v. York,*
   326 U.S. 99 (1945) ...........................................................................26

*Johnson v. Jones,*
   515 U.S. 304 (1995) ...........................................................................7

*Klocke v. Watson,*
   936 F.3d 240 (5th Cir. 2019) ...........................................................27

*La Liberte v. Reid,*
   966 F.3d 79 (2d Cir. 2020) ...............................................................28

*Leavitt v. Jane L.,*
   518 U.S. 137 (1996) .........................................................................27

iv

*Liberty Synergistics Inc. v. Microflo Ltd.*,
    718 F.3d 138 (2d Cir. 2013) ........................................................ 6

*Los Lobos Renewable Power, LLC v. Americulture, Inc.*,
    885 F.3d 659 (10th Cir. 2018) .................................................. 6, 8

*Makaeff v. Trump Univ., LLC*,
    736 F.3d 1180 (9th Cir. 2013) ..................................................... 24

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985) ...................................................................... 7

*In re Montgomery Cnty.*,
    215 F.3d 367 (3d Cir. 2000) ......................................................... 8

*Montgomery Ward & Co. v. Pac. Indem. Co.*,
    557 F.2d 51 (3d Cir. 1977) .......................................................... 31

*N.J. Carpenters & the Trs. Thereof v. Tishman Const. Corp.
    of N.J.*,
    760 F.3d 297 (3d Cir. 2014) ........................................................ 30

*United States ex rel. Newsham v. Lockheed Missiles & Space
    Co.*,
    190 F.3d 963 (9th Cir. 1999) .................................................. 33, 36

*Nuveen Mun. Tr. v. Withumsmith Brown, P.C.*,
    692 F.3d 283 (3d Cir. 2012) ..................................................... 8, 21

*Paucek v. Shaulis*,
    349 F.R.D. 498 (D.N.J. 2025) .................................. 23, 26, 34, 38

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med.
    Progress*,
    890 F.3d 828 (9th Cir. 2018) ................................................ 4, 23, 29

*Praxis Props., Inc. v. Colonial Sav. Bank, S.L.A.*,
    947 F.2d 49 (3d Cir. 1991) ............................................................ 7

*Riccio v. Sentry Credit, Inc.*,
    954 F.3d 582 (3d Cir. 2020) ........................................................ 21

*Richey v. Showtime Networks Inc.*,
No. 1:24-CV-00134, 2026 WL 867264 (D. Del. Mar. 30,
2026) ................................................................................ 24

*Royalty Network, Inc. v. Harris*,
756 F.3d 1351 (11th Cir. 2014) ................................... 6, 7, 9

*Salaam v. Trump*,
No. CV 24-5560, 2025 WL 2375397 (E.D. Pa. Aug. 15,
2025) ................................................................................ 11

*Salve Regina Coll. v. Russell*,
499 U.S. 225 (1991) .......................................................... 21

*Schmigel v. Uchal*,
800 F.3d 113 (3d Cir. 2015) ............................................. 21

*Schwern v. Plunkett*,
845 F.3d 1241 (9th Cir. 2017) ............................... 10, 11, 35

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) .......................................................... 23

*Snyder v. Phelps*,
562 U.S. 443 (2011) ...................................................... 8, 38

*Van Cauwenberghe v. Biard*,
486 U.S. 517 (1988) ........................................................ 5, 9

*Will v. Hallock*,
546 U.S. 345 (2006) ............................................................ 8

## Statutes

1 Pa. Cons. Stat. § 1925 ...................................................... 27

42 Pa. Cons. Stat. ch. 83 ............................................... 12, 32

42 Pa. Cons. Stat. § 8320.1 ................................................. 14

42 Pa. Cons. Stat. § 8332.8 ................................................. 12

42 Pa. Cons. Stat. § 8340.2 .......................................................... 12

42 Pa. Cons. Stat. § 8340.12 ...................................................... *passim*

42 Pa. Cons. Stat. § 8340.13 .......................................................... 13

42 Pa. Cons. Stat. § 8340.15 ...................................................... *passim*

42 Pa. Cons. Stat. § 8340.16 ................................................ 10, 13, 28

42 Pa. Cons. Stat. § 8340.17 ...................................................... *passim*

42 Pa. Cons. Stat. § 8340.18 ................................................ 11, 13, 31, 34

28 U.S.C. § 1291 .......................................................................... 5

**Other Authorities**

U.S. Const. amend. I ................................................................ *passim*

Fed. R. Civ. P. 12 ..................................................................... *passim*

Fed. R. Civ. P. 56 ................................................................ 17, 23, 25, 28

## INTRODUCTION

This appeal arises from a state-law defamation suit over two sentences spoken during a presidential debate. Tens of millions of Americans watched that night as then-candidate President Donald J. Trump and Vice President Kamala Harris defended their records, answered criticism, and engaged in the rough-and-tumble exchange that defines national political debate. That is the exact level of speech that lies at the center of the First Amendment—the unscripted exchange of views between candidates for the Presidency.

During that debate, Vice President Harris falsely accused President Trump of using "race to divide the American people." To support that empty charge, she invoked a newspaper advertisement President Trump had taken out thirty-five years earlier, after a brutal rape and assault was committed in Central Park. The advertisement concerned the five men—Appellees here—who had confessed to police but had not pleaded guilty in court. President Trump responded that Harris had to reach back "many, many years" because there was "nothing" to support her present accusation. Recalling the events surrounding the advertisement, he stated: "I said, well, if they pled guilty, they badly hurt a person, killed a

1

person ultimately. And if they pled guilty—then they pled, we're not guilty."

Those sentences are the entire basis for this meritless suit. Appellees wrongly claim that the President's use of "pled guilty," rather than "confessed," defamed them, placed them in a false light, and intentionally inflicted emotional distress. They further wrongly allege that those two words caused "post-traumatic stress disorder," "neck pain," "shortness of breath," "trembling," "numbness," and other injuries.

