No. 25-2230

---

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

YUSEF SALAAM, ANTRON BROWN, KEVIN RICHARDSON,
RAYMOND SANTANA, and KOREY WISE,

Plaintiffs-Appellees,

v.

DONALD J. TRUMP,

Defendant-Appellant.

---

**BRIEF OF *AMICI CURIAE* ACLU OF PENNSYLVANIA, AMERICANS FOR PROSPERITY PENNSYLVANIA, ELECTRONIC FRONTIER FOUNDATION, FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION, INSTITUTE FOR FREE SPEECH, PENNSYLVANIA NEWSMEDIA ASSOCIATION, RADIO TELEVISION DIGITAL NEWS ASSOCIATION, REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, AND STUDENT PRESS LAW CENTER IN SUPPORT OF NEITHER PARTY ADDRESSING THE APPLICABILITY OF THE PENNSYLVANIA UNIFORM PUBLIC EXPRESSION PROTECTION ACT IN FEDERAL COURT**

Ronald G. London
FOUNDATION FOR INDIVIDUAL
RIGHTS AND EXPRESSION
700 Pennsylvania Ave., SE
Suite 340
Washington, DC 20003
(215) 717-3473
ronnie.london@fire.org

*Counsel for* Amici Curiae

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................. iii

CORPORATE DISCLOSURE ........................................................................ viii

STATEMENT OF INTEREST .........................................................................ix

RULE 29 STATEMENT ................................................................................xiv

INTRODUCTION .............................................................................................1

ARGUMENT ....................................................................................................4

I.      Pennsylvania's Anti-SLAPP Law Provides Separate Substantive
        and Procedural Protections............................................................................4

II.     PA-UPEPA's Immunity and Fee-Shifting Apply in Federal Court ................9

        A.      PA-UPEPA's Immunity and Fee-Shifting Provisions Are
                Substantive and Do Not Conflict with the Federal Rules ..................10

        B.      Other Courts' Analyses of Different States' Anti-SLAPP
                Laws Support the Application of PA-UPEPA in Federal
                Court ...............................................................................................15

III.    Denial of PA-UPEPA's Immunity Is Immediately Appealable in
        Appropriate Cases ..................................................................................22

CONCLUSION .............................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbas v. Foreign Policy Group, LLC,*
783 F.3d 1328 (D.C. Cir. 2015) ...............................................................20, 21

*Adelson v. Harris,*
774 F.3d 803 (2d Cir. 2014) ....................................................................10, 13

*Ali v. McClinton,*
2017 WL 2588425 (E.D. Pa. June 14, 2017) ..................................................10

*Alyeska Pipeline Service Co. v. Wilderness Society,*
421 U.S. 240 (1975) .................................................................................12, 13

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ..........................................................................................6

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..........................................................................................6

*Bell Atlantic-Pennsylvania v. Pennsylvania Public Utility Comm'n,*
273 F.3d 337 (3d Cir. 2001) .............................................................................23

*Berk v. Choy,*
607 U.S. 187 (2026) ..............................................................................9, 10, 15

*Blaylock v. City of Philadelphia,*
504 F.3d 405 (3d Cir. 2007) .............................................................................22

*Bobulinski v. Tarlov,*
758 F. Supp. 3d 166 (S.D.N.Y. 2024) .........................................................17, 21

*Boles v. Wal-Mart Stores, Inc.,*
650 F. App'x 125 (3d Cir. 2016) ......................................................................12

*Bongino v. Daily Beast Co.,*
477 F. Supp. 3d 1310 (S.D. Fla. 2020) ............................................................19

*Brown v. Grabowski,*
922 F.2d 1097 (3d Cir. 1990) ...........................................................................26

*Carbone v. Cable News Network*,
910 F.3d 1345 (11th Cir. 2018) ...................................................................19, 20

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .................................................................................................6

*Chin v. Chrysler LLC*,
538 F.3d 272 (3d Cir. 2008) .................................................................................12

*In re City of Philadelphia Litigation*,
49 F.3d 945 (3d Cir. 1995) ...................................................................................10

*Clifford v. Trump*,
818 F. App'x 746 (9th Cir. 2020) ........................................................................20

*Dougherty v. School District of Philadelphia*,
772 F.3d 979 (3d Cir. 2014) .................................................................................25

*Engage Healthcare Communications, L.L.C. v. Intellisphere, L.L.C.*,
792 F. App'x 178 (3d Cir. 2019) ............................................................................6

*Erie Railroad Co. v. Tomkins*,
304 U.S. 64 (1938) ...................................................................................................9

*Fairfax v. CBS Broadcasting Corp.*,
2 F.4th 286 (4th Cir. 2021) ..................................................................................18

*Fairfax v. New York Public Radio*,
2023 WL 3303125 (E.D. Va. Apr. 4, 2023) .......................................................19

*Farina v. Omari*,
2026 WL 1552256 (D.N.J. June 2, 2026) ...........................................................18

*Franchini v. Investor's Business Daily, Inc.*,
981 F.3d 1 (1st Cir. 2020) ....................................................................................25

*Geo Group v. Menocal*,
607 U.S. ---, 146 S. Ct. 774 (2026) .....................................................................22

*Godin v. Schencks*,
629 F.3d 79 (1st Cir. 2010) ..................................................................................20

iii

*Gopher Media LLC v. Melone*,
154 F.4th 696 (9th Cir. 2025).................................................................26

*Great Northern Insurance Co. v. Whipple-Allen Real Estate*,
2018 WL 3618689 (W.D. Pa. July 30, 2018)......................................10

*Grifols, S.A. v. Yu*,
2026 WL 836657 (S.D.N.Y. Mar. 26, 2026)..................................18, 21

*Henrich v. Colby's Crew Rescue*,
2026 WL 839119 (E.D. Pa. Mar. 26, 2026) .........................................14

*Henry v. Lake Charles American Press, L.L.C.*,
566 F.3d 164 (5th Cir. 2009)................................................................25

*IQE PLC v. Newport Fab, LLC*,
155 F.4th 1370 (Fed. Cir. 2025)...........................................................26

*Jakes v. Youngblood*,
782 F. Supp. 3d 210 (W.D. Pa. 2025) ....................................13, 14, 16

*Jones v. Kleinman*,
2026 WL 1470538 (D.N.J. May 26, 2026) ..........................................18

*Kevin C. v. Foundations Behavioral Health*,
2023 WL 3244575 (3d Cir. May 4, 2023)............................................27

*Kleinknecht v. Gettysburg College*,
989 F.2d 1360 (3d Cir. 1993)...............................................................10

*Klocke v. Watson*,
936 F.3d 240 (5th Cir. 2019)................................................................20

*Krassnoski v. Rosey*,
684 A.2d 635 (Pa. Super. 1996) .............................................................7

*Kulwicki v. Dawson*,
969 F.2d 1454 (3d Cir. 1992)...............................................................22

*La Liberte v. Reid*,
966 F.3d 79 (2d Cir. 2020)..............................................................20, 21

iv

*Lively v. Wayfarer Studios LLC*,
2026 WL 852733 (S.D.N.Y. Mar. 27, 2026)....................................................18

*Lozano v. New Jersey*,
9 F.4th 239 (3d Cir. 2021).............................................................................24

*McCaffery v. New York University School of Law*,
2026 WL 746606 (E.D. Pa. Mar. 16, 2026) .....................................................15

*Mitchell v. Forsyth*,
472 U.S. 511 (1985) ...............................................................................23, 24

*Montgomery Ward & Co. v. Pacific Indemnity Co.*,
557 F.2d 51 (3d Cir. 1977)...........................................................................12