Putting the ridiculous nature of these claims to the side, this is exactly the type of suit Pennsylvania enacted its anti-SLAPP statute, the Uniform Public Expression Protection Act (UPEPA), to address: litigation targeting speech on matters of public significance and threatening to chill participation in public debate. UPEPA grants substantive immunity to defendants sued for the "valid exercise of protected public expression." 42 Pa. Cons. Stat. § 8340.12(1). As relevant here, it confers that immunity at the pleading stage when the plaintiff fails to "state a cause of action upon which relief can be granted." § 8340.15(1)(ii). That standard mirrors Rule 12(b)(6). UPEPA therefore does not conflict with the Federal Rules under an *Erie* analysis; it

comports with them. UPEPA uses the same legal-sufficiency standard and then attaches the substantive consequences Pennsylvania's General Assembly chose: immunity from suit, mandatory fees, and immediate review when immunity is denied.

The district court nevertheless refused to apply UPEPA in federal court on the ground that UPEPA conflicts with the Federal Rules of Civil Procedure. The district court's reasoning was truly bizarre. As with Federal Rule 12(b)(6), UPEPA Section 8340.15(1)(ii) requires dismissal on immunity grounds when "[t]he party asserting the cause of action based on protected public expression fails to . . . state a cause of action upon which relief can be granted." Given that this case is at the pleading stage, this was the UPEPA provision that President Trump naturally invoked. The district court, however, focused on the separate summary judgment provision of UPEPA, Section 8340.15(2), and held that because that summary judgment provision could theoretically be invoked at the pleading stage of a case, UPEPA as a whole conflicts with the Federal Rules and so no provision of it can be applied in federal court.

That was error. A conflict with an uninvoked, severable provision cannot justify refusing to apply the pleading-stage immunity provision

3

that tracks Rule 12(b)(6). Both the Second and Ninth Circuits have rejected such an all-or-nothing approach, instead permitting the application of anti-SLAPP provisions that do not conflict with the Federal Rules (like UPEPA) while striking down or questioning those that do. *See CoreCivic, Inc. v. Candide Group, LLC*, 46 F.4th 1136, 1140 (9th Cir. 2022) ("[W]e have . . . weed[ed] out specific provisions of the law that ran afoul of the *Erie* doctrine and fine-tun[ed] our application of those provisions that remained."); *Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (applying Nevada's anti-SLAPP statute immunity and fee-shifting provisions as "unproblematic" but questioning application of the discovery-limiting provisions). In addition, Section 8340.15(2), properly read, can operate at the summary-judgment stage without creating any collision with the Federal Rules at all. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018), *amended*, 897 F.3d 1224 (directing lower courts to construe anti-SLAPP statutes "to prevent the collision of [ ] state procedural rules with federal procedural rules").

The high stakes of this issue extend well beyond this case. If the erroneous order stands, which it should not, Pennsylvania's anti-SLAPP

statute will protect speakers sued in Pennsylvania court but not speakers sued on the same Pennsylvania-law claims in federal court. That disparity would invite forum shopping, deny defendants the substantive immunity Pennsylvania enacted, and make federal court the one forum where Pennsylvania's protections for public expression disappear. *Erie* does not require that result; it forbids it. The Court should reverse.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction under the collateral order doctrine. Section 1291 gives courts of appeals jurisdiction over "final decisions of the district courts." 28 U.S.C. § 1291. Under *Cohen v. Beneficial Industrial Loan Corp.*, an order is treated as final when it conclusively resolves an important issue, separate from the merits, that would be effectively unreviewable after final judgment. 337 U.S. 541, 546 (1949). The Supreme Court has stated the familiar test this way: an order is immediately appealable when it "(1) conclusively determine[s] the disputed question, (2) resolve[s] an important issue completely separate from the merits of the action, and (3) [is] effectively unreviewable on appeal from a final judgment." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 522 (1988) (internal quotation marks omitted).

The order here satisfies all three requirements. The district court conclusively held, in error, that UPEPA does not apply in federal court because it "directly collides" with the Federal Rules of Civil Procedure. App. 10–14. That ruling presents a threshold legal question separate from the merits of Appellees' defamation, false-light, and intentional-infliction claims. This erroneous order would be effectively unreviewable after final judgment because UPEPA confers immunity from suit—a protection lost once the defendant is forced to litigate.

That conclusion is consistent with every court of appeals that has addressed materially similar orders denying state anti-SLAPP protection in federal court. *See Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 668 (10th Cir. 2018) (refusal to apply New Mexico's anti-SLAPP statute immediately appealable under *Cohen*); *Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1357 (11th Cir. 2014) (same as to Georgia's statute); *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 151 (2d Cir. 2013) (California's statute); *Godin v. Schencks*, 629 F.3d 79, 85 (1st Cir. 2010) (Maine's statute). This Court should reach the same conclusion here and reverse.

### A.    The Order Was Conclusive.

The first *Cohen* requirement is met. An order is conclusive when it "determine[s] the discrete legal question that is the subject of th[e] appeal." *Praxis Props., Inc. v. Colonial Sav. Bank, S.L.A.*, 947 F.2d 49, 56 (3d Cir. 1991). The district court did exactly that. It held, in error, that UPEPA does not apply in federal court. Nothing about that ruling was "open, unfinished, or inconclusive." *See Royalty Network*, 756 F.3d at 1355.

### B.    The Order Resolved an Important Issue Separate from the Merits.

The applicability of UPEPA in federal court is separate from the merits. An issue is separate when it is "significantly different from the fact-related legal issues that likely underlie the plaintiff's claim on the merits." *Johnson v. Jones*, 515 U.S. 304, 314 (1995). This appeal does not ask whether Appellees can prove falsity, fault, damages, or any other element of their claims. It asks whether a federal court sitting in diversity must apply Pennsylvania's protected-public-expression immunity. That is a pure legal question. The district court did not need to decide the "correctness" of Appellees' allegations to answer it. *See Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985). It decided only whether

7

UPEPA and the Federal Rules "directly collide." *See Nuveen Mun. Tr. v. Withumsmith Brown, P.C.*, 692 F.3d 283, 302–03 (3d Cir. 2012) ("Nuveen's choice-of-law arguments involve issues purely of law"). Immediate appeal is appropriate where, as here, denial of immunity "turns on an issue of law." *In re Montgomery Cnty.*, 215 F.3d 367, 373 (3d Cir. 2000); *see also Los Lobos*, 885 F.3d at 665.