*Moody v. Township of Marlboro*,
855 F. Supp. 685 (D.N.J. 1994) ....................................................................12

*NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*,
745 F.3d 742 (5th Cir. 2014).........................................................................27

*Paucek v. Shaulis*,
349 F.R.D. 498 (D.N.J. 2025) ..................................................................*passim*

*Richey v. Showtime Networks Inc.*,
2026 WL 867264 (D. Del. Mar. 30, 2026)...........................................11, 16, 17

*Salaam v. Trump*,
2025 WL 2375397 (E.D. Pa. Aug. 15, 2025).........................................3, 24, 27

*Salaam v. Trump*,
350 F.R.D. 14 (E.D. Pa. 2025) ................................................................*passim*

*Salaam v. Trump*,
777 F. Supp. 3d 414 (E.D. Pa. 2025) ...............................................................2

*Schmigel v. Uchal*,
800 F.3d 113 (3d Cir. 2015)............................................................................9

*Van Cauwenberghe v. Biard*,
486 U.S. 517 (1988) ....................................................................................22

v

*Vespico v. Kass-Gerji,*
   2026 WL 736463 (M.D. Pa. Mar. 16, 2026) .......................................................14

*We, Inc. v. City of Philadelphia,*
   174 F.3d 322 (3d Cir. 1999) ...............................................................................26

**Statutes**

10 Del. C. §§ 6001 *et seq.* ......................................................................................4

42 Pa.C.S.A. Chap. 83, Subchs. C, C.1 ..................................................................5

42 Pa.C.S.A. § 8340.12 .............................................................................4, 5, 7, 23

42 Pa.C.S.A. § 8340.13 ............................................................................................5

42 Pa.C.S.A. § 8340.15 ..................................................................................*passim*

42 Pa.C.S.A. § 8340.16 .................................................................................8,13, 23

42 Pa.C.S.A. § 8340.17 ...................................................................................7, 23, 27

42 Pa.C.S.A. § 8340.18 .....................................................................................7, 11, 19

N.J.S.A. 2A:53A-49 *et seq.* .....................................................................................4

**Legislation, Rules & Constitutional Provisions**

PA LEGIS 2024-72, 2024 Pa. Legis. Serv. Act 2024-72 ....................................4, 8

56 Pa. Bull. 997, 2026 PA REG TEXT 712935 (NS) (Feb. 21, 2026) ....................8

Fed. R. Civ. P. 54 ...................................................................................................11

Legislative History, Act 72 (H.B. 1466) .................................................................2

Pa. Const. art. V, § 10(c) .........................................................................................4

PA. H.R. LEGIS. J., 2023 Reg. Sess. No. 45 (Oct. 4, 2023)......................................5

PA. S. LEGIS. J., 2024 Reg. Sess. No. 32 (July 9, 2024) .........................................23

**Other Authorities**

*Anti-SLAPP Legal Guide*, REPORTERS COMM. FOR FREEDOM OF THE PRESS.............4

David Keating, *Lawmakers Should Protect Free Speech in Pennsylvania and Pass the Anti-SLAPP Bill*, PENNLIVE (Jan. 31, 2024) ..................................................................8

Michael Berry & Kaitlin M. Gurney, *Pennsylvania Joins States Enacting Tough Anti-SLAPP Protections: The New Uniform Public Expression Protection Act*, 96 PA. BAR ASS'N Q. 1 (Jan. 2025) ....................................................................4

Michael Berry, *Pennsylvania's New Anti-SLAPP Law Protects Press Freedom*, LEGAL INTELLIGENCER (Aug. 1, 2024)....................................................4

Shannon Jankowski & Charles Hogle, *SLAPP-ing Back: Recent Legal Challenges to the Application of State Anti-SLAPP Laws*, COMMUNICATIONS LAWYER (Mar. 16, 2022) ........................................................8

Thomas G. Wilkinson, Jr., *What Pennsylvania Can Expect from Anti-SLAPP Law*, LAW360 (Sept. 30, 2024) ......................................................15

## CORPORATE DISCLOSURE

The ACLU of Pennsylvania is a nonprofit organization with no parent corporation and no stock.

Americans for Prosperity Pennsylvania (AFP-PA) is a state chapter of Americans for Prosperity, a nonprofit organization that has no parent companies, subsidiaries, or affiliates that have issued shares or debt.

The Electronic Frontier Foundation is a nonprofit organization with no parent corporation and no stock.

The Foundation for Individual Rights and Expression is a nonprofit organization with no parent corporation and no stock.

The Institute for Free Speech is a nonprofit organization with no parent corporation and no stock.

The Pennsylvania NewsMedia Association is a nonprofit organization with no parent corporation and no stock.

The Radio Television Digital News Association is a nonprofit organization with no parent corporation and no stock.

The Reporters Committee for Freedom of the Press is an unincorporated association of reporters and editors with no parent corporation and no stock.

The Student Press Law Center is a nonprofit organization with no parent corporation and no stock.

**STATEMENT OF INTEREST**

The ACLU of Pennsylvania ("ACLU-PA") is a state affiliate of the American Civil Liberties Union ("ACLU"), a nationwide, nonprofit, nonpartisan organization with more than 2 million members dedicated to the principles of liberty and equality embodied in the Constitution and our nation's civil rights laws. Since its founding in 1920, the ACLU has been dedicated to preserving and defending the principles of individual liberty and equality embodied in the United States Constitution and civil rights laws. Chief among those liberties is the freedom of expression. The ACLU-PA appears regularly as direct counsel and *amicus curiae* in federal and state courts to defend freedom of speech on behalf of both plaintiffs and defendants. The proper resolution of the issue addressed in this brief is thus a matter of substantial importance to the ACLU and its members.

Americans for Prosperity Pennsylvania ("AFP-PA") is a 501(c)(4) organization working to break down governmental barriers to opportunity through direct and grassroots advocacy. AFP-PA works toward these goals by defending the individual rights that are essential to all members of society, including the freedoms of expression and association. As part of this mission, it appears as *amicus curiae* before federal and state courts.

The Electronic Frontier Foundation ("EFF") is a member-supported, non-profit civil liberties organization founded in 1990 that works to protect free speech

ix

and privacy rights for technology users in the U.S. and abroad. EFF's team of attorneys, activists, and technologists advance these rights through impact litigation, direct advocacy, and technological innovation. On behalf of its over 30,000 dues-paying members, EFF regularly works at the intersection of the First Amendment and technology, and has been a strong advocate for anti-SLAPP laws. EFF has itself litigated numerous cases under the California anti-SLAPP statute.

The Foundation for Individual Rights and Expression ("FIRE") is a nonpartisan, nonprofit organization dedicated to defending the individual rights of all Americans to free speech and free thought – the essential qualities of liberty. Since 1999, FIRE has successfully defended individual rights through public advocacy, strategic litigation, and participation as *amicus curiae* in cases that implicate expressive rights under the First Amendment. FIRE has a strong interest in upholding anti-SLAPP protections for free speech. It has defended speakers from strategic lawsuits against public participation across the country. *E.g.*, *VICTORY! Maine hospital backs down from defamation threat over teen's criticism*, FIRE (Nov. 7, 2024), https://bit.ly/Maine-SLAPP; *LAWSUIT: Historian fights back after Pennsylvania state senator sues him for criticizing book*, FIRE (Sept. 19, 2024), https://bit.ly/OklaSLAPP; *FIRE defends Idaho conservation officer sued for criticizing wealthy ranch owner's airstrip permit*, FIRE (Oct. 2, 2023), https://bit.ly/IdahoSLAPP.

x

The Institute for Free Speech ("IFS") is a nonpartisan, nonprofit organization dedicated to the protection of the First Amendment rights of speech, assembly, petition, and press. Along with scholarly and educational work, IFS represents individuals and civil society organizations in litigation securing their First Amendment liberties. IFS has an interest here because it supports statutory protections for those who face litigation filed to deter the exercise of First Amendment rights when communicating about matters of public interest. *See, e.g.,* *Anti-SLAPP*, INSTITUTE FOR FREE SPEECH, http://bit.ly/4jbU97A.