The issue is also important. An issue is important under *Cohen* when denying immediate review "would imperil a substantial public interest." *Will v. Hallock*, 546 U.S. 345, 353 (2006). UPEPA protects participation in matters of public significance from being chilled through abuse of the judicial process. *See* 42 Pa. Cons. Stat. § 8340.12(2) ("It is in the public interest to encourage continued participation in matters of public significance. This participation should not be chilled through abuse of the judicial process."). That state-law protection serves interests of the highest order. "Speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder v. Phelps,* 562 U.S. 443, 452 (2011). A ruling that erroneously eliminates UPEPA's protection in federal court therefore "implicates significant constitutional guarantees and values of an

8

exceptionally high order." *See Royalty Network*, 756 F.3d at 1356; *see also*

*Bank of Hope v. Miye Chon*, 938 F.3d 389, 394 (3d Cir. 2019) (order

implicating free speech is "important" under *Cohen*).

## C.    The Order is Effectively Unreviewable After Final Judgment.

The third *Cohen* requirement is satisfied because UPEPA confers

immunity from suit, not merely a defense to liability.

An order is effectively unreviewable when the claimed right would

be lost if review were to wait until final judgment. The paradigmatic

example is a right not to stand trial. When such a right is denied, post-

judgment review comes too late because the right is "irretrievably lost

once trial occurs." *Geo Grp., Inc. v. Menocal*, 146 S. Ct. 774, 783 (2026).

The "critical question" is therefore "whether the essence of the claimed

right is a right not to stand trial." *Van Cauwenberghe*, 486 U.S. at 524

(internal quotation marks omitted).

UPEPA answers that question directly. The statute grants

immunity to defendants sued for "a cause of action based on protected

public expression." 42 Pa. Cons. Stat. § 8340.15. The official comment

explains that UPEPA exists to "protect the defendant from the burdens

of trial, not merely from ultimate judgments of liability." § 8340.17, Unif.

9

L. Cmt. 1 (quoting *Batzel v. Smith*, 333 F.3d 1018, 1025 (9th Cir. 2003)). That is the language of immunity from suit.

UPEPA's structure confirms the same point. Once a UPEPA motion is filed, "all other proceedings in the action are stayed," including discovery and the obligation to respond to the complaint. § 8340.16(e)(1). Further, "[a]n order granting, denying or otherwise determining immunity under [UPEPA] is immediately appealable." § 8340.17. Those provisions are not incidental. They protect the immunity before it is lost through the very litigation burdens the statute is designed to prevent.

This Court has recognized that collateral-order review is proper when state law creates "an underlying substantive right to be free from the burdens of litigation." *In re City of Phila. Litig.*, 49 F.3d 945, 959 (3d Cir. 1995). Other circuits have applied that principle in the anti-SLAPP context. In *Godin*, the First Circuit explained that a state-law interlocutory appeal provision is relevant because it shows that "lawmakers wanted to protect speakers from the trial itself rather than merely from liability." 629 F.3d at 85. And in *Schwern v. Plunkett*, the Ninth Circuit held that Oregon's anti-SLAPP statute granted immunity from suit by "provid[ing] a defendant with the right to not proceed to

10

trial," with the state-law right of immediate appeal corroborating that conclusion. 845 F.3d 1241, 1244–45 (9th Cir. 2017).

The district court reached the same conclusion when it stayed proceedings pending this appeal. As the court explained, "the text and structure of [UPEPA] itself" confirm that "the purpose and effect of the Anti-SLAPP Statute's immunity provision [ ] 'is a right not to stand trial.'" *Salaam v. Trump*, No. CV 24-5560, 2025 WL 2375397, at *1 n.1 (E.D. Pa. Aug. 15, 2025) (quoting *Van Cauwenberghe*, 486 U.S. at 524).

Because the order conclusively and erroneously denied UPEPA's immunity from suit, resolved an important legal issue separate from the merits, and would be effectively unreviewable after final judgment, this Court has jurisdiction under the collateral-order doctrine.

## STATEMENT OF THE ISSUE

Whether a federal court sitting in diversity and applying Pennsylvania law must apply UPEPA's substantive protections, including its grant of immunity from suit, when a plaintiff fails to "state a cause of action upon which relief can be granted," and its mandatory fee-shifting provision for immunized parties. 42 Pa. Cons. Stat. §§ 8340.15(1)(ii), 8340.18.

## STATEMENT OF RELATED CASES

This case has not previously been before this Court, and there are no related cases.

## STATEMENT OF THE CASE

### A.    Statutory Background

Pennsylvania enacted the Uniform Public Expression Protection Act in 2024 to address "lawsuits brought primarily to chill" protected public expression and to "encourage continued participation in matters of public significance." 42 Pa. Cons. Stat. § 8340.12(1)–(2). To accomplish that purpose, UPEPA "grants immunity" to parties exercising the rights of protected public expression. § 8340.12(3)(i). The General Assembly codified UPEPA in Chapter 83 of the Judicial Code, alongside other provisions granting civil immunity. *See* 42 Pa. Cons. Stat. ch. 83, subchs. C, C.1; *id.* § 8332.8 ("Immunity of county probation officers"); *id.* § 8340.2 ("Civil immunity for use of force").

Section 8340.15 is the statute's immunity provision. It creates separate pathways to protected-public-expression immunity. As relevant here, Paragraph (1) provides that a defendant is immune when the claim is based on protected public expression and the plaintiff fails to "state a cause of action upon which relief can be granted." § 8340.15(1)(ii).

12

Paragraph (2) separately provides for immunity when "[t]here is no genuine issue as to any material fact" and the defendant "is entitled to judgment as a matter of law." § 8340.15(2). The first pathway tracks the federal motion-to-dismiss standard; the second tracks the federal summary-judgment standard.

The immunity conferred by Section 8340.15 is substantive. The official comment says so directly: UPEPA immunity is "substantive in nature." § 8340.13, Unif. L. Cmt. 2. The statute is designed to "protect the defendant from the burdens of trial, not merely from ultimate judgments of liability." § 8340.17, Unif. L. Cmt. 1. UPEPA thus does not merely create a procedural device for dismissing claims. It creates a substantive immunity from suit for claims targeting protected public expression.