The Pennsylvania NewsMedia Association ("PNA") is a Pennsylvania nonprofit member corporation with its headquarters located in Harrisburg, Pennsylvania. PNA represents the interests of daily and weekly newspapers, digital publications, and other media organizations across the Commonwealth of Pennsylvania in ensuring that the press can gather information and report to the public. A significant part of PNA's mission is to defend the constitutional and statutory rights of the press.

The Radio Television Digital News Association ("RTDNA") is the world's largest professional organization devoted exclusively to broadcast and digital journalism. Founded as a grassroots organization in 1946, RTDNA's mission is to promote and protect responsible journalism. RTDNA defends the First Amendment rights of electronic journalists throughout the country, honors

outstanding work in the profession through the Edward R. Murrow Awards, and provides members with training to encourage ethical standards, newsroom leadership, and industry innovation.

The Reporters Committee for Freedom of the Press is an unincorporated nonprofit association. The Reporters Committee was founded by leading journalists and media lawyers in 1970 when the nation's news media faced an unprecedented wave of government subpoenas forcing reporters to name confidential sources. Today, its attorneys provide pro bono legal representation, *amicus curiae* support, and other legal resources to protect First Amendment freedoms and the newsgathering rights of journalists. As part of its new Local Legal Initiative, in 2020, the Reporters Committee hired a Pennsylvania-based attorney to provide direct legal services to journalists and news organizations in Pennsylvania.

The Student Press Law Center ("SPLC") is a national, non-profit, non-partisan organization established in 1974 that works to promote, support, and defend the press freedom and freedom of information rights of high school and college journalists. As the only national organization in the country devoted exclusively to defending the legal rights of the school-sponsored and independent student press, SPLC collects information on student press cases nationwide and

produces a number of publications on student press law, including its book, LAW

OF THE STUDENT PRESS (4th ed. 2014).

## **RULE 29 STATEMENT**

The parties consent to the filing of this brief. No party's counsel authored any part of this brief. No person other than *amici*, their members or their counsel contributed money intended to fund the brief's preparation or submission.

**INTRODUCTION**

First Amendment advocates, including *amici*, long advocated for a broad Pennsylvania anti-SLAPP law with significant speech protections. That effort culminated in 2024, when the Commonwealth enacted the Pennsylvania Uniform Public Expression Protection Act ("PA-UPEPA"), 42 Pa.C.S.A. §§ 8340.11 *et seq.* The Act grants immunity from lawsuits that risk chilling First Amendment rights and provides for the recovery of fees and costs expended to defend against those lawsuits. The first cases invoking the Act are now being decided. The Third Circuit has not yet addressed the applicability of PA-UPEPA – or any state's anti-SLAPP law – in federal court.

This brief takes no position regarding the merits of the underlying claims in this case. Rather, *amici* write solely to elucidate PA-UPEPA's unique structure and advocate that, if PA-UPEPA's protections are asserted through a proper motion under the Federal Rules and the Act's standards are met, its immunity and fee-shifting provisions should be applied in federal court. Moreover, if a procedurally proper motion asserting the Act's immunity is denied, that decision should be immediately appealable. If this Court were to determine otherwise, PA-UPEPA would be rendered less effective, its objectives of discouraging forum shopping and protecting speakers in Pennsylvania would be severely undermined,

and the Legislature's unanimous intent to encourage speech on matters of public significance would be thwarted.[1]

This case comes before the Court through an unusual procedural posture. Following the dismissal without prejudice of certain of Appellees' claims, they amended their complaint, and Appellant responded by invoking the immunity afforded under PA-UPEPA. *See Salaam v. Trump*, 777 F. Supp. 3d 414 (E.D. Pa. 2025); *Salaam v. Trump*, 350 F.R.D. 14 (E.D. Pa. 2025). Yet Appellant did not move to dismiss pursuant to Rule 12(b)(6) – and in fact "explicitly renounce[d] any reliance on the Federal Rules of Civil Procedure." *Id.* at 18 n.3. He also did not move under PA-UPEPA's procedural provisions, as he conceded those provisions were not in effect. *Id.*

The procedural ambiguity of Appellant's motion caused the district court to question whether it was "procedurally proper." *Id.* Despite being unclear "through which mechanism [Appellant] intend[ed] to invoke the purported immunity," *id.*, the court proceeded to hold that the section of PA-UPEPA through which Appellant sought immunity – 42 Pa.C.S.A. § 8340.15 – could not be applied in federal court because it "directly collide[s]" with Rules 12 and 56. *Id.* at 11. The court reserved judgment on other provisions of the Act, including its fee-shifting provision, explaining that Appellant did not "seek relief" under them. *Id.* at 18 n.8.

---

[1] *See* Legislative History, Act 72 (H.B. 1466), https://bit.ly/42jtDTA.

After Appellant filed this appeal, the district court stayed the litigation below, holding that PA-UPEPA provides a substantive immunity from suit and thus "insulate[s] immunity-claimants from the burdens of trial until such time as their entitlement to the immunity is conclusively decided." *Salaam v. Trump*, 2025 WL 2375397, at *1 n.1 (E.D. Pa. Aug. 15, 2025).

On appeal, Appellant asks this Court to address only whether PA-UPEPA's substantive protections apply in federal court. Appellant Br. at 11. Yet, he seeks no ruling on the merits of his claimed immunity and is not seeking any affirmative relief, such as the dismissal of any claim. The procedural murkiness of Appellant's motion below, and his opening brief's continued crypticness on this question, unnecessarily complicates the issues presented. As *amici* explain, when the Act's substantive protections are properly invoked through a motion authorized under a Federal Rule, they should apply in federal court, and the denial of those protections should be immediately appealable, just as they are for other immunities that raise pure legal questions.

## ARGUMENT

### I.    Pennsylvania's Anti-SLAPP Law Provides Separate Substantive and Procedural Protections.

PA-UPEPA stands among the most recent legislation passed by states to combat SLAPP suits.[2]  Like other states' anti-SLAPP laws, PA-UPEPA seeks to curb "lawsuits brought primarily to chill the valid exercise of" speech and to "encourage continued participation in matters of public significance."  42 Pa.C.S.A. § 8340.12(1), (2).  While similar to other anti-SLAPP laws in certain respects, Pennsylvania's law is unique in other respects material to this appeal.[3]

Most notably, PA-UPEPA is split between substantive and procedural sections.[4]  This split recognizes the Pennsylvania constitutional requirement that only the Commonwealth's Supreme Court can enact court procedures.  *See* Pa. Const. art. V, § 10(c).  The sections of PA-UPEPA that are considered substantive under Pennsylvania law went into effect immediately.  *See* PA LEGIS 2024-72 § 2,

---

[2] *See Anti-SLAPP Legal Guide*, REPORTERS COMM. FOR FREEDOM OF THE PRESS, https://bit.ly/4afFu7b.  New Jersey and Delaware also recently enacted anti-SLAPP laws.  *See* N.J.S.A. 2A:53A-49 *et seq.*; 10 Del. C. §§ 6001 *et seq.*

[3] *See* Michael Berry & Kaitlin M. Gurney, *Pennsylvania Joins States Enacting Tough Anti-SLAPP Protections:  The New Uniform Public Expression Protection Act*, 96 PA. BAR ASS'N Q. 1, 9-28 (Jan. 2025) (providing detailed overview of PA-UPEPA), https://bit.ly/3DPf7Jo.