The rest of the statute reinforces that immunity. Once a UPEPA motion is filed, "all other proceedings in the action are stayed," including discovery and the obligation to file a responsive pleading. § 8340.16(e)(1). If the court grants immunity, the statute makes fees mandatory: "if the party is immune under section 8340.15," the court "shall award the party attorney fees, court costs and expenses of litigation." § 8340.18(a)(1). If

13

the court denies immunity, the order is immediately appealable: "[a]n order . . . denying or otherwise determining immunity under this subchapter is immediately appealable." § 8340.17. And UPEPA creates a separate cause of action—commonly called a "SLAPP-back" claim—when a person "would have prevailed on a ground under section 8340.15" but the court did not make the required immunity determination. § 8320.1(a).

Section 8340.15 is therefore UPEPA's substantive core. The discovery stay protects immunity while the motion is pending. The fee provision attaches a mandatory consequence when immunity is established. The immediate-appeal provision protects immunity when it is denied. And the SLAPP-back provision provides a remedy when the immunity determination should have been made but was not. Together, those provisions implement Pennsylvania's judgment that speakers should not be forced to endure meritless litigation over protected public expression.

## B.  Factual and Procedural Background

This UPEPA case arises from a presidential debate. Appellees—members of the so-called "Central Park Five"—sued President Donald J. Trump for defamation, false light, and intentional infliction of emotional

14

distress based on remarks he made during the September 2024 presidential debate, in the final stretch of his successful campaign to win back the Presidency.

The exchange during the debate concerned events from 1989. After a brutal rape and assault occurred in Central Park, Appellees confessed to the police. App. 63–64. In the days after those crimes, President Trump took out a newspaper advertisement advocating severe consequences for those who had confessed. App. 64. More than three decades later, Appellees were formally exonerated after another inmate confessed to the rape but not the other crimes committed that night. App. 65–67.

The advertisement resurfaced during the 2024 presidential debate. In response to a question about race relations, Vice President Harris falsely accused President Trump of "calling for the execution of five young Black and Latino boys who were innocent." App. 67. President Trump responded that Vice President Harris had to "come up with things . . . going back many, many years . . . because there is nothing now." App. 21; App. 67–68. He then addressed the advertisement and the circumstances surrounding it:

15

"[A] lot of people, including Mayor Bloomberg, agreed with me on the Central Park Five. They admitted—they said they pled guilty. And I said, well if they pled guilty, they badly hurt a person, killed a person ultimately. And if they pled guilty—then they pled we're not guilty." App. 67–68.

That single statement made on the stage of a presidential debate at the height of the campaign is the basis for this suit. Appellees wrongly allege that President Trump defamed them, placed them in a false light, and intentionally inflicted emotional distress by using the phrase "pled guilty" rather than "confessed." App. 45, 49. They seek compensatory damages, punitive damages, and a jury trial. App. 52, 54.

President Trump moved to dismiss the original complaint under Rule 12(b)(6) and UPEPA. The district court did not decide whether UPEPA applied in federal court because, in its view, UPEPA and Rule 12(b)(6) imposed "almost identical" standards, and the President had briefed both. App. 22 n.3 & n.11. The court then dismissed the intentional-infliction claim because Appellees failed to plead physical harm and dismissed the defamation-by-implication theory because Appellees failed to identify what "innuendos and implications" the

16

statement conveyed. App. 32 & n.11, 35. Both dismissals were without prejudice. App. 36.

Appellees amended. Their amended complaint wrongly alleged that the President's debate-stage remarks caused "post-traumatic stress disorder," "insomnia," "nightmares," "hyperventilation," "back pain," "neck pain," "chest pressure," "migraines," and "chronic anxiety." App. 82–83. President Trump again moved to dismiss. *See* App. 4. He invoked UPEPA's pleading-stage immunity provision, Section 8340.15(1)(ii), arguing that the Amended Complaint failed to state a cause of action and that he was therefore entitled to immunity and fees under UPEPA since his statements during the campaign generally, and at the debate specifically, are afforded the highest First Amendment protections. *Id.*

The district court, in error, denied that motion on a threshold ground. It incorrectly held that UPEPA does not apply in federal court because, in its view, the statute "directly collides" with the Federal Rules. App. 11–12, 15–16. But the court did not base that ruling on Section 8340.15(1)(ii), the provision President Trump invoked and the provision that mirrors Rule 12(b)(6). Instead, it erroneously relied on Section 8340.15(2), a separate provision that mirrors Rule 56. App. 11–

17

14. The court then concluded that because it would be inappropriate to apply UPEPA's summary judgment provision at the pleading stage in a federal case, UPEPA conflicts with the Federal Rules and none of its provisions—even ones that admittedly do not conflict with the Federal Rules—could be applied in federal court. App. 11–13. That was error.

The district court did not decide whether UPEPA's immunity and fee-shifting provisions are substantive under *Erie*, nor did it decide whether any countervailing federal interest weighs against applying them.

This appeal followed.

## **SUMMARY OF THE ARGUMENT**

The district court erred in declining to apply UPEPA's substantive immunity provision.

**I.A.** Section 8340.15(1)(ii) does not conflict with Rule 12(b)(6). President Trump invoked Section 8340.15(1)(ii), UPEPA's pleading-stage immunity provision. That provision asks whether the plaintiff has failed to "state a cause of action upon which relief can be granted"—the same standard Rule 12(b)(6) applies when asking whether a complaint fails to state a claim. There is no collision between two provisions that apply the

18

same standard. Rule 12(b)(6) supplies a federal procedural vehicle. UPEPA supplies the substantive consequence Pennsylvania attaches to that showing—immunity from suit, which includes immunity from burdens of litigation, for claims targeting protected public expression.

**I.B.** The district court managed to manufacture a conflict by looking elsewhere. Instead of analyzing the provision President Trump invoked, the court wrongly relied on Section 8340.15(2), a separate provision that parallels summary judgment and was not before the court. A supposed conflict with that uninvoked provision cannot justify refusing to apply Section 8340.15(1)(ii). And in any event, Section 8340.15(2) can operate at the summary-judgment stage, while Section 8340.15(1)(ii) operates at the pleading stage. That error alone is enough to reverse.