[4] *See* Michael Berry, *Pennsylvania's New Anti-SLAPP Law Protects Press Freedom*, LEGAL INTELLIGENCER (Aug. 1, 2024), https://bit.ly/40hRu3o.

2024 Pa. Legis. Serv. Act 2024-72 § 2 (H.B. 1466) (hereinafter "Act 72").  Two of those sections are relevant to the issues presented in this appeal.

*First*, PA-UPEPA "grants immunity to those groups or parties exercising the rights to protected public expression."  42 Pa.C.S.A. § 8340.12(3)(i).  As the commentary to the Act explains, this immunity is "substantive in nature."  *Id.* § 8340.13 Uniform Law Cmt. 2.  "The point of the anti-SLAPP statute is that you have a right not to be dragged through the courts because you exercised your constitutional rights."  *Id.* § 8340.14 Uniform Law Cmt. 2 (cleaned up); *see also* PA. H.R. LEGIS. J., 2023 Reg. Sess. No. 45, at 1268 (Oct. 4, 2023) (House Speaker: "The subject of [the Act] is to provide for a substantive right of civil immunity based on protected public expression.").  For this reason, the statute is codified in the subchapter of the Pennsylvania Consolidated Statutes dedicated to immunities, *see* 42 Pa.C.S.A. Chap. 83, Subchs. C, C.1, and explicitly states that it "grants immunity," 42 Pa.C.S.A. § 8340.12(1); *id.* § 8340.15 ("a person is immune from civil liability").

The immunity provided under PA-UPEPA is implicated whenever a defendant faces "a cause of action based on protected public expression."  *Id.* §§ 8340.14(a), 8340.15.  PA-UPEPA defines "protected public expression" to include three kinds of expression, including speech "on a matter of public concern."  *Id.* § 8340.13(1)-(3).

When a cause of action is based on "protected public expression," a defendant "is immune from civil liability" if any one of three circumstances apply: (1) the plaintiff fails to "state a cause of action upon which relief can be granted"; (2) the plaintiff fails to "establish a prima facie case as to each essential element" of its claim; or (3) "[t]here is no genuine issue as to any material fact," and the defendant "is entitled to judgment as a matter of law." *Id.* § 8340.15. The first circumstance tracks the federal standard for granting a motion to dismiss, *see, e,g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), and the second and third circumstances track the federal standards for granting summary judgment, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[5]

If any of these three standards is met, the defendant is deemed immune under the law. Accordingly, the immunity provided by PA-UPEPA can be raised through any available procedural vehicle, including a motion to dismiss under

---

[5] While a court in this Circuit has mistakenly described dismissal based on failure to "establish a prima facie case as to each essential element" as conflicting with the Federal Rules, *see Paucek v. Shaulis*, 349 F.R.D. 498, 512 (D.N.J. 2025), that standard mirrors the federal summary judgment standard, *see Engage Healthcare Communications, L.L.C. v. Intellisphere, L.L.C.*, 792 F. App'x 178, 185-86 (3d Cir. 2019) (on summary judgment, "plaintiff has the burden to make a prima facie showing of its claims," and a "failure to establish a prima facie case is a valid ground to grant the motion") (citing *Celotex*, 477 U.S. at 331).

Federal Rule of Civil Procedure 12(b)(6) or a motion for summary judgment under Rule 56.  *See* Berry & Gurney, *supra* note 3, at 19-20.

If a defendant's invocation of the Act's immunity is denied, PA-UPEPA authorizes an immediate interlocutory appeal.  42 Pa.C.S.A. § 8340.17.  This provision "protect[s] the defendant from the burdens of trial, not merely from ultimate judgments of liability."  *Id.* Uniform Law cmt. 1 (quotation omitted); *see* Berry & Gurney, *supra* note 3, at 3 (interlocutory appeal "provide[s] an additional safeguard for defendants whose anti-SLAPP motions were denied erroneously").

***Second***, when defendants are "immune" from suit under PA-UPEPA, a "court shall award" their attorneys' fees, court costs, and "expenses of litigation."  42 Pa.C.S.A. § 8340.18(a)(1).[6]  This mandatory award reflects the state's policy that defendants should not bear the costs of defending against claims arising from protected public expression and serves to deter people from filing such lawsuits in the future.  *See, e.g.*, *id.* § 8340.12(3)(ii); Berry, *supra* note 4.  It also facilitates defendants' ability to retain counsel and discourages forum shopping.  *See* Berry & Gurney, *supra* note 3, at 15; *cf. Krassnoski v. Rosey*, 684 A.2d 635, 638 (Pa. Super. 1996) (recovery of attorneys' fees under Pennsylvania's Protection from Abuse Act "encourages private counsel to accept" cases for "financially disadvantaged"

---

[6] PA-UPEPA prevents its immunity from being abused, awarding fees and costs to parties opposing the assertion of immunity if the assertion "is frivolous or filed solely with intent to delay the proceeding."  42 Pa.C.S.A. § 8340.18(b).

individuals, "helps to support legal services agencies," and serves the statute's objective of deterring abuse).  Fee-shifting is thus an integral component of PA-UPEPA that is all the more effective if applied uniformly.[7]

In contrast to these substantive provisions, PA-UPEPA's procedural provisions are not yet in effect.  They will go into effect only if and when the Pennsylvania Supreme Court promulgates a rule of civil procedure or takes other actions as set forth in the statute.  *See* Act 72 § 7(1).[8]  The procedural provisions, codified at 42 Pa.C.S.A. § 8340.16, create a new motion through which a defendant can assert immunity.  They also set forth the procedures for asserting and litigating this new motion in state court.  Even after these procedural provisions go into effect, however, PA-UPEPA explicitly provides that its immunity can be asserted in state court through any other pleadings or motions available under the rules of civil procedure.  *See* 42 Pa.C.S.A. § 8340.16(c).

---

[7] *See, e.g.*, Shannon Jankowski & Charles Hogle, *SLAPP-ing Back:  Recent Legal Challenges to the Application of State Anti-SLAPP Laws*, COMMUNICATIONS LAWYER (Mar. 16, 2022) (fee-shifting is the "linchpin of the anti-SLAPP law's protective character" because it shifts risk to plaintiffs and thus can effectively deter baseless claims), https://bit.ly/4jgkFgg; David Keating, *Lawmakers Should Protect Free Speech in Pennsylvania and Pass the Anti-SLAPP Bill*, PENNLIVE (Jan. 31, 2024) (fee-shifting is one of PA-UPEPA's "essential provisions that deter SLAPPs and minimize litigation costs for defendants"), https://bit.ly/4anEiio.

[8] Rules to promulgate PA-UPEPA's procedures were proposed earlier this year. *See* 56 Pa. Bull. 997, 2026 PA REG TEXT 712935 (NS) (Feb. 21, 2026).

## II.    PA-UPEPA's Immunity and Fee-Shifting Apply in Federal Court.

Appellant did not move to dismiss under the Federal Rules.  Nor did he attempt to move under PA-UPEPA's procedural provisions.  *Salaam*, 350 F.R.D. at 18.  The disclaimer of either procedural vehicle makes this case highly unusual and the issues raised on appeal unnecessarily complicated.  But in an ordinary case in federal court, where a defendant invokes immunity through a Rule 12 or Rule 56 motion or seeks fees through a Rule 54 motion, the applicability of the Act's immunity and fee-shifting provisions is straightforward.