**II.** Because the district court stopped at direct collision, it did not decide the remaining *Erie* questions. This Court should reach those questions and hold that UPEPA's immunity provision is substantive under *Erie*. Pennsylvania made a substantive judgment that speakers should not be forced to endure meritless litigation targeting protected public expression. Section 8340.15 is the center of that substantive protection. It determines whether a defendant is entitled to protected-

19

public-expression immunity, and the statute's other protections flow from that determination. If immunity is granted, as it should be here, mandatory fees follow. If immunity is denied, immediate review follows. Those are the mechanisms Pennsylvania chose to enforce a substantive right not to be dragged through litigation for protected speech. Refusing to apply that right in federal court would leave speakers there worse off than identical speakers in Pennsylvania court and invite the exact forum shopping *Erie* forbids.

**III.** Nor is there any countervailing federal interest against applying UPEPA. In fact, the opposite is true. The statute protects speech, petitioning, association, and participation in matters of public significance—the same interests at the core of the First Amendment. Those interests are at their strongest here, where the challenged speech arose during a presidential campaign and concerned political debate of the highest order. Applying UPEPA would not displace the Federal Rules. It would respect Pennsylvania's substantive judgment that immunity from abusive litigation over protected speech is lost if review must wait until final judgment.

The Court should reverse.

## STANDARD OF REVIEW

This Court reviews choice-of-law questions under *Erie* de novo. *Nuveen*, 692 F.3d at 302–03; *see also Salve Regina Coll. v. Russell*, 499 U.S. 225, 239 (1991). The Court likewise reviews questions of statutory interpretation de novo. *Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 587 (3d Cir. 2020).

## ARGUMENT

A federal court sitting in diversity applies state substantive law and federal procedural law. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). This appeal asks whether UPEPA's protected-public-expression immunity applies in federal court. It does.

The *Erie* inquiry has three steps. First, the Court asks whether a Federal Rule "directly collides" with state law by "answer[ing] the question in dispute" differently. *Berk v. Choy*, 607 U.S. 187, 192 (2026). If not, the Court asks whether refusing to apply the state law would frustrate *Erie*'s twin aims: "discourage[ing] forum shopping and avoid[ing] inequitable administration of the law." *Schmigel v. Uchal*, 800 F.3d 113, 119 (3d Cir. 2015). Finally, the Court considers whether any "countervailing federal interests prevent the state law from being applied in federal court." *Id.*

21

Each step points the same way here. Section 8340.15(1)(ii) mirrors Rule 12(b)(6), so there is no direct collision. UPEPA grants a substantive immunity from suit, backed by mandatory fees and immediate review, so refusing to apply it would create the very forum disparity *Erie* forbids. Moreover, no federal interest is served by withholding a state-law protection for speech on matters of public concern.

## I.   UPEPA'S IMMUNITY PROVISION DOES NOT CONFLICT WITH THE FEDERAL RULES.

### A.   UPEPA's Section 8340.15(1)(ii) Does Not Conflict with Rule 12(b)(6).

There is no "direct collision" between UPEPA's immunity provision and Federal Rule of Civil Procedure 12(b)(6). *Berk*, 607 U.S. at 201. The reason is simple: Section 8340.15(1)(ii) applies the same standard as Rule 12(b)(6), and UPEPA then attaches substantive consequences to that showing—immunity, fees, and others—that the Federal Rules do not address.

Start with the text. UPEPA provides that a defendant is entitled to protected-public-expression immunity when the plaintiff fails to "state a cause of action upon which relief can be granted." 42 Pa. Cons. Stat. § 8340.15(1)(ii). Rule 12(b)(6) likewise authorizes dismissal when the plaintiff fails "to state a claim upon which relief can be granted." Fed. R.

22

Civ. P. 12. There is no difference between those formulations; they are the same. The district court recognized as much, explaining that UPEPA "does not change" the analysis of whether the complaint adequately states a claim. App. 22 n.3. By definition, these identical standards cannot collide. *See Paucek v. Shaulis*, 349 F.R.D. 498, 514 (D.N.J. 2025) (Bumb, C.J.) (applying New Jersey's UPEPA statute in federal court because it "'answer[s] the same question about the circumstances under which a court must dismiss a case before trial' in the same way as Federal Rules 12 and 56").

To the contrary, a collision exists only when state and federal law "flatly contradict each other." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 405 (2010). That is why courts have found no direct collision where anti-SLAPP statutes do not impose pleading or evidentiary burdens different than the Federal Rules. *See Planned Parenthood*, 890 F.3d at 834 (holding no collision with Rule 12(b)(6) when an anti-SLAPP motion to strike is "based on alleged deficiencies in the plaintiff's complaint"); *see also Abbas v. Foreign Pol'y Group, LLC*, 783 F.3d 1328, 1335 (D.C. Cir. 2015) (Kavanaugh, J.) (finding direct collision because state law imposed burdens "different from and more difficult for

23

plaintiffs to meet" than Rules 12 and 56); *accord Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1189 (9th Cir. 2013) (Watford, J., dissenting from denial of rehearing en banc) (anti-SLAPP statutes collide when they "stiffen[] the Rule 12 standard" for surviving dismissal).

In addition, there is no direct collision because the two provisions actually answer different questions. *See Berk*, 607 U.S. at 192–93. Rule 12(b)(6) supplies a procedural vehicle and a pleading standard. Section 8340.15(1)(ii) borrows that very standard and attaches substantive consequences to that showing—immunity, fees, and others—that the Federal Rules do not address. The "question in dispute," therefore, is whether a defendant who shows that a claim targeting protected public expression fails as a matter of law is entitled to UPEPA's immunity from suit. No Federal Rule answers that question, much less answers it differently from UPEPA. *See Richey v. Showtime Networks Inc.,* No. 1:24-CV-00134, 2026 WL 867264, at *5 (D. Del. Mar. 30, 2026) (Bibas, J., sitting by designation); *Gopher Media LLC v. Melone*, 154 F.4th 696, 706 & n.4 (9th Cir. 2025) (Bennett, J., concurring). For that additional reason, there is no direct collision between Section 8340.15(1)(ii) and Rule 12(b)(6).