To determine if PA-UPEPA applies, courts exercising diversity jurisdiction must first ask whether a Federal Rule of Civil Procedure "answers the question in dispute."  *Berk v. Choy*, 607 U.S. 187, 192 (2026) (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010)).  If there is no Federal Rule "on point," *id.*, courts must next consider whether the state law is substantive, as described in *Erie Railroad Co. v. Tomkins*, 304 U.S. 64 (1938).  Under *Erie* and its progeny, courts examine "whether the state law is outcome-determinative and whether failure to apply the state law would frustrate the twin aims of the *Erie* Rule to discourage forum shopping and avoid inequitable administration of the law."  *Schmigel v. Uchal*, 800 F.3d 113, 119 (3d Cir. 2015).  Finally, courts must consider "whether any countervailing federal interests prevent the state law from being applied in federal court."  *Id.*

9

Applying these principles, PA-UPEPA's immunity and fee-shifting provisions plainly apply in federal court.

### A. PA-UPEPA's Immunity and Fee-Shifting Provisions Are <u>Substantive and Do Not Conflict with the Federal Rules.</u>

The immunity and fee-shifting provisions easily pass the threshold question: None of the Federal Rules of Civil Procedure "answer[] the question in dispute." *Berk*, 607 U.S. at 192.

First, with respect to immunity, "when state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity," unless "the state rule is in conflict with federal law." *Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (quoting *Ferri v. Ackerman*, 444 U.S. 193, 198 (1979)); *see also In re City of Philadelphia Litig.*, 49 F.3d 945, 957 (3d Cir. 1995) ("[I]t is state law that provides the substantive doctrine of immunity."). For this reason, this Circuit applies state law in assessing whether a defendant is immune from suit under those laws. *See Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360, 1374 (3d Cir. 1993) ("consider[ing] the merits" of a defendant's claim of immunity under Pennsylvania's Good Samaritan law); *accord Great N. Ins. Co. v. Whipple-Allen Real Est.*, 2018 WL 3618689, at *5 (W.D. Pa. July 30, 2018) ("district courts routinely grant motions to dismiss in this district on the basis of immunity under the [Pennsylvania] Tort Claims Act"); *Ali v. McClinton*, 2017 WL

2588425, at *2 (E.D. Pa. June 14, 2017) ("[U]nder the *Erie* doctrine, state rules of immunity govern actions in federal court alleging violations of state law.").

As detailed above, PA-UPEPA grants a substantive immunity against a "cause of action based on protected public expression," which includes a state defamation claim arising from speech on a matter of public concern. *See supra* at 5-7. This immunity does not conflict with any federal procedural rule. In fact, it attaches based on standards that mirror the Federal Rules. *See supra* at 6. The two work in tandem: Rules 12 and 56 answer whether defendants are entitled to judgment as a matter of law, while § 8340.15 answers whether defendants have "protected public expression immunity."

Once PA-UPEPA's immunity attaches – *i.e.*, a court finds that that any of the Act's three standards is met – the court is required to award attorneys' fees. 42 Pa.C.S.A. § 8340.18(a)(1). Like other state laws awarding fees, the Act's fee-shifting provision does not conflict with the Federal Rules. Rather, the Rules authorize these awards. *See* Fed. R. Civ. P. 54(d)(2)(B)(ii) (allowing motions for fees that "specify . . . the statute, rule, or other ground entitling the movant to the award"); *see also Richey v. Showtime Networks Inc.*, 2026 WL 867264, at *6 (D. Del. Mar. 30, 2026) (Bibas, J.) (indicating that request for fees pursuant to New York's anti-SLAPP law could be brought pursuant to Rule 54). This Court has thus repeatedly affirmed fee awards pursuant to state fee-shifting statutes. *E.g.*,

11

*Boles v. Wal-Mart Stores, Inc.*, 650 F. App'x 125, 129 (3d Cir. 2016) (affirming award of fees under New Jersey Law Against Discrimination); *Moody v. Twp. of Marlboro*, 855 F. Supp. 685 (D.N.J. 1994) (awarding fees under New Jersey's Conscientious Employee Protection Act), *aff'd*, 54 F.3d 769 (3d Cir. 1995).

Turning to *Erie*'s second step, PA-UPEPA's immunity and fee-shifting provisions are outcome-determinative – together, they determine whether defendants targeted with meritless lawsuits based on their public expression must bear the costs of those lawsuits. *See Paucek*, 349 F.R.D. at 518 ("Failing to apply [New Jersey] UPEPA's substantive fee-shifting provision . . . would be outcome determinative . . . ."). Indeed, it has long been held that, "for *Erie* purposes, a party's asserted right to attorneys' fees is a matter of substantive state law." *Chin v. Chrysler LLC*, 538 F.3d 272, 279 (3d Cir. 2008). As the Supreme Court has explained, a statutory right to attorneys' fees reflects "a substantial policy of the state" and "should be followed" in ordinary diversity cases. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975); *see also Montgomery Ward & Co. v. Pac. Indem. Co.*, 557 F.2d 51, 56 (3d Cir. 1977) ("[S]tate rules concerning the award of attorneys' fees are to be applied in diversity cases whether these rules provide for an award or deny it, provided such rules do not run counter to federal statutes or policy considerations.").

12

Further, declining to apply the immunity and fee-shifting provisions in federal court would result in forum shopping – plaintiffs would be incentivized to file their lawsuits in federal court, where they could evade PA-UPEPA's reach, frustrating the Act's clear intent. *See Paucek*, 349 F.R.D. at 518 (collecting cases); *cf. Alyeska Pipeline*, 421 U.S. at 259 n.31 (explaining that *Erie* did not alter the well-established principle that state fee-shifting policy should not be "thwarted and the right so plainly given destroyed by the removal of the cause to the federal courts"). Just as the Second Circuit explained when applying similar provisions of Nevada's anti-SLAPP law, applying PA-UPEPA's immunity and fee-shifting provisions is "unproblematic" because they "would apply in state court had suit been filed there," are "consequential enough that enforcement in federal proceedings will serve to discourage forum shopping and avoid inequity," and do not "squarely conflict with a valid federal rule." *Adelson*, 774 F.3d at 809.

Despite this straightforward application of *Erie* principles, three district courts have held that PA-UPEPA's immunity provision does not apply in federal court. Those decisions, however, arose from parties raising the immunity improperly or from misunderstandings of the Act's structure. For example, a defendant in the Western District of Pennsylvania brought a "special motion for dismissal" pursuant to § 8340.16. *Jakes v. Youngblood*, 782 F. Supp. 3d 210, 216 (W.D. Pa. 2025). Although the court held that the "motion must fail on procedural

13

grounds as the subsection under which it was brought is ineffectual," it nevertheless evaluated whether the immunity claimed under § 8340.15 applied in federal court. The court started with the incorrect notion that § 8340.15 "creates a mechanism for a defendant to resolve a case pre-trial." *Id.* at 216-18. Based on that misunderstanding, it held that § 8340.15 "supplants" Rules 12 and 56. *Id.* Adopting this mistaken logic, a court in the Eastern District of Pennsylvania held, with no independent analysis, that PA-UPEPA's immunity provision "creates a procedural mechanism that does not apply in federal court" and that, "by necessity," the Act's fee-shifting provision "is not applicable either." *Henrich v. Colby's Crew Rescue*, 2026 WL 839119, at *9 (E.D. Pa. Mar. 26, 2026). The court below also followed the Western District when confronted with Appellant's choice not to use any existing procedural device to raise PA-UPEPA's immunity. *See supra* at 2. In this procedural vacuum, the court erroneously held that § 8340.15 "answers th[e] same question" as Federal Rules for dismissal, again despite that section containing no procedure whatsoever. *Salaam*, 350 F.R.D. at 20.[9]