**B.    The District Court Manufactured a Conflict by Misreading a Different UPEPA Provision the President Never Invoked.**

The district court wrongly found a conflict only by shifting the focus away from the provision actually at issue. President Trump moved under Section 8340.15(1)(ii), the Rule 12(b)(6)-equivalent provision, and confined his arguments to the four corners of the Amended Complaint. *See* App. 13. Rather than decide whether that provision conflicts with Rule 12(b)(6), the district court turned to Section 8340.15(2), a separate provision governing cases in which "[t]here is no genuine issue as to any material fact" and the defendant "is entitled to judgment as a matter of law." App. 11–14. The court then read that provision to import a Rule 56-style inquiry into the pleading stage, declared a conflict with Rules 12 and 56, and refused to apply UPEPA at all. App. 12–13. That was wrong, at least twice over.

*First*, Section 8340.15(2) was not before the court. President Trump did not invoke it. He did not ask the district court to resolve factual disputes, weigh evidence, or apply a summary-judgment-like standard at the pleading stage. He invoked only Section 8340.15(1)(ii), which tracks Rule 12(b)(6). A supposed conflict involving an uninvoked statutory

provision cannot justify refusing to apply a separate provision that creates no conflict at all. That is not how *Erie* works.

*Erie* does not license federal courts to invalidate state law wholesale whenever one provision could theoretically create procedural friction not presented in the case being decided. Rather, *Erie*'s purpose is to ensure that "the outcome of the litigation in the federal court should be substantially the same . . . as it would be if tried in a State court." *Guaranty Tr. Co. v. York*, 326 U.S. 99, 109 (1945). Consistent with that principle, courts addressing anti-SLAPP statutes have "weed[ed] out specific provisions of the law that ran afoul of the *Erie* doctrine," while applying the provisions that remain. *CoreCivic, Inc.*, 46 F.4th at 1140; *see also Paucek*, 349 F.R.D. at 515 ("[T]he Court is aware of no authority requiring it to hold that UPEPA either applies in federal court as a whole or else it does not apply in federal court at all."); *cf. Ferri v. Ackerman*, 444 U.S. 193, 198 (1979) ("[W]hen state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity, unless . . . the state rule is in conflict with federal law.").

The district court's all-or-nothing approach also disregards basic severability principles. "Severability is of course a matter of state law."

26

*Leavitt v. Jane L.*, 518 U.S. 137, 139 (1996) (per curiam). Pennsylvania law makes statutes "presumptively severable." *Commonwealth v. Williams*, 832 A.2d 962, 986 (Pa. 2003); *accord* 1 Pa. Cons. Stat. § 1925 ("The provisions of every statute shall be severable."). Federal courts likewise apply a "decisive preference for surgical severance rather than wholesale destruction, even in the absence of a severability clause." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 626 (2020) (opinion of Kavanaugh, J.). The district court did the opposite. It reached beyond the provision invoked, identified a supposed problem with a different provision, and used that problem to discard UPEPA in full. That was error.

The cases cited by the district court do not support that erroneous result. App. 11–12 n.5. Each of those cases involved an anti-SLAPP provision that imposed a heightened pleading-stage burden or required a showing not demanded by the Federal Rules. *See Abbas*, 783 F.3d at 1332 (District of Columbia statute required a likelihood of success on the merits); *Klocke v. Watson*, 936 F.3d 240, 245 (5th Cir. 2019) (Texas statute demanded "clear and specific evidence" for every element); *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir.

27

2018) (same for Georgia statute); *La Liberte v. Reid*, 966 F.3d 79, 86 n.3, 87 (2d Cir. 2020) (declining to apply a California anti-SLAPP provision that "require[d] the plaintiff to make a showing that the Federal Rules do not require"). Section 8340.15(1)(ii) is different. It imposes no heightened pleading burden. It requires only what Rule 12(b)(6) already requires. The district court therefore had no basis to refuse to apply it.

*Second*, even if Section 8340.15(2) were relevant, which it is not, the district court misread it. Section 8340.15 defines the substantive showings that establish protected-public-expression immunity. It does not dictate the procedural stage at which each showing must be made. UPEPA answers that separate procedural question in Section 8340.16, which allows a party to "assert[] protected public expression immunity through other pleadings and motions under the Pennsylvania Rules of Civil Procedure." § 8340.16(c). The statute thus does not require courts to conduct a Rule 56-style inquiry at the pleading stage. It mandates immunity based on legal insufficiency at the pleading stage and immunity based on the absence of material factual disputes at the summary judgment stage.

That reading is not only textually correct; it is the reading courts adopt to avoid unnecessary conflict between state anti-SLAPP protections and federal procedure. In *Planned Parenthood*, the Ninth Circuit construed California's anti-SLAPP statute in just that way. 890 F.3d at 833–34. California's statute, like UPEPA, allowed challenges to both legal sufficiency and factual sufficiency. *Id.* at 833. The court held that legal-sufficiency challenges could proceed at the pleading stage, but "when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then . . . discovery must be allowed." *Id.* at 834. That split construction was necessary "to prevent the collision of California state procedural rules with federal procedural rules." *Id.* at 833.

The same approach applies here. Section 8340.15(1)(ii) fits comfortably with Rule 12(b)(6). Section 8340.15(2), if invoked, can be applied through the appropriate summary judgment procedure. That construction respects UPEPA's text, preserves Pennsylvania's substantive immunity, and avoids "significant disuniformity between state and federal courts." *Chamberlain v. Giampapa*, 210 F.3d 154, 159 (3d Cir. 2000). The district court, instead, wrongly created a conflict where none existed and then used that manufactured conflict to

29

erroneously nullify a state-law immunity the Pennsylvania legislature specifically made immediately appealable.

* * *

In short, the direct-collision analysis should have ended where President Trump's motion began: Section 8340.15(1)(ii). That provision applies the same failure-to-state-a-claim standard as Rule 12(b)(6), while UPEPA's immunity consequences address substantive rights the Federal Rules leave untouched. The district court erred by manufacturing a conflict from a different, uninvoked provision and then using that imagined conflict to discard UPEPA wholesale. This Court should reverse.