---

[9] In contrast, other district courts have left open whether PA-UPEPA applies in federal court. A court in the Middle District of Pennsylvania, for example, concluded that PA-UPEPA's fee-shifting provision "may well apply" following dismissal pursuant to Rule 12(b)(6), but it deferred ruling on that issue until the defendant decided whether to seek attorneys' fees in federal court or through a separate SLAPP-back claim. *Vespico v. Kass-Gerji*, 2026 WL 736463, at *11-12 (M.D. Pa. Mar. 16, 2026). That same day, a court in the Eastern District of Pennsylvania deferred ruling on a defendant's request for fees, saying it required

These decisions misconstrue PA-UPEPA's immunity provision. As explained above, that immunity does not depend on a particular procedural "mechanism." *See* Berry & Gurney, *supra* note 3 at 18-20, 22-23 (explaining that "[n]othing in the Pennsylvania law's substantive provisions is tied to any particular procedure").[10] Rather, § 8340.15 provides substantive standards for immunity that apply irrespective of how a defendant seeks dismissal. In other words, the immunity applies regardless of whether a defendant seeks dismissal under Rules 12 or 56 in federal court, through preliminary objections or a motion for summary judgment in Pennsylvania state court, or, if a rule is adopted for use in state court, pursuant to PA-UPEPA's "special motion" provision. *See supra* at 5-7.

**B.    Other Courts' Analyses of Different States' Anti-SLAPP Laws Support the Application of PA-UPEPA in Federal Court.**

Determining whether a state law applies in federal court requires assessing that "particular state law." *Berk*, 607 U.S. at 196 (explaining that prior case law "did not identify and exempt a broad category" of similar laws). This

---

more detailed briefing on the Act's applicability in federal court. *McCaffery v. N.Y. Univ. Sch. of Law*, 2026 WL 746606, at *12 (E.D. Pa. Mar. 16, 2026).

[10] *See also* Thomas G. Wilkinson, Jr., *What Pennsylvania Can Expect from Anti-SLAPP Law*, LAW360 (Sept. 30, 2024) ("The Act's fee shifting provision . . . should be deemed substantive law that apply in federal court because the immunity is not tied to any particular court procedure. The immunity can be raised in any pleading or motion permitted under the governing rules of civil procedure."), https://bit.ly/4gQPLJr.

individualized assessment is particularly important for anti-SLAPP laws, which vary in structure and scope. *See Paucek*, 349 F.R.D. at 511 ("Instead of adopting a categorical rule that anti-SLAPP statutes do or do not apply in federal court, the courts of appeal have examined the text and structure of each state anti-SLAPP law in question to determine whether they conflict with the Federal Rules."). Thus, reliance on other Circuit's determinations about different anti-SLAPP laws, *see, e.g.*, *Salaam*, 350 F.R.D. at 20 & n.5; *Jakes*, 782 F. Supp. 3d at 217-18, ignores the need to consider each law's particularities. Under the requisite individualized analysis, PA-UPEPA's substantive provisions pass with flying colors. *See supra* at 10-15. To the extent other courts' analyses are relevant, however, they support the application of PA-UPEPA's substantive provisions in federal court.

Decisions applying New York's anti-SLAPP law are instructive, including, for example, Judge Bibas's conclusion that New York's law does not conflict with the Federal Rules. *Richey*, 2026 WL 867264, at *5 (D. Del. Mar. 30, 2026) (Bibas, J., sitting by designation) (citing *Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 183-84, 189 n.24 (S.D.N.Y. 2024)). Judge Bibas recognized that New York's law, like Pennsylvania's, provides two forms of relief: (1) "a procedural mechanism" for dismissal and (2) a "substantive right to costs and attorney's fees." *Id.*. While those two provisions are triggered by the same standard – a showing that a claim "lacks a substantial basis" – they operate independently. As Judge Bibas

16

explained, "the law does not dictate how the defendant must demonstrate that deficiency to get fees, nor does it condition fee recovery on dismissal under the anti-SLAPP mechanism." *Id.* Thus, "[n]othing in Rule 12 'answers the disputed question.'" *Id.* (quoting *Berk*, 607 U.S. at 192).

Judge Bibas cited *Bobulinski v. Tarlov*, in which Judge Paul Oetken of the Southern District of New York offered a detailed *Erie* analysis. There, Judge Oetken held that the law's fee-shifting provision "is doing no procedural work; it is merely defining the substantive standard for entitlement to attorney's fees." *Bobulinski*, 758 F. Supp. 3d at 186. Because the provision passed the first test – it answered a question not controlled by a Federal Rule – the court proceeded to the second part of the analysis: whether applying the provision was outcome-determinative and would further *Erie*'s "twin aims." *Id.* If the fee-shifting provision did not apply, Judge Oetken explained, federal defendants would need "to pay the expenses of defending meritless SLAPP suits out of their own pockets," while state court defendants "would receive the fees intended for them by their state legislature" – precisely the "inequitable outcome" that "*Erie* and its progeny sought to avoid." *Id.* Judge Oetken further noted that plaintiffs "may choose to bring meritless SLAPP suits in federal court to avoid having to pay attorneys' fees," raising serious forum-shopping concerns. *Id.*

17

*Bobulinski* was a leader in an "emerging trend of cases favoring the application of the substantive standards of the New York anti-SLAPP statute in federal court." *Lively v. Wayfarer Studios LLC*, 2026 WL 852733, at *4 (S.D.N.Y. Mar. 27, 2026) (collecting cases); *see also Grifols, S.A. v. Yu*, 2026 WL 836657, at *4 (S.D.N.Y. Mar. 26, 2026) (citing "weight of the authority" now recognizing substantive features apply in federal court, "[s]tarting with Judge Oetken's decision in *Bobulinski*"). The District of New Jersey came to the same conclusion when evaluating New Jersey's anti-SLAPP law. The court held that the law applied in federal court because "[a]ll a defendant has to do" to obtain fees under the law "is file an ordinary Rule 12 or Rule 56 motion at the appropriate stage of the litigation and prevail under the familiar standards governing those motions." *Paucek*, 349 F.R.D. at 514; *accord Jones v. Kleinman*, 2026 WL 1470538, at *1 n.1 (D.N.J. May 26, 2026) (fees may "be available when a defendant secures dismissal in the federal court under either Rule 12 or 56"); *Farina v. Omari*, 2026 WL 1552256, at *6 (D.N.J. June 2, 2026) (same).