## II. UPEPA'S IMMUNITY PROVISION IS SUBSTANTIVE BECAUSE FAILURE TO APPLY THE PROVISION IN FEDERAL COURT FRUSTRATES THE TWIN AIMS OF *ERIE.*

Because Section 8340.15(1)(ii) does not directly conflict with the Federal Rules, the remaining *Erie* question is whether UPEPA's immunity provision is substantive. It is. The district court did not reach that question, and so this Court could remand for the district court to decide it in the first instance. *But see N.J. Carpenters & the Trs. Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 305 (3d Cir. 2014) ("It is

30

appropriate for us to reach an issue that the district court did not if the issues provide purely legal questions, upon which an appellate court exercises plenary review." (quotation marks and citation omitted)).

If this Court reaches the issue, as is appropriate, it should hold that UPEPA's immunity provision is substantive. The statute creates a state-law immunity from suit for defendants targeted by claims arising from protected public expression. That substantive immunity matters because it carries consequences beyond ordinary dismissal: a mandatory award of fees and costs if immunity is granted, § 8340.18(a)(1), and an immediate interlocutory appeal if immunity is denied, § 8340.17. Those are not housekeeping rules for managing litigation. They are substantive protections designed to prevent the litigation itself from becoming the punishment, all of which flow directly from an immunity determination pursuant to Section 8340.15(1).

Under *Erie*, a state rule is substantive when applying it would further "the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Montgomery Ward & Co. v. Pac. Indem. Co.*, 557 F.2d 51, 57 (3d Cir. 1977) (quoting *Hanna v. Plumer*, 380 U.S. 460, 468 (1965)). Even a rule that

has procedural features is substantive when "the State's objective is manifestly substantive." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 429 (1996).

UPEPA easily satisfies that test. Its text "grants immunity" to defendants sued for protected public expression. 42 Pa. Cons. Stat. § 8340.12(3)(i). Its stated purpose is to address "a disturbing increase in lawsuits brought primarily to chill the valid exercise of protected public expression" and to ensure that "participation in matters of public significance . . . should not be chilled through abuse of the judicial process." § 8340.12(1)–(2). That is a substantive legislative judgment about the protection Pennsylvania affords speech, petitioning, and participation in public debate.

The statute's placement and structure confirm the same point. UPEPA is "confined to a particular substantive area of law"—public expression—which itself "suggests that it probably was motivated by substantive concerns." *Gacek v. Am. Airlines, Inc.*, 614 F.3d 298, 302 (7th Cir. 2010). Pennsylvania codified UPEPA in the chapter of its Judicial Code devoted to immunities. *See* 42 Pa. Cons. Stat. ch. 83, subchs. C, C.1. Further, the official comment confirms that the immunity is "substantive

32

in nature" because it is designed to "protect the defendant from the burdens of trial, not merely from ultimate judgments of liability." § 8340.13–17, Unif. L. Cmts. 1–2.

That kind of state-law judgment warrants deference in the *Erie* analysis. In *Batzel*, for example, the Ninth Circuit held that, "[b]ecause California law recognizes the protection of the anti-SLAPP statute as a substantive immunity from suit, this Court, sitting in diversity, will do so as well." 333 F.3d at 1025–26, *overruled on other grounds by Gopher*, 154 F.4th 696. Additionally, in *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, the court applied California's anti-SLAPP protections in federal court because the State "has articulated the important, substantive state interests furthered by" the statute. 190 F.3d 963, 973 (9th Cir. 1999). Pennsylvania has done the same thing here. It has made a substantive judgment, codified in Section 8340.15, that speakers should not have to endure litigation burdens imposed by meritless suits targeting protected public expression.

The operative text confirms the point. Section 8340.15 determines whether a defendant is entitled to immunity "based on protected public expression." 42 Pa. Cons. Stat. § 8340.15. The statute then makes

33

concrete legal consequences flow necessarily from that threshold immunity determination. If the defendant prevails on a motion "under section 8340.15," the court "shall award . . . attorney fees, court costs and expenses of litigation." § 8340.18(a)(1). If the court denies such a motion "in whole or in part," the defendant may take an immediate appeal. § 8340.17. UPEPA thus does not merely borrow the label "immunity." It builds a statutory remedial scheme around that immunity: success triggers mandatory fees; denial triggers immediate review. Those consequences are the hallmarks of a substantive protection from suit.

The mandatory fee entitlement is especially important under this Court's *Erie* cases. The Third Circuit has "held that, for *Erie* purposes, a party's asserted right to attorneys' fees is a matter of substantive state law." *Chin v. Chrysler LLC*, 538 F.3d 272, 279 (3d Cir. 2008) (citing *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1223 (3d Cir. 1995)). Courts have applied that rule directly to UPEPA and to materially similar anti-SLAPP fee-shifting provisions. *See Paucek*, 349 F.R.D. at 513–19 (UPEPA's fee-shifting provision applies in federal court); *Adelson*, 774 F.3d at 809 (same as to Nevada's anti-SLAPP statute). Because Section 8340.18 makes fees mandatory for a defendant who establishes UPEPA

34

immunity, refusing to apply that entitlement in federal court would wrongly strip away a substantive remedy Pennsylvania attached to the immunity itself.

The immediate-appeal provision underscores the same conclusion. State law does not determine federal appellate jurisdiction, but courts considering anti-SLAPP statutes routinely look to the States' creation of an immediate appeal to illuminate the nature of the right Pennsylvania created. As the First Circuit explained, "whether a state anti-SLAPP statute provides for interlocutory appeals is . . . relevant not because state law determines the availability of appellate review here—it does not— but rather because" it shows that "lawmakers wanted to protect speakers from the trial itself rather than merely from liability." *Godin*, 629 F.3d at 85 (citations omitted). The Ninth Circuit has said the same: Oregon's anti-SLAPP law grants immunity from suit by "provid[ing] a defendant with the right to not proceed to trial," and "the later-enacted right of immediate appeal corroborates" that understanding. *Schwern*, 845 F.3d at 1244–45. UPEPA's immediate-appeal provision serves that same function: it confirms that Section 8340.15(1)(ii) protects speakers from

the burdens of litigation itself, not merely from an eventual adverse judgment.