Other courts have employed similar reasoning. The Fourth Circuit, applying Virginia's immunity-based anti-SLAPP statute, explained that the statute "authorizes an award whenever a suit is dismissed pursuant to anti-SLAPP immunity, whether at the threshold, at summary judgment, or after a trial on the merits." *Fairfax v. CBS Broad. Corp.*, 2 F.4th 286, 297 (4th Cir. 2021). Although

18

the Fourth Circuit declined to exercise its discretion under Virginia's law to award fees in that case, federal courts have had no trouble applying that law's immunity and attendant fee-shifting provision. *E.g.*, *Fairfax v. N.Y. Pub. Radio*, 2023 WL 3303125, at *8 (E.D. Va. Apr. 4, 2023). PA-UPEPA's mandatory fee-shifting operates similarly. *See* 42 Pa.C.S.A. §§ 8340.15, 8340.18. As does Florida's fee-shifting provision, which applies in federal court because it "fuses with Rules 8, 12, and 56 by entitling the prevailing party to fees and costs if, after invoking the devices set forth by those rules, a court finds an action is 'without merit' and thus prohibited." *Bongino v. Daily Beast Co.*, 477 F. Supp. 3d 1310, 1323 (S.D. Fla. 2020). Florida's fee-shifting provision, like Pennsylvania's, was "enacted to accomplish a 'fundamental state policy' – deterring SLAPP suits." *Id.*

Though other courts have held that certain states' anti-SLAPP laws do not apply in federal court, *see Salaam*, 350 F.R.D. at 20 n.5 (citing cases), those rulings have no bearing on the applicability of Pennsylvania's law. They are instead limited to state laws allowing defendants to pursue special motions that alter pleading standards or shift burdens. For example, in *Carbone v. Cable News Network*, the Eleventh Circuit held that Georgia's special motion-to-strike provision conflicted with the federal motion to dismiss and summary judgment standards because the court was required to grant a defendant's motion to strike

19

unless the nonmoving party established a "probability" of prevailing on the claim. 910 F.3d 1345, 1350-51 (11th Cir. 2018).

In the limited cases where courts have ruled that fee-shifting provisions – otherwise substantive elements of anti-SLAPP laws – are not applicable in federal court, it is generally because those provisions are predicated on prevailing on a particular motion provided under state law. For example, in *La Liberte v. Reid*, the Second Circuit determined that the fee-shifting provision in California's anti-SLAPP law did not apply in federal court because that provision awarded fees "*only* to a 'prevailing defendant *on a special motion to strike*." 966 F.3d 79, 88-89 (2d Cir. 2020) (emphasis in original). The D.C. Circuit likewise reasoned that applying the District of Columbia's fee-shifting provisions would require the court to "re-write the special motion to dismiss provision" because fee-shifting was based on prevailing on a special motion, which did not apply in federal court. *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1334-35, 1337 n.5 (D.C. Cir. 2015); *see also Klocke v. Watson*, 936 F.3d 240, 247 n.6 (5th Cir. 2019) (fee-shifting provisions of Texas's law depend on "burden-shifting early dismissal framework" that does not apply in federal court).[11]

---

[11] *Amici* do not intend to suggest these decisions are correct. Rather, an array of cases have come to the opposite conclusion, holding that states' anti-SLAPP laws apply in federal court, even when they require the filing of special motions. *E.g.*, *Clifford v. Trump*, 818 F. App'x 746, 747 (9th Cir. 2020) (holding that Texas's anti-SLAPP motion to dismiss procedures apply in federal court); *Godin v.*

Those courts, however, also suggested that states could have enacted fee-shifting provisions that *would* apply in federal court, for example by "award[ing] attorneys' fees to the prevailing party in any defamation action," *La Liberte*, 966 F.3d at 89 n.6, or "mak[ing] attorneys' fees available to parties who obtain dismissal by other means," *Abbas*, 783 F.3d at 1337 n.5; *id.* at 1335 (District of Columbia "easily could have" authorized "courts to award attorney's fees to prevailing defendants in these kinds of defamation cases").

That is precisely what Pennsylvania did through PA-UPEPA.  Under elementary *Erie* principles, a defendant may be awarded damages under *state* substantive law when a suit is dismissed pursuant to *federal* procedural rules.  As Judge Oetken explained, there is a fundamental difference between the anti-SLAPP laws at issue in cases like *La Liberte* and one that "does not condition an award of attorneys' fees solely upon prevailing under the procedural provisions of [a state's] anti-SLAPP statute, as opposed to under federal law." *Bobulinski*, 758 F. Supp. 3d at 184 (quoting *Cheng v. Neumann*, 106 F.4th 19, 24 n.2 (1st Cir. 2024)).  And the mere "fact that procedural provisions" of an anti-SLAPP law "might conflict with the Federal Rules of Civil Procedure does not deprive the party on the opposite end of a SLAPP lawsuit from the substantive rights" the law provides.  *Grifols*, 2026

---

*Schencks*, 629 F.3d 79, 88 (1st Cir. 2010) (holding that Maine's special motion to dismiss applies in federal court).  The Court need not address that circuit split, however, in light of PA-UPEPA's text and structure.

21

WL 836657, at *5.  Indeed, substantive protections that operate independently of special motions – such as PA-UPEPA's immunity and fee-shifting provisions – raise none of the issues identified by federal courts when declining to apply state anti-SLAPP laws and are therefore applicable in federal court.

### III.    Denial of PA-UPEPA's Immunity Is Immediately Appealable in Appropriate Cases.

If a federal court denies a claim of PA-UPEPA's immunity raised through a proper procedural vehicle (*i.e.*, Federal Rules 12 or 56), that denial should be immediately appealable under the collateral order doctrine.  *See Kulwicki v. Dawson*, 969 F.2d 1454, 1459 (3d Cir. 1992) (outlining doctrine's requirements).  In general, when a claim of immunity is denied, its appealability "turn[s] on whether the defendant has asserted a defense to liability or instead an immunity from suit," *Geo Grp. v. Menocal*, 607 U.S. ---, 146 S. Ct. 774, 781 (2026), and "whether the defendants' appeal raises pure questions of law," *Blaylock v. City of Philadelphia*, 504 F.3d 405, 409 (3d Cir. 2007).  *See Van Cauwenberghe v. Biard*, 486 U.S. 517, 524 (1988) ("the critical question . . . is whether 'the essence' of the claimed right is a right not to stand trial").  This Court has held that denials of various immunities are "final decisions" for purposes of appellate review, as they are "grounded in the need to free parties from the costs, burdens, and consequences

22

of having to be party to an action and to defend one's self." *Bell Atl.-Pa., Inc. v. Pa. Pub. Util. Comm'n*, 273 F.3d 337, 345 (3d Cir. 2001) (collecting cases).

Like those immunities, PA-UPEPA fits comfortably within the collateral order doctrine. The Act seeks to "encourage continued participation in matters of public significance" by targeting lawsuits that "chill the valid exercise of protected public expression." 42 Pa.C.S.A. § 8340.12. It does so by granting immunity to "parties exercising the rights to protected public expression." *Id.* That immunity protects defendants from the burdens of prolonged litigation. *See supra* at 5-7 (discussing immunity from suit provided by the Act); PA. S. LEGIS. J., 2024 Reg. Sess. No. 32, at 647 (July 9, 2024) (Sen. Maria Collett: PA-UPEPA protects against "excessive stress" caused by meritless lawsuits). For example, in state court, the Act is designed to stay "all other proceedings in the action" while an immunity determination is pending, including discovery. 42 Pa.C.S.A. § 8340.16(e)(1). If the speaker is immune, courts are required to award attorneys' fees. *Id.* § 8340.16. And, because PA-UPEPA's protections are "effectively lost if a case is erroneously permitted to go to trial," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), the Act provides that a denial of immunity in state court is "immediately appealable," 42 Pa.C.S.A. § 8340.17. As the district court below recognized, "[t]hese provisions collectively work to insulate immunity-claimants

23

from the burdens of trial until such time as their entitlement to the immunity is conclusively decided." *Salaam*, 2025 WL 2375397, at *1 n.1.

This Court has applied the collateral order doctrine to immunities conferred by state statute bearing these same hallmarks, just as denials of the judicially created qualified immunity are subject to immediate interlocutory appeal. *E.g.*, *Mitchell*, 472 U.S. at 525 (denial of qualified immunity involving pure question of law "easily meets" collateral order requirements); *Lozano v. New Jersey*, 9 F.4th 239, 244 (3d Cir. 2021) (qualified immunity under New Jersey's Civil Rights Act is an "immunity from suit" for purposes of the collateral order doctrine).