Refusing to apply UPEPA in federal court would therefore defeat both aims of *Erie*. Pennsylvania did not merely create a redundant dismissal rule. It created a substantive immunity, backed by fee-shifting and an immediate appeal, to spare speakers from the burdens of litigation itself. UPEPA's protections are thus "consequential enough that enforcement in federal proceedings will serve to discourage forum shopping and avoid inequity." *Adelson*, 774 F.3d at 809. If UPEPA applies in Pennsylvania court but not in federal court, "a litigant interested in bringing meritless SLAPP claims would have a significant incentive to shop for a federal forum." *Newsham*, 190 F.3d at 973. Further, the defendant "otherwise entitled" to UPEPA's protection would face a "considerable disadvantage" in federal court: no immunity from suit, no mandatory fees, and no immediate review of an order forcing him to litigate a claim Pennsylvania says he should not have to defend. *Id.*

That is exactly the mismatch *Erie* forbids. UPEPA embodies Pennsylvania's substantive judgment that speakers should not be forced to defend meritless suits targeting protected public expression. Because

ignoring that judgment in federal court would encourage forum shopping and produce inequitable administration of the laws, Section 8340.15(1)(ii) applies here. The Court should reverse.

## III.  THERE ARE NO COUNTERVAILING FEDERAL INTERESTS AGAINST APPLYING UPEPA.

If this Court reaches the remaining *Erie* question, it should hold that no countervailing federal interest weighs against applying UPEPA in federal court. The district court did not reach this step because it erroneously found a direct conflict (which does not exist) with the Federal Rules at the threshold. But once that conflict is rejected, as it should be, there is no independent federal policy that justifies withholding Pennsylvania's substantive immunity from defendants sued in federal court.

The relevant federal interests point in the same direction as UPEPA. Pennsylvania enacted UPEPA to protect "the valid exercise of protected public expression," and to ensure that "participation in matters of public significance . . . should not be chilled through abuse of the judicial process." 42 Pa. Cons. Stat. § 8340.12(2)–(3). Those interests are central to federal law.

The First Amendment gives its highest protection to speech on

public affairs. "Speech on matters of public concern is at the heart of the First Amendment's protection." *Snyder*, 562 U.S. at 451–52 (cleaned up). Such speech "is more than self-expression; it is the essence of self-government." *Id.* at 452 (cleaned up). Statements made during a presidential debate at the height of a campaign lie at the very core of that protection. Speech about the fitness, conduct, and public statements of a candidate for the Nation's highest office is absolutely essential to democratic self-government and its central tenet of freedom of speech. That is why political debate receives special protection under this Nation's "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *FEC v. Ted Cruz for Senate*, 596 U.S. 289, 302 (2022) (quotation omitted). A suit wrongfully targeting speech in that setting casts a chill over First Amendment activity of the highest order. *See Paucek*, 349 F.R.D. at 519 n.10 ("The Court also finds that there are no countervailing federal interests that would outweigh New Jersey's interest in protecting its citizens' First Amendment rights in federal court.").

That is precisely the harm UPEPA is designed to prevent. SLAPP suits improperly burden protected expression not only through liability,

but through litigation itself: the cost of defense, the pressure of discovery, the diversion of time and resources, and the risk that speakers will avoid controversial public debate rather than invite suit. UPEPA thus advances, rather than undermines, federal constitutional values by protecting speakers from litigation designed to chill that expression before the litigation itself inflicts the harm.

Those concerns are especially acute where, as here, the challenged speech arose in the context of a presidential campaign, and the case is being prosecuted against the sitting President of the United States. Applying UPEPA in federal court therefore does not displace any federal interest. It reinforces the federal commitment to protecting "uninhibited, robust, and wide-open" debate on public issues. *Cruz*, 596 U.S. at 302.

There is thus no countervailing federal interest sufficient to overcome Pennsylvania's substantive judgment. UPEPA protects the same First Amendment values federal courts protect, and it does so through mechanisms—immunity, fees, and immediate review—that Pennsylvania tied directly to the Section 8340.15 immunity determination. Because refusing to apply that protection in federal court would chill core political speech and create the very forum-shopping and

39

inequity *Erie* forbids, the statute should apply.

## CONCLUSION

For these reasons, this Court should reverse the district court's erroneous order, which held that UPEPA does not apply in federal court. The Court should further remand for the district court to determine whether President Trump is entitled to immunity under the statute, which he is.

Dated: May 28, 2026

Karin M. Sweigart
Jesse D. Franklin-Murdock
**Sweigart Murdock, LLP**
1160 Battery St. Ste. 100,
San Francisco, CA 94111
Tel.: (415) 873-0123
karin.sweigart@sm-llp.com
jesse@sm-llp.com


Caryn G. Schechtman
**DLA PIPER LLP (US)**
1251 Avenue of the Americas,
27th Floor
New York, NY 10020
Tel. (212) 335-4500
caryn.schechtman@dlapiper.com

Respectfully submitted,

*/s/ Josh Halpern*
Josh Halpern
**JH LEGAL PLLC**
1100 H Street NW Suite 840
Washington, DC 20005
Tel. (610) 405-5531
jhalpern@jhlegalpllc.com

*Counsel for President Donald J. Trump*

## COMBINED CERTIFICATE OF COMPLIANCE

I, Josh Halpern, certify:

***Bar Membership.*** Pursuant to this Court's Local Rule 28.3(d), I am a member of the bar of this Court.

***Electronic Filing.*** Pursuant to this Court's Local Rule 31.1(c), the text in the electronic copy of this brief is identical to the text in the paper copies of the brief filed with the Court. This document complies with the requirement of this Court's Local Rule 31.1(c) because this document was scanned for viruses using Microsoft Defender, and no viruses were detected.

***Word Count.*** This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 7,267 words, excluding the parts of the brief exempted from the calculation under the Federal Rules of Appellate Procedure.

***Typeface and Type-style.*** This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using the Microsoft Word processing program in 14-point Century Schoolbook font.

Dated: May 28, 2026        */s/Josh Halpern*
                           Josh Halpern

42

## CERTIFICATE OF SERVICE

I, Josh Halpern, hereby certify that I electronically filed this document with the Clerk of Court using CM/ECF on May 28, 2026, which will automatically generate and serve Notices of Electronic Filing on all entitled


Dated: May 28, 2026                    */s/Josh Halpern*
                                       Josh Halpern