Like each of those immunities, (1) the decision of whether a defendant is immune from suit under PA-UPEPA "conclusively determines" a defendant's right not to stand trial; (2) the defendant's "entitlement not to be forced to litigate" is "important" and "conceptually distinct from the merits of the plaintiff's claim"; and (3) the denial of the immunity is "unreviewable," as an immunity from suit "is effectively lost if a case is erroneously permitted to go to trial." *Mitchell*, 502 U.S. at 526-28 (applying collateral order requirements). Moreover, the determination of whether PA-UPEPA's immunity applies to a claim turns on a pure legal issue – depending on how the immunity is raised, a court need only decide whether a

24

plaintiff can state a claim or establish a prima facie case, or a defendant is entitled to judgment as a matter of law.  *See supra* at 6.

The application of the collateral order doctrine here is particularly apt:  Just as the doctrine allows interlocutory appeals from denials of immunity to those alleged to have violated a speaker's First Amendment rights in the qualified immunity context, it must apply when speakers themselves are denied immunity based on their exercise of First Amendment rights.  *See, e.g.*, *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 985-86 (3d Cir. 2014) (permitting interlocutory appeal and affirming denial of summary judgment in case brought by public employee alleging First Amendment retaliation for speech on matter of public concern).  Any other conclusion would subjugate expressive freedoms to those accused of violating them.  *Cf. Franchini v. Investor's Bus. Daily, Inc.*, 981 F.3d 1, 7 (1st Cir. 2020) (allowing interlocutory appeal under Maine's anti-SLAPP law, which gives defendants "the right to avoid litigation directed against their legitimate exercise of the right to petition"); *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 177 (5th Cir. 2009) (allowing interlocutory appeal under

Louisiana's anti-SLAPP law, which "immuniz[es] speakers from suits stemming from the exercise of First Amendment rights").[12]

In contrast, this Court has declined to apply the collateral order doctrine when defendants seek to appeal from denials of "immunities" in fundamentally different circumstances. For example, denials of motions invoking the "immunity" under the *Noerr-Pennington* doctrine, which offers "protection to citizens' petitioning activity," are not appealable collateral orders because that doctrine provides a defense, not an immunity. *See We, Inc. v. City of Philadelphia*, 174 F.3d 322, 327-28 (3d Cir. 1999) (noting courts had not determined "an immunity from suit was necessary" to prevent chilling petitioning activity subject to doctrine). Similarly, this Court has declined to extend the collateral order doctrine to state-created "immunities" that cannot be immediately appealed in state court. *E.g.*, *Brown v. Grabowski*, 922 F.2d 1097, 1109 (3d Cir. 1990) (discussing that

---

[12] The courts of appeals are divided over "whether [they] have jurisdiction over an appeal from a district court's denial of an anti-SLAPP motion to strike before entry of a final judgment." *IQE PLC v. Newport Fab, LLC*, 155 F.4th 1370, 1375 (Fed. Cir. 2025) (holding that denial of anti-SLAPP motion pursuant to California law is "immediately appealable"). Most recently, the Ninth Circuit overruled its earlier decisions holding that denials of anti-SLAPP motions pursuant to California's law were immediately appealable, a decision that is subject to a pending petition for writ of certiorari. *See Gopher Media LLC v. Melone*, 154 F.4th 696 (9th Cir. 2025). In that decision, the Ninth Circuit emphasized that California courts had "discussed anti-SLAPP protection in a way that casts doubt on our analogy between anti-SLAPP protection and immunity defenses." *Id.* at 704. No such doubt exists here given PA-UPEPA's text and structure.

New Jersey's Tort Claims Act does not permit interlocutory appeal in state court);

*Kevin C. v. Foundations Behav. Health*, 2023 WL 3244575, at \*4 (3d Cir. May 4,

2023) (suggesting that if denials of immunity pursuant to Pennsylvania's Mental

Health Procedures Act were immediately appealable, it would "imply that [such]

immunity was understood to be immunity from suit").

But here, unlike the judicially created *Noerr-Pennington* doctrine,

Pennsylvania explicitly determined that an "immunity" was necessary.  Moreover,

"whether or not immunity from suit is 'necessary' to avoid chilled speech is not the

relevant question."  *Salaam*, 2025 WL 2375397, at \*1 n.1.  Instead, "[w]hat

matters is 'whether the essence of the claimed right' – *i.e.*, the purpose and effect

of [PA-UPEPA's] immunity provision – 'is a right not to stand trial.'"  *Id.* (quoting

*Van Cauwenberghe*, 486 U.S. at 524).  That is precisely the right PA-UPEPA

creates.  *See supra* at 5-7.  For that reason, PA-UPEPA permits immediate

interlocutory appeals, *see* 42 Pa.C.S.A. § 8340.17, another surefire sign that it

creates an immunity from suit, not a mere defense to liability.  *See NCDR, L.L.C.*

*v. Mauze & Bagby, P.L.L.C.*, 745 F.3d 742, 750 (5th Cir. 2014) ("[N]umerous

courts have recognized that the absence or presence of interlocutory statutory

review mechanisms at the state level informs the question of whether interlocutory appeal is permissible in federal courts").

## CONCLUSION

*Amici* reiterate that they take no position on the merits of this case. Rather, as longstanding advocates for Pennsylvania's anti-SLAPP law, they write to explain that its immunity and fee-shifting provisions apply in federal court and that denial of immunity, in appropriate cases, should be immediately appealable.

Dated:  June 4, 2026

Respectfully submitted,

*/s/ Ronald G. London*
Ronald G. London
FOUNDATION FOR INDIVIDUAL
RIGHTS AND EXPRESSION
700 Pennsylvania Ave., SE
Suite 340
Washington, DC 20003
(215) 717-3473
ronnie.london@fire.org

*Counsel for* Amici Curiae

28

## COMBINED CERTIFICATIONS

### CERTIFICATE OF BAR MEMBERSHIP

Pursuant to Local Rule of Appellate Procedure 28.3(d), undersigned counsel for *amici* hereby certifies that he is a member in good standing of the Bar of the Court of Appeals for the Third Circuit.

### CERTIFICATE OF TYPE-VOLUME LIMITATIONS

Undersigned counsel hereby certifies that the foregoing Brief of *Amici Curiae* complies with:

1) The type-volume limitation of Fed. R. App. P. 29(a)(5) because it contains 6,494 words, excluding the portions exempted by Fed. R. App. 32(f), as calculated by the word processing system used to prepare the brief, and

2) The typeface and style requirements of Fed. R. App. 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman.

### CERTIFICATE OF IDENTICAL BRIEFS

Pursuant to Local Rule of Appellate Procedure 31.1(c), undersigned counsel for *amici* hereby certifies that the electronic version of the foregoing Brief of *Amici Curiae* filed with the Court via CM/ECF is identical to the printed hard-copy version filed with the Court.

## CERTIFICATION OF VIRUS CHECK

Pursuant to Local Rule of Appellate Procedure 31.1(c), undersigned counsel hereby certifies that a virus check of the electronic PDF version of this brief was performed using SentinelOne Singularity, and that no virus was detected.

Date: June 4, 2026                    */s/ Ronald G. London*
                                      Ronald G. London

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 4th day of June 2026, I caused the foregoing Brief of *Amici Curiae* to be electronically filed with the United States Court of Appeals for the Third Circuit using the Court's CM/ECF system. I further certify that to the best of my knowledge counsel for all participants are registered CM/ECF users and service will be accomplished via the CM/ECF system.

*/s/ Ronald G. London*
Ronald G. London