# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

Docket No. 25-2230

YUSEF SALAAM, ANTRON BROWN, KEVIN RICHARDSON, RAYMOND SANTANA, and KOREY WISE,

Plaintiffs-Appellees,

v.

DONALD J. TRUMP,

Defendant-Appellant.

## BRIEF OF APPELLEES

On appeal from an Order (denying a motion to dismiss an amended complaint) entered in the United States District Court for the Eastern District of Pennsylvania on June 27, 2025, in Docket No. 24-cv-05560

Shanin Specter
Charles L. Becker
**Kline & Specter, PC**
1525 Locust Street
Philadelphia, PA 19102
(215) 772-1000

*Attorneys for Appellees Yusef Salaam, Antron Brown, Kevin Richardson, Raymon Santana, and Korey Wise*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................iii

I.      JURISDICTIONAL STATEMENT.........................................................1

I.      STATEMENT OF THE ISSUE................................................................1

I.      STATEMENT OF RELATED CASES....................................................1

II.     STATEMENT OF THE CASE..................................................................1

      A.      Defendant has made false statements about Plaintiffs for over thirty years .......................................................................................1

      B.      The district court correctly denied Defendant's first motion to dismiss on the merits and his second motion to dismiss on procedural grounds .................................................................5

IV.     SUMMARY OF ARGUMENT..................................................................7

V.      ARGUMENT ............................................................................................9

      A.      The district court properly denied Defendant's motion to dismiss.............................................................................................9

            1.      The standard for review.......................................................9

            2.      Legal background ...............................................................10

                  a.      Federal courts apply valid federal rules to the exclusion of contrary state laws.............................10

                  b.      PA-UPEPA sets forth a procedure for challenging defamation claims pre-trial ...............10

3. The district court properly denied Defendant's motion to dismiss .............................................. 15

4. Defendant's contrary arguments do not justify reversal of the district court's decision ............................ 21

5. The amicus briefs do not supply a basis for reversal .... 26

B. The district court's order does not qualify as a collateral order .......................................................................... 30

1. Legal background .............................................. 30

2. The order does not meet all prongs of the collateral order doctrine ................................................... 34

a. The order does not involve an important issue that is completely separate from the merits of the action .................................................. 35

b. The order is not effectively unreviewable after final judgment ........................................... 37

3. Defendant's statement of jurisdiction wrongly suggests the appeal implicates an immunity question . 41

VI. CONCLUSION .............................................................. 44

COMBINED CERTIFICATIONS

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases:

*Abbas v. Foreign Policy Grp., LLC,*
783 F.3d 1328 (D.C. Cir. 2015) ..................................................16, 24

*Bell Atlantic–Pa., Inc. v. Pa. Pub. Util. Comm'n,*
273 F.3d 337 (3d Cir. 2001) ...........................................................30

*Berk v. Choy,*
146 S. Ct. 546 (2026) .............................................................. passim

*Carbone v. Cable News Network, Inc.,*
910 F.3d 1345 (11th Cir. 2018) ......................................................24

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ..................................................................16, 18

*Clinton v. Jones.,*
520 U.S. 681 (1997) ........................................................................38

*Donald J. Trump, et al.* v. *Paramount Global, et al.,*
No. 2:24-cv-00236-Z (N.D. Tex.) ...................................................38

*Donald J. Trump, et al.* v. *J. Ann Selzer, et al.,*
No. 4:24-cv-449-RGE-WPK (S.D. Iowa) .......................................38

*Erie R.R. Co. v. Tompkins,*
304 U.S. 64 (1938) .......................................................................6, 10

*Forsyth v. Kleindienst,*
599 F.2d 1203 (3d Cir. 1979) .........................................................37

*Geo Group, Inc. v. Menocal,*
607 U.S. 438 (2026) .........................................................8, 34, 36, 41

*Godin v. Schencks*,
629 F.3d 79 (1st Cir. 2010) ..................................................................43

*Graber v. Doe II*,
59 F.4th 603 (3d Cir. 2023) ...........................................................31, 32

*Henrich v. Colby's Crew Rescue*,
No. CV 25-4961, 2026 WL 839119 (E.D. Pa. Mar. 26, 2026) .........................17

*Hernandez v. Zook*,
No. 560 MDA 2025, 2026 WL 32563
(Pa. Super. Jan. 6, 2026), *reargument denied* (Mar. 16, 2026) ................. passim

*In re Ford Motor Co.*,
110 F.3d 954 (3d Cir. 1997) ...................................................................30

*In re Search of Elec. Commc'ns in the Acct. of chakafattah gmail.com
at Internet Serv. Provider Google, Inc.*,
802 F.3d 516 (3d Cir. 2015) ...................................................................31

*Jakes v. Youngblood*,
782 F. Supp. 3d 210 (W.D. Pa. 2025) ...........................................17, 18, 19, 20

*Justice v. Lombardo*,
208 A.3d 1057 (Pa. 2019) .....................................................................13

*La Liberte v. Reid*,
966 F.3d 79 (2d Cir. 2020) ....................................................................24

*Liberty Synergistics Inc. v. Microflo Ltd.*,
718 F.3d 138 (2d Cir. 2013) ...................................................................43

*Liggon-Redding v. Est. of Sugarman*,
659 F.3d 258 (3d Cir. 2011) ...................................................................18

*Los Lobos Renewable Power, LLC v. Americulture, Inc.*,
885 F.3d 659 (10th Cir. 2018) ................................................................43

*Makaeff v. Trump University, LLC*,
736 F.3d 1180 (9th Cir. 2013) ..................................................16, 20

*Midland Asphalt Corp. v. United States*,
489 U.S. 794 (1989) ...................................................................37

*Mitchell v. Forsyth*,
472 U.S. 511 (1985) ...................................................................33

*Mohawk Indus., Inc. v. Carpenter*,
558 U.S. 100 (2009) ....................................................31, 33, 38

*North-Central Pennsylvania Trial Lawyers Association v. Weaver*,
827 A.2d 550 (Pa. Cmwlth. 2003) ......................................29

*Perrigo Institutional Inv. Grp. v. Papa*,
150 F.4th 206 (3d Cir. 2025) ...................................................9

*Petróleos Mexicanos Refinación v. M/T King A (ex-Tbilisi)*,
377 F.3d 329 (3d Cir. 2004) ..................................................30

*Pierce v. Blaine*,
467 F.3d 362 (3d Cir. 2006) ..................................................31

*Pusey & Jones Co. v. Hanssen*,
261 U.S. 491 (1923) ...................................................................43

*Robinson v. Hartzell Propeller, Inc.*,
454 F.3d 163 (3d Cir. 2006) ....................................33, 34, 38

*Royalty Network, Inc. v. Harris*,
756 F.3d 1351 (11th Cir. 2014) .............................................43

*Shady Grove Orthopedic Associates, P. A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) ....................................17, 21, 22, 28

*Sibbach v. Wilson & Co.,*
312 U.S. 1 (1941) ...................................................................................17

*United States v. Hollywood Motor Car Co.,*
458 U.S. 263 (1982) .............................................................................37

*We, Inc. v. City of Philadelphia,*
174 F.3d 322 (3d Cir. 1999) .................................................... passim

*Will v. Hallock,*
546 U.S. 345 (2006) .........................................................................31, 33

## Pennsylvania Constitution:

PA. CONST. art. V, § 10(c) ...............................................................13, 25, 29

## Statutes:

42 Pa.C.S. § 8332.7 .............................................................................12

42 Pa.C.S. §§ 8340.11-8340.18.....................................................6, 10

42 Pa.C.S. § 8340.12 ...........................................................................12

42 Pa.C.S. § 8340.13 ...........................................................................15

42 Pa.C.S. § 8340.15 ...................................................................... passim

42 Pa.C.S. § 8340.16 .......................................................................13, 23

42 Pa.C.S. § 8340.18 ...........................................................................14

42 Pa.C.S. § 8521 ................................................................................12

42 Pa.C.S. § 8541 ................................................................................12

## **Rules:**

Fed. R. Civ. P. 12............................................................................................x

Fed. R. Civ. P. 56............................................................................................x

## I.   JURISDICTIONAL STATEMENT

The Court lacks jurisdiction under 28 U.S.C. § 1291 and the collateral order doctrine for the reasons discussed herein at Section VI.B.

## II.   STATEMENT OF THE ISSUE

Defendant's appeal raises two questions for this Court's consideration

1.   Did the district court properly deny Defendant's motion to dismiss where the motion was brought under a Pennsylvania statute that conflicts with the Federal Rules of Civil Procedure and is currently inoperative?

   *Suggested answer: Yes.*

2.   Should the appeal by quashed because the June 27 Order does not meet criteria for appeal pursuant to the collateral order doctrine?

   *Suggested answer: Yes.*

## III.   STATEMENT OF RELATED CASES

There are no pending cases or proceedings related to this matter.

## IV.   STATEMENT OF THE CASE

**A.   Defendant has made false statements about Plaintiffs for over thirty years.**

On April 19, 1989, a series of assaults occurred in Central Park, New York City. *See* Appx63, ¶¶ 16-17. Plaintiff-Appellees, Yusef Salaam, Antron Brown, Kevin Richardson, Raymond Santana, and Korey Wise ("Plaintiffs") were between 14 and 16 years old at the time. Plaintiffs were arrested and

subjected to hours of coercive interrogation, under duress and with no attorney present. *Id.*, ¶¶ 18-19. Four Plaintiffs eventually gave false statements purporting to admit to having participated in the assaults. Appx63-64, ¶¶ 20-21.

Just days after the assaults took place, Defendant-Appellant Donald J. Trump ("Defendant") placed an advertisement in four New York City newspapers calling for the boys to be executed. Appx64, ¶ 24. The advertisement read in part:

> Mayor Koch has stated that hate and rancor should be removed from our hearts. I do not think so. I want to hate these muggers and murderers. They should be forced to suffer . . . I want to hate these murderers and I always will . . . I am not looking to psychoanalyze or understand them, I am looking to punish them . . . BRING BACK THE DEATH PENALTY AND BRING BACK OUR POLICE!

Appx86. The Ad prompted then-Mayor Ed Koch to respond: "Nobody I know of in Western society believes that under any circumstances would you ever impose the death penalty on juveniles." Appx68, ¶ 52.

Shortly after their release from police custody, Plaintiffs recanted their false confessions. Appx64, ¶ 23. Plaintiffs all pled not guilty from the outset of their criminal cases, but they were each convicted of various crimes based

on their previous confessions and spent years in prison. Appx64-65, ¶¶ 27-31. Plaintiffs never admitted to, never were accused of, nor were charged with killing anyone, and none of the victims of the Central Park assaults died. Appx62, ¶ 5; Appx68, ¶50.

Thirteen years later, in 2002, the true perpetrator Matias Reyes came forward and confessed. Appx65, ¶ 32. Reyes provided the police with new information that only the true culprit would know. *Id.*, ¶ 33. New DNA tests were then conducted that conclusively exonerated Plaintiffs. *Id.*, ¶ 33. The Manhattan District Attorney's Office recommended that Plaintiffs' convictions be vacated, and on December 19, 2002, New York Supreme Court Justice Charles J. Tejada vacated the convictions, formally exonerating Plaintiffs. Appx67, ¶ 39. Plaintiffs brought suit against the City of New York for its wrongful conduct toward them. When the City agreed to settle the suit, Mayor De Blasio described the City as having a "moral obligation to right this injustice." *Id.*, ¶ 40.

Despite Plaintiffs' exoneration, Defendant has continued to wage a public, decades-long campaign of harassment and intimidation against them. He has publicly spread falsehoods and hateful rhetoric about the five men. Appx70-76. In Defendant's own words, his harassment campaign is

intended to foment "hate and rancor" against Plaintiffs and to help Defendant's personal brand and political prospects by currying favor with people who are "tired of politically correct." Appx71-72, ¶¶ 72–73.

This harassment culminated at the September 10, 2024 presidential debate between Defendant and Vice President Kamala Harris that took place at the Constitution Center in Philadelphia, Pennsylvania. Appx67, ¶41. The debate was watched by over 67 million Americans. *Id.* At the debate, Vice President Harris said the following:

> Let's remember, this is the same individual [Trump] who took out a full-page ad in The New York Times calling for the execution of five young Black and Latino boys who were innocent, the Central Park Five. Took out a full-page ad calling for their execution.

*Id.*, ¶ 42. Defendant responded:

> They come up with things like what she just said going back many, many years when a lot of people including Mayor Bloomberg agreed with me on the Central Park Five. They admitted – they said, they pled guilty. And I said, well, if they pled guilty they badly hurt a person, killed a person ultimately. And if they pled guilty – then they pled we're not guilty."

*Id.*, ¶ 44.

4

Defendant's conduct has caused Plaintiffs severe emotional distress, physical injuries, and reputational harm, as set forth in the First Amended Complaint. Appx80-83.

**B.    The district court correctly denied Defendant's first motion to dismiss on the merits and his second motion to dismiss on procedural grounds.**

Plaintiffs filed a Complaint asserting claims against Defendant for defamation, false light, and intentional infliction of emotional distress. Appx61. Defendant moved to dismiss the Complaint under Rule 12(b)(6). The Court denied Defendant's motion to dismiss with respect to Plaintiffs' defamation and false light claims. Appx37. The Court dismissed Plaintiffs' defamation-by-implication theory without prejudice because the Complaint did not specifically identify the defamatory implication created by Defendant's statements. *Id.* The Court dismissed Plaintiffs' claim for intentional infliction of emotional distress ("IIED") without prejudice because Plaintiffs did not allege physical injuries caused by their emotional distress. *Id.* The Court allowed the Plaintiffs leave to file an amended complaint. *Id.*

On May 1, 2025, Plaintiffs filed their Amended Complaint. Appx61. In response to the Amended Complaint, Defendant filed a motion to dismiss

that repeated the same arguments made in Defendant's first motion. But instead of bringing this second motion to dismiss under Rule 12, Defendant purported to bring the motion solely under Section 8340.15 of Pennsylvania's Uniform Public Expression Protection Act ("PA-UPEPA"), codified at 42 Pa.C.S. §§ 8340.11-8340.18.

The district court denied the motion, holding that Section 8340.15 does not apply in federal court because it conflicts with Rules 12 and 56. Appx 46. In its accompanying opinion, the district court explained that Mr. Trump had asked the district court to consider his motion as filed under the procedure described in Section 8340.15 of PA-UPEPA. Appx4-5. The district court explained that Mr. Trump's choice to bring his motion exclusively under a state procedural rule ripened the question of whether the procedure described in Section 8340.15 could apply in federal court as a threshold matter. The district court noted that it was exercising diversity jurisdiction and hence was governed by the principles set forth in *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Section 8340.15 provides the legal standard for assessing the whether a cause of action is cognizable. Appx10. The district court concluded that the procedure described Section 8340.15 is inconsistent with both Rule 12(b)(6) and Rule 56. Appx12-14. The district

6

court held that it was appropriate to apply federal procedural rules and declined to deploy an inconsistent state procedural framework. Appx14-15.

Defendant now appeals this ruling.

## V.    SUMMARY OF ARGUMENT

This Court should dismiss this appeal for lack of jurisdiction. If the Court reaches the merits, it should affirm the district court's order.

*First*, the district court properly denied Defendant's motion to dismiss because Defendant's motion invoked a Pennsylvania statute, Section 8340.15 of PA-UPEPA, that has no application in federal court. Federal Rules of Civil Procedure 12 and 56 supply the exclusive framework for testing the legal and factual sufficiency of a claim in federal court, and they directly answer the same question that Section 8340.15 purports to answer—whether a claim survives pretrial dismissal. As the Supreme Court recently reaffirmed in *Berk v. Choy*, a valid Federal Rule of Civil Procedure displaces conflicting state law whenever it answers the question in dispute, regardless of whether the state rule is substantive or procedural and regardless of whether the two rules would reach the same result.

*Second*, even if an *Erie* analysis were necessary, all three *Erie* factors confirm that Section 8340.15 does not displace Rules 12 and 56. The state and

federal provisions directly collide. The question of whether to apply Rule 12(b)(6) or Section 8340.15 is not outcome-determinative. A strong federal interest favors applying the Federal Rules over an untested patchwork of state anti-SLAPP mechanisms.

*Third*, this Court lacks appellate jurisdiction because the district court's order does not qualify as an appealable collateral order. An interlocutory order is appealable under the collateral order doctrine only if it conclusively resolves an important issue completely separate from the merits and is effectively unreviewable on appeal from a final judgment; the failure of any single prong defeats jurisdiction. A determination under Section 8340.15 is, by its own terms, inseparable from the merits: immunity under that provision arises only if a court first concludes that the plaintiff's claim is legally or factually insufficient, making the "immunity" a downstream reward for a merits ruling rather than an antecedent right to avoid litigation altogether. This is precisely the kind of merits-dependent protection that the Supreme Court has does not qualify as an immunity for purposes of the collateral order doctrine. *Geo Group, Inc. v. Menocal*, 607 U.S. 438, 449 (2026), For the same reason, the order is not effectively unreviewable after final judgment: as this Court held in *We, Inc. v. City of Philadelphia*, 174 F.3d 322

8

(3d Cir. 1999), a privilege that operates as a defense to liability rather than an immunity from suit can be fully vindicated on ordinary appeal from final judgment. Defendant's contrary arguments misread the district court's order as resolving an immunity question it never reached, overstate the jurisdictional significance of PA-UPEPA's First Amendment underpinnings, and rest on out-of-circuit authority addressing materially different anti-SLAPP statutes and different procedural postures. Because Defendants cannot satisfy every prong of the collateral order doctrine, the appeal should be dismissed.

## VI.   ARGUMENT

### A.   The district court properly denied Defendant's motion to dismiss.

#### 1.   The standard for review

This Court exercises do novo review over a district court's denial of a motion to dismiss and the court's assessment of whether a state statute applies in federal court. *Perrigo Institutional Inv. Grp. v. Papa*, 150 F.4th 206, 213 (3d Cir. 2025).

### 2.    Legal background

#### a.    Federal courts apply valid federal rules to the exclusion of contrary state laws.

Federal courts sitting in diversity generally apply state substantive law and federal procedural law. *Berk v. Choy*, 146 S. Ct. 546, 552 (2026) (citing *Erie*, 304 U.S. at 78. When a potential *Erie* question arises but "a Federal Rule of Civil Procedure is on point, a federal court bypasses *Erie*'s inquiry altogether." *Id.* That is because of the Rules Enabling Act, which authorizes the Supreme Court to adopt rules that "govern procedure in all civil actions and proceedings in the United States district courts." *See id.*, quoting 28 U.S.C. § 2072. Under the Rules Enabling Act, a validly enacted federal rule displaces contrary state law regardless of whether the state law at issue is best characterized as procedural or substantive. *Id.*

#### b.    PA-UPEPA sets forth a procedure for challenging defamation claims pre-trial.

In 2024, Pennsylvania enacted the Uniform Public Expression Protection Act, an anti-SLAPP law designed to counter strategic lawsuits against public participation. 42 Pa.C.S. §§ 8340.11-8340.18. Like all anti-SLAPP laws, PA-UPEPA creates a mechanism for challenging the merits of certain speech-based tort claims early in the litigation. *Hernandez v. Zook*, No.

560 MDA 2025, 2026 WL 32563, at **2-3 (Pa. Super. Jan. 6, 2026), *reargument denied* (Mar. 16, 2026) ("UPEPA allows any defendants who think they may be victims of a SLAPP suit to file a so-called 'special motion' for summary judgment during the pleadings stage of the litigation.").

PA-UPEPA begins with a statement of intent in Section 8340.12. In this section, the General Assembly states its intention to protect public expression against chill caused through the abuse of judicial process. 42 Pa.C.S. § 8340.12. The statute strives to accomplish this goal through: (1) a grant of statutory "immunity" to those "parties exercising the rights to protected public expression"; and (2) the award of attorney fees to the prevailing party. *See id.*

Section 8340.15 describes the legal standard by which a court could determine that a defendant is entitled to an immunity within the meaning of the statute 42 Pa.C.S. § 8340.15. Under Section 8340.15, immunity attaches where the plaintiff is unable to state a cause of action upon which relief can be granted, or the plaintiff fails to establish a prima facie case as to each element of the subject claim, or no material issues of genuine fact exist such that the defendant is entitled to judgment as a matter of law. The statute provides:

11

A person is immune from civil liability for a cause of action based on protected public expression if any of the following paragraphs apply:

(1) The party asserting the cause of action based on protected public expression fails to:

    (i) establish a prima facie case as to each essential element of the cause of action; or

    (ii) state a cause of action upon which relief can be granted.

(2) There is no genuine issue as to any material fact, and the person against whom the cause of action based on protected public expression has been asserted is entitled to judgment as a matter of law in whole or in part.

42 Pa.C.S. § 8340.15.

It bears mention that the concept of immunity set forth by Section 8340.15 is distinct from other immunities in Pennsylvania law. Immunities in the Pennsylvania Judicial Code condition immunity on the defendant's legal status or status in a particular factual context. *See, e.g.*, 42 Pa.C.S. § 8521 (immunity of the Commonwealth); 42 Pa.C.S. § 8541 (immunity of local governments); 42 Pa.C.S. § 8331 (immunity of medical good Samaritans); 42 Pa.C.S. § 8332.7 (immunity of state parol officers). In such provisions, the defendant has a burden to prove its entitlement to immunity by reference to whether the defendant fits within a given category independent of the merits of the plaintiff's claim. Immunity stops litigation before it begins. *See Justice*

*v. Lombardo*, 208 A.3d 1057, 1068 (Pa. 2019). By contrast, under Section 8340.15, immunity can be bestowed only *after* the parties have litigated and after a judicial assessment of the factual and legal merits of the plaintiff's claim. In this context, "immunity" is statutory nomenclature for a defense victory in motion practice. It requires merits-based litigation, rather than ending litigation before a merits decision occurs. 42 Pa.C.S. § 8340.15.

Section 8340.16 seeks to operationalize Section 8340.15 in procedural terms by calling for the promulgation of a "special motion for dismissal" under which a Defendant must file within 60 days of being served with a complaint to invoke PA-UPEPA. 42 Pa.C.S. § 8340.16. As the District Court noted, the Pennsylvania General Assembly does not itself have the power to enact Pennsylvania rules of civil procedure. The substantive of Section 8340.16 can be operationalized only "if the Supreme Court of Pennsylvania promulgates a rule giving it effect." Appx9; *Hernandez*, 2026 WL 32563, at *4 (same). That is because, under the Pennsylvania Constitution, the power to promulgate Rules of Civil Procedure is vested solely in the Pennsylvania Supreme Court. *See* Pa. Const. art. V, § 10(c). Nevertheless, Section 8340.16 calls for a new motion otherwise unknown in Pennsylvania law – the "special motion for dismissal" that combines aspects of a preliminary

motion to dismiss and a post-discovery summary judgment motion that provides a vehicle for seeking dismissal of a plaintiff's claims  under PA-UPEPA.

Section 8340.18 provides for the award of attorneys' fees to the party prevailing under PA-UPEPA. If a defendant is found to be immune under PA-UPEPA, that defendant is entitled to attorneys' fees. 42 Pa.C.S. § 8340.18. As Section 8340.18 provides, "[i]f the party is immune under section 8340.15 (relating to grant of immunity), the court shall award the party attorney fees, court costs and expenses of litigation jointly and severally against each adverse party that asserted the cause of action." 42 Pa.C.S. § 8340.18. Conversely, if a court finds that a defendant's assertion of PA-UPEPA immunity was frivolous or filed solely with the intent to delay proceedings, the plaintiff is entitled to attorneys' fees instead. *See id.*

Certainly the aspects of PA-UPEPA that address procedural concepts are "clearly procedural in nature" and the General Assembly has "conceded as much." *Hernandez*, 2026 WL 32563, at *4. Even the authors of the model legislation on which PA-UPEPA is based have acknowledged the procedural foundations of the statute, noting in a comment that "the Act operates in a procedural manner – specifically, by altering the typical procedure parties

14

follow at the outset of litigation." *Id.* (quoting 42 Pa.C.S. § 8340.13 (Editor's Note: Uniform Law Comment #2)) (alterations in original).

### 3.    The district court properly denied Defendant's motion to dismiss.

When Defendant moved to dismiss, he renounced reliance on any procedural mechanism that would permit him to do so. Appx9. He renounced reliance on Rule 12(b)(6) regarding motions to dismiss brought in federal court. *Id*. He also renounced reliance on Section 8340.16, in which the General Assembly describes a special motion to dismiss that the Pennsylvania Supreme Court could consider enacting as an actual procedural rule (but which the Supreme Court has not done). *Id.* Defendant invoked only Section 8340.15, which does not propose a mechanism for moving to dismiss a complaint.

The district court correctly denied the motion under the circumstances that Defendant presented.

***First***, a valid Rule of Civil Procedure displaces contrary state law even if the state law would qualify as substantive under *Erie*. *Berk*, 146 S. Ct. at 552. Rules 12 and 56 undoubtedly are valid Federal Rules. Both provide a framework that is directly on point for assessing Defendant's motion. Rule

12(b)(6) states that a party may present a defense of "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In turn, Rule 56(a) provides that a defendant may move for summary judgment upon showing that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Rule 56 "prescribe[s] a mechanism for putting a plaintiff to his proof: a motion for summary judgment." *Berk*, 146 S. Ct. at 553 (citing Fed. R. Civ. P. 56). Before ruling on a Rule 56 motion, "the court must allow the nonmovant 'adequate time for discovery.'" *Id.* at 555 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). As the D.C. Circuit has observed, these rules "establish the exclusive criteria for testing the legal and factual sufficiency of a claim in federal court." *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1334 (D.C. Cir. 2015) (quoting *Makaeff v. Trump University, LLC,* 736 F.3d 1180, 1188 (9th Cir. 2013) (Watford, J., dissenting from denial of rehearing *en banc*)).

For these reasons, the district court correctly held that "Rules 12 and 56 govern how — and at what stage — federal courts may dispose of lawsuits before trial, and § 8340.15 answers that same question. As such, it cannot apply in federal court unless Rules 12 and 56 violate the Rules Enabling Act."

16

Appx13.[1] Other district courts that have interpreted PA-UPEPA reached the same conclusion. *See Jakes v. Youngblood*, 782 F. Supp. 3d 210, 217 (W.D. Pa. 2025) (declining to apply Section 8340.15 of UPEPA because it "creates a mechanism for a defendant to resolve a case pre-trial, much like Federal Rules of Civil Procedure 12 and 56."); *Henrich v. Colby's Crew Rescue*, No. CV 25-4961, 2026 WL 839119, at *8 (E.D. Pa. Mar. 26, 2026) (explaining that Section 8340.15 does not apply in federal court because it offers a mechanism to resolve a case pre-trial that conflicts with Rule 12(b)(6)).

*Second*, even if an *Erie* inquiry were necessary here, the result would be a conclusion that the federal rules govern and Section 8340.15 does not. This Court has developed a three-prong test for determining whether a state law is substantive or procedural for *Erie* purposes: (1) "whether there is a direct collision between a federal rule and the state law rule that the court is being urged to apply;" (2) "whether the state law is outcome-determinative

---

[1] A Federal Rule is valid under the Rules Enabling Act so long as it "really regulates procedure." *Berk*, 146 S. Ct. at 557 (quoting *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14 (1941)). The Supreme Court has "rejected every statutory challenge to a Federal Rule that has come before [it]." *Id.* at 556 (quoting *Shady Grove Orthopedic Associates, P. A. v. Allstate Ins. Co.*, 559 U.S. 393, 407 (2010)). Rules 12 and 56 are valid under the Rules Enabling Act because they regulate procedure for moving to dismiss a complaint and moving for summary judgment. Defendant does not argue otherwise.

and whether failure to apply the state law would frustrate the twin aims of the *Erie* Rule to discourage forum shopping and avoid inequitable administration of the law"; and (3) "whether any countervailing federal interests prevent the state law from being applied in federal court." *Liggon-Redding v. Est. of Sugarman*, 659 F.3d 258, 262 (3d Cir. 2011).

Here, all three considerations support finding that Section 8340.15 is procedural, not substantive. As a starting point, Rules 12 and 56 form an "'integrated program' for determining whether to grant pre-trial judgment in cases in federal court." *Jakes*, 782 F. Supp. 3d at 218. At the pleadings stage, there is "only one ground for dismissal based on the merits: 'failure to state a claim upon which relief can be granted.'" *Berk*, 146 S. Ct. at 553 (quoting Fed. R. Civ. P. 12(b)(6)). After the nonmovant has been given "adequate time for discovery," a motion for summary judgment may be brought under Rule 56, thereby "putting a plaintiff to his proof." *Id.* at 555 (quoting *Celotex*, 477 U.S. at 322)). By contrast, Section 8340.15 does not provide a procedural mechanism for challenging a complaint. (That provision is found in Section 8340.16, which is inoperative and which Defendant does not invoke in his motion.) Section 8340.15 instead provides a legal standard to be used in evaluating a complaint. It holds that a complaint is legally insufficient if any

18

of three conditions apply: (1) the plaintiff fails to "state a cause of action upon which relief can be granted," (2) the plaintiff fails to "establish a prima facie case as to each element of the cause of action," or (3) "there is no genuine issue as to any material fact, and the person against whom the cause of action based on protected public expression has been asserted is entitled to judgment as a matter of law in whole or in part." 42 Pa. C.S. § 8340.15. Of course, these prongs mirror the federal rules. The third prong mirrors the standard for summary judgment found in Rule 56. *See* Fed. R. Civ. P. 56. Section 8340.15 therefore would permit a defendant to put a plaintiff to his proof earlier in litigation than the Federal Rules otherwise allow. As *Jakes* explained:

> This section permits the Court to consider whether there are genuine issues of material fact, and seemingly requires the Court to look outside the pleadings to other evidence and documents submitted by the parties. It imposes evidentiary weighing requirements not found in the Federal Rules and operates largely without pre-decisional discovery.

*Jakes*, 782 F. Supp. 3d at 219.

Section 8340.15 also fails the next test set forth in *Liggon-Redding*. Section 8340.15 is not an outcome-determinative rule because "[t]he substantive free speech rights underlying the statute exist entirely

19

independent of § 8340.15." *Jakes*, 782 F. Supp. 3d at 219. For example, in this case, the District Court already determined that Plaintiffs have stated a claim for defamation and false light when it denied Defendant's Rule 12(b)(6) motion on the merits. Appx37. Section 8340.15 does not purport to change the elements of defamation or false light under Pennsylvania law. Defendant likewise has conceded that the outcome of any motion to dismiss brought under Section 8340.15 and Rule 12 would be the same because the legal standards to be applied are identical. Appx4.

Section 8340.15 also fails the final test set forth in *Liggon-Redding* because there exists a strong federal interest in having a uniform procedure for seeking dismissal of a civil claim in federal courts. "[A]pplying exotic state procedural rules" is harmful to our federal system because it "of necessity, disrupt[s] the comprehensive scheme embodied in the Federal Rules, our jurisdictional statutes and Supreme Court interpretations thereof." *Makaeff*, 715 F.3d at 275 (Kozinski, J., concurring). Federal courts know what Rules 12 and 56 say and how to apply them in a given case. There is no decisional law to guide a court when it is presented with a motion to dismiss under Section 8340.15 — to say nothing of the patchwork of other

anti-SLAPP laws that have been enacted in dozens of states across the country.

In sum, the Court need not engage an *Erie* analysis because Rules 12 and 56 displace state mechanisms for challenging a complaint pre-trial and because Defendant's motion was procedurally defective even under PA-UPEPA. But if the Court feels inclined to engage in a traditional *Erie* analysis, all signs point to a conclusion that Section 8340.15 of UPEPA is procedural and not applicable in federal court. For all these reasons, the district court properly denied Defendant's motion.

### 4. Defendant's contrary arguments do not justify reversal of the district court's decision.

Defendant's arguments do not undermine the district court's decision. *First*, Defendant argues that a district court should not have applied the federal rules because Section 8340.15 is "identical" to, or does not "flatly contradict" federal rules. *See* Appellant Brief at 22-23, citing *Shady Grove*, 559 U.S. at 405. This argument invites the Court to apply the wrong standard. The question is not whether the state rule is similar to the federal rule. The federal rule governs if it "answers the question in dispute." *Berk*, 607 U.S. at 192; *Shady Grove*, 559 U.S. at 398. Rules 12 answers the question in dispute

here—namely, what legal standard and procedure governs motions to dismiss in federal court.

*Second*, Defendant argues that Section 8340.15 answers a different question than federal rules because it "attaches substantive consequences" to the pleading standard. *See* Appellant Brief at 24. This argument is foreclosed by *Berk*, which makes clear that whether a state law conveys a substantive right or fulfills a substantive purpose makes no difference to the core analysis of whether the federal law answers the question in dispute. *See Berk*, 607 U.S. at 192 & 199, quoting *Shady Grove*, 559 U.S. at 409.

*Third*, Defendant's brief plays a shell game. On one hand, Defendant renounces any reliance on Rule 12(b)(6). On the other hand, he argues that the district court should have treated his motion just like a Rule 12(b)(6) motion because Section 8340.15(1)(ii) is a "Rule 12(b)(6) equivalent provision." Appellant Brief at 25. Once again, Section 8340.15(1)(ii) does not provide for dismissal of a complaint. It states as follows:

> "A person is immune from civil liability for a cause of action based on protected public expression if any of the following paragraphs apply: (1) the party asserting the cause of action based on protected public expression fails to: . . . (ii) state a cause of action upon which relief can be granted."

42 Pa.C.S. § 8340.15(1)(ii). This section nowhere purports to create a mechanism for moving to dismiss—unlike Rule 12(b), which provides that a party "may assert" the defense of failure to state a claim "by motion" and sets forth the timing for doing so. Fed. R. Civ. P. 12(b)(6). The equivalent provision of PA-UPEPA is Section 8340.16(a), which provides that "[a] party may file a special motion for dismissal of or judgment on a cause of action, or part of a cause of action, based on a party's protected public expression immunity." 42 Pa.C.S. § 8340.16(a). But Defendant does not invoke Section 8340.16, which is unconstitutional anyway under Article V of the Pennsylvania Constitution.

*Fourth*, Defendant wrongly argues that the Court should "sever" the summary judgment standard found in Section 8340.15(2) from the motion to dismiss standard found in Section 8340.15(1) and apply only the latter subsection. Defendant attempts to refashion Section 8340.15 so that it mirrors Rule 12(b)(6) by stripping out conflicting portions of the statute. But as the Supreme Court explained in *Berk*, a defendant may not "magically dispel the conflict" between state and federal law by attempting to "rewrite [state] law." *Id.* at 555. Here, as in *Berk*, Defendant takes impermissible "creative license" with PA-UPEPA but at no point does Defendant undermine the

23

district court's core point that Rule 12 and 56 are exactly on point and hence PA-UPEPA does not apply. *Id.*

Even before *Berk*, Defendant's creative-rewriting approach had been rejected by circuit courts when construing anti-SLAPP motions. For example, the District of Columbia's anti-SLAPP statute similarly combines both the Rule 12 and Rule 56 standards. In *Abbas*, the defendant urged the D.C. Circuit to construe that anti-SLAPP statute so that it is identical to the federal standard and apply it in federal court on grounds that "state rules that answer the same question *in the same way* as the Federal Rules are not preempted." *Abbas*, 783 F.3d at 1334. The D.C. Circuit declined to "re-write the special motion to dismiss provision" to harmonize it with the federal rules, especially where the federal rules are exactly on point and hence govern as a threshold matter. *Id.*; *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018) (the "[Federal] Rules are sufficiently broad . . . to control the issue before the court, thereby leaving no room for the operation of the motion-to-strike procedure") (internal quotation marks omitted); *La Liberte v. Reid*, 966 F.3d 79, 87 (2d Cir. 2020) ("[F]ederal courts must apply Rules 12 and 56 instead of California's special motion to strike").

24

*Fifth*, Defendant argues that an *Erie* analysis should include "deference to state-law judgment" and should aim to discourage "forum shopping." Op. Br. at 32–36. As a starting point, the district court did not even need to engage in any *Erie* analysis to decide Defendant's motion given the direct applicability of the Federal Rules of Civil Procedure. *Berk*, 146 S. Ct. at 552 ("[W]hen a Federal Rule of Civil Procedure is on point, a federal court bypasses *Erie*'s inquiry altogether."). Regardless, the district court's decision not to apply Section 8340.15 was correct even from a "forum-shopping" standpoint because Pennsylvania state courts would *also* not apply Section 8340.15. Under the Pennsylvania Constitution, only the Supreme Court of Pennsylvania can promulgate a rule that governs practice in Pennsylvania courts. *See* PA. CONST. art. V, § 10(c) (the Supreme Court of Pennsylvania has exclusive authority "to prescribe general rules governing practice, procedure and the conduct of all courts"); *See N.-Cent. Pennsylvania Trial Laws. Ass'n v. Weaver*, 827 A.2d 550, 559 (Pa. Cmwlth. 2003), *as amended* (June 25, 2003) (only the Supreme Court of Pennsylvania can enact procedural rules); *Hernandez*, 2026 WL 32563, at *4 (same). Until the Pennsylvania Supreme Court takes action, Section 8340.15 (and Section 8340.16) have no applicability in Pennsylvania law. Pennsylvania courts someday may

25

entertain "special motions" for resolving PA-UPEPA issues. They don't right now. In the meantime, it was entirely appropriate for the district court to apply federal law over a purported state-law procedural system that doesn't even exist under state law. Doing so does not create any forum shopping issue, where Section 8340.15 is not applicable in either federal or state court.

**5.    The amicus briefs do not supply a basis for reversal.**

Two groups of amici have filed briefs addressing UPEPA's application in federal court. Neither supports Defendant's position. If anything, each confirms why the district court's order should stand.

**The ACLU brief.** The American Civil Liberties Union of Pennsylvania, joined by various other organizations, filed an amicus brief in support of neither party. The ACLU argues that "if [PA-UPEPA's] protections are asserted through a proper motion under the Federal Rules . . . its immunity and fee-shifting provisions should be applied in federal court." ACLU Br. at 1. The trouble for Defendant is that he did not file a motion under the Federal Rules. He renounced any reliance on the Federal Rules in his motion. Thus, under the ACLU's reasoning, Defendant's motion was properly denied by the district court because it was procedurally defective.

The ACLU all but acknowledges that Defendant's motion was procedurally improper. The ACLU brief notes that Defendant "did not move to dismiss pursuant to Rule 12(b)(6)" and instead "explicitly renounce[d] any reliance on the Federal Rules of Civil Procedure." *Id.* at 2 (quotation omitted). Nor did Defendant move under PA-UPEPA's own procedural provisions, "as he conceded those provisions were not in effect." *Id.* The ACLU describes defendant's "continued crypticness on this question" as causing "procedural murkiness," and "unnecessarily complicat[ing] the issues presented." *Id.* at 3. Following the ACLU's reasoning, there is a straightforward way for the Court to cut this gordian knot: simply hold that any motion to dismiss must be brought "through a proper motion under the Federal Rules" *Id.* at 1—that is, Rule 12. Because Defendant failed to do so, the district court properly denied Defendant's procedurally improper motion. To resolve this appeal, the Court need not wade into any "procedural murkiness." *Id.* at 3. Rather, the case can continue to another procedural stage. Defendant can file another dispositive motion at summary judgment.

**The Attorney General brief.** Eighteen state attorneys general (the "State AGs") filed in support of Defendant. The State AGs' overarching

argument is that "[f]ederalism must guide this Court's inquiry." State AG Br. at 5. The brief relies heavily on Justice Ginsburg's dissent in *Shady Grove*, which urged an approach to *Erie* that would construe "the federal rules to avoid conflict with important state regulatory policies." *Id.* at 11 (quoting *Shady Grove*, 559 U.S. at 439, 441 (Ginsburg, J., dissenting).

The trouble for *amici* is that Justice Ginsburg's dissent is just that—a dissent. The controlling opinion in *Shady Grove* rejected this approach, writing that "[t]he dissent's approach of determining whether state and federal rules conflict based on the subjective intentions of the state legislature is an enterprise destined to produce confusion worse confounded." *Id.* at 406 (quotation omitted). The plurality's holding was recently reaffirmed in *Berk v. Choy*, which held that "when a Federal Rule of Civil Procedure is on point, a federal court bypasses *Erie*'s inquiry altogether" and applies the Rule irrespective of any countervailing state interest. *Berk*, 146 S. Ct. at 552.

While the State AGs emphasize the importance of state sovereignty, they fail to acknowledge that Pennsylvania courts would *also* not apply PA-UPEPA in this case. That is because Pennsylvania's Constitution vests the power to prescribe rules of judicial procedure exclusively in the

28

Pennsylvania Supreme Court. Pa. Const. art. V, § 10(c).[2] In turn, the Pennsylvania Superior Court has held that "UPEPA is clearly procedural in nature." *Hernandez*, 2026 WL 32563, at *4. Thus, a motion cannot be brought under PA-UPEPA because the Pennsylvania Supreme Court has not promulgated a rule authorizing such a motion. *Id.* "Such a law may be fine in other States" (including, perhaps, the states that signed on to the State AG Brief) "but the UPEPA's constitutional viability is, at best, questionable in this Commonwealth." *Id.*

The State AGs urge this Court to respect state sovereignty, yet they argue for (1) treating a Pennsylvania statute as substantive where Pennsylvania itself deems the statute "clearly procedural," and (2) bypassing Pennsylvania's constitutional requirement that all such rules

---

[2] Under the Pennsylvania Constitution, the Supreme Court of Pennsylvania has exclusive authority "to prescribe general rules governing practice, procedure and the conduct of all courts." PA. CONST. art. V, § 10(c). Absent action by the Supreme Court to prescribe a rule, no special motion even exists in Pennsylvania law. *See North-Central Pennsylvania Trial Lawyers Association v. Weaver*, 827 A.2d 550, 559 (Pa. Cmwlth. 2003). As of this writing, the Pennsylvania Supreme Court has not promulgated any rule creating a special motion to dismiss that would operationalize PA-UPEPA. The General Assembly's procedural construct amounts to a proposal that the Supreme Court may or may not consider.

must be promulgated by the Pennsylvania Supreme Court. If one takes seriously the federalism theme that the State AGs advance, the result must be respect for the Pennsylvania constitution and acknowledgment that the Pennsylvania General Assembly lacks constitutional power to enact rules of procedure and that procedural dimensions of PA-UPEPA are inoperative until the Pennsylvania Supreme Court promulgates a rule operationalizing the concepts contained in the statute.[3]

## B.    The district court's order does not qualify as a collateral order.

### 1.    Legal background

"The denial of a motion to dismiss does not end the litigation and ordinarily is not a final order." *Petróleos Mexicanos Refinación v. M/T King A (ex-Tbilisi)*, 377 F.3d 329, 333 (3d Cir. 2004) (quoting *Bell Atlantic–Pa., Inc. v. Pa. Pub. Util. Comm'n,* 273 F.3d 337, 343 (3d Cir. 2001)). "The collateral order doctrine . . . provides a narrow exception to the general rule permitting appellate review only of final orders." *Id.* at 334 (quoting *In re Ford Motor Co.,* 110 F.3d 954, 958 (3d Cir. 1997)). Under this doctrine, an interlocutory

---

[3] Pennsylvania's Attorney General David Sunday did not join the amicus brief of the State AGs.

order is appealable if: (1) it "conclusively determine[d] the disputed question"; (2) it "resolve[d] an important issue completely separate from the merits of the action"; and (3) it is "effectively unreviewable on appeal from a final judgment." *Graber v. Doe II*, 59 F.4th 603, 608 (3d Cir. 2023). "The Supreme Court has described these elements as 'stringent' to ensure that the collateral order doctrine does not 'overpower the substantial finality interests § 1291 is meant to further.'" *Id.* (quoting *Will v. Hallock*, 546 U.S. 345, 349–350 (2006)). "If any one prong is not satisfied, jurisdiction is defeated." *Pierce v. Blaine*, 467 F.3d 362, 369 (3d Cir. 2006).

The second prong of the collateral order doctrine requires that the issue under review be "important in a jurisprudential sense." *In re Search of Elec. Commc'ns in the Acct. of chakafattah gmail.com at Internet Serv. Provider Google, Inc.*, 802 F.3d 516, 524 (3d Cir. 2015). The Court does not engage in "individualized jurisdictional inquiry" and instead focuses on "the entire category to which a claim belongs." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 107 (2009). Thus, the mere "chance that the litigation at hand might be speeded, or a particular justice averted, does not provide a basis" for jurisdiction under the collateral order doctrine especially where "the class of claims, taken as a whole, can be adequately vindicated by other means." *Id.*

31

(internal quotation marks and alterations omitted). The question must present "a serious and unsettled question" to justify the exceptional review. *Nixon v. Fitzgerald*, 457 U.S. 731, 742 (1982).

Under the "importance" prong, the issue on appeal must be "completely separate from the merits of the action." *Graber*, 59 F.4th at 608. *Graber* illustrates this point. There, a Philadelphia police officer moved to dismiss a plaintiff's *Bivens* claim for failure to state a claim and on grounds of qualified immunity. The district court denied the motion without prejudice for the plaintiff to conduct discovery. The officer appealed the order relating to the failure to state a claim under Rule 12(b)(6) but did not seek appeal on the issue of qualified immunity. *Id.* at 607. This Court dismissed the appeal for lack of appellate jurisdiction, explaining that *Bivens* is not an immunity doctrine and that a challenge that "there is no cause of action under *Bivens* is simply a defense to liability, which can be effectively reviewed after the entry of final judgment." *Id.* at 609-10. The Court added that pursuing a defense to liability is not the same as seeking judgment based on an *a priori* immunity from suit, which provides an entitlement not to even to be subject to litigation. *Id.* at 610.

Under the third prong of the collateral order doctrine, a court considers whether the order is effectively unreviewable on appeal through normal channels. This question is assessed by reference to the "value" of the interest that the appellant claims will be "lost through rigorous application of a final judgment requirement." *Mohawk Indus.*, 558 U.S. at 107. The standard is high. As *Mohawk* explained, "[t]hat a ruling may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment . . . has never sufficed." *Id.* (internal quotation marks omitted. "[T]he decisive consideration is whether delaying review until the entry of final judgment would imperil a substantial public interest or some particular value of a high order." *Id.* (internal quotation marks omitted). "[S]imply abbreviating litigation" is not important enough for immediate appeal. *Will*, 546 U.S. at 353; *Robinson v. Hartzell Propeller, Inc.*, 454 F.3d 163, 168 (3d Cir. 2006) (a defendant's characterization of the right as irreparably lost does not suffice to demonstrate that the right is irreparably lost).

In the context of "immunity" claims, an order denying a claim of immunity is only unreviewable on appeal from final judgment if it involves an immunity that "entails '*an immunity from suit* rather than a mere defense to liability." *We, Inc.*, 174 F.3d at 325 (quoting *Mitchell v. Forsyth*, 472 U.S. 511,

33

526 (1985)) (emphasis in original). "The Supreme Court has repeatedly urged courts to employ caution and restraint, however, in reviewing claims of a right not to stand trial." *Id.* Accordingly, the Third Circuit has declined to extend the doctrine to "private party immunity," such as immunity under the *Noerr-Pennington* doctrine. *Robinson*, 454 F.3d at 172. Only immunities that protect "public officials . . . carrying out the discretionary functions of their office," such as absolute, qualified, and Eleventh Amendment immunity, are entitled to interlocutory review. *Id.* at 173. The Supreme Court recently clarified that a legal protection does not qualify as an immunity for purposes of the collateral order doctrine if "it will never shield unlawful conduct, in the way that all immunities do." *Geo Group*, 607 U.S. at 449.

### 2.    The order does not meet all prongs of the collateral order doctrine.

This Court lacks appellate jurisdiction because the district court's order does not satisfy all prongs of the collateral order doctrine. The order does not involve an important issue that is completely separate from the merits. And the order is not effectively unreviewable on appeal from a final judgment.

### a. The order does not involve an important issue that is completely separate from the merits of the action.

The district court's order does not meet the second prong of the collateral order doctrine for several reasons.

*First*, the Court never reached the question of immunity. Rather, the district court concluded that PA-UPEPA does not apply in federal court, and thus, never made any decision concerning immunity under PA-UPEPA. The district court never even considered the question. As such, the June 27 order did not reach any assertion that Defendant was "immune" under PA-UPEPA.

*Second*, even if immunity had been on the table, a determination of whether a defendant is immune under Section 8340.15 definitionally involves an assessment of the merits. As set forth above, Section 8340.15 *only* applies if a claim is found to be non-meritorious, either because (1) the plaintiff fails to "establish a prima facie case," (2) the complaint fails to "state a cause of action upon which relief can be granted," or (3) "there is no genuine issue as to any material fact and the [defendant] . . . is entitled to judgment as a matter of law." 42 Pa.C.S. § 8340.15. PA-UPEPA does not protect a defendant from having to litigate the merits of the underlying claim

35

as a threshold matter. It *requires* merits determination before any consideration of immunity ripens.

In *Geo Group*, the Supreme Court addressed when denial of a motion to dismiss is immediately appealable under the collateral order doctrine. The defendant argued that, as a federal contractor, it was entitled to immunity from suit. The Court rejected the characterization of federal contractor protections as an "immunity." The Court explained that federal contractor protections are better understood as a defense to liability, not an immunity from suit, for purposes of the collateral order doctrine. That is because they "will never shield unlawful conduct, in the way that all immunities do." *Geo Group*, 607 U.S. at 449.

The same reasoning applies here. The "immunity" afforded by Section 8340.15 does not trigger the collateral order doctrine because it does not operate independently of the merits. Instead, PA-UPEPA's protections apply only if the court determines that the defendant's conduct was lawful—either because the complaint fails to state a claim or because there is no genuine dispute of material fact and the defendant is entitled to judgment as a matter of law.

Because Section 8340.15 turns on whether a claim is meritorious, it is not "completely separate" from the merits. Defendant's motion asked the district court to conduct a merits analysis with down-stream immunity as the potential prize depending on how the merits analysis is decided. The dismissal motion does not raise issues separate from the merits. It addresses the heart of the case.

> **b.　The order is not effectively unreviewable after final judgment.**

The denial of immunity is effectively unreviewable on appeal from a final judgment only if the "immunity protects . . . the right not to be subjected to trial." *Forsyth v. Kleindienst*, 599 F.2d 1203, 1209 (3d Cir. 1979). For example, absolute immunity protects the right not to stand trial and is thus "effectively unreviewable on appeal." *Id.* However, the Supreme Court has repeatedly cautioned that "[t]here is a 'crucial distinction between a right not to be tried and a right whose remedy requires the dismissal of charges.'" *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 801 (1989) (quoting *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 269 (1982)). Accordingly, this Court has held that only immunities protecting "public officials . . . carrying out the discretionary functions of their office," such as absolute, qualified,

and Eleventh Amendment immunity, are entitled to interlocutory review. *Robinson*, 454 F.3d at 173. "[T]he same public policy rationale does not extend to whether a private party defendant should be forced to wait until after a final judgment to remedy an incorrect decision." *Id.*[4]

For example, in *We, Inc.*, the plaintiff filed suit against the University of Pennsylvania for reporting suspicious activity occurring on the plaintiff's properties to the City of Philadelphia. *We, Inc.*, 174 F.3d at 324. The University moved for summary judgment, arguing that it was immune

---

[4] While Defendant is currently a public official, Plaintiffs' claims are brought against him only in his individual capacity for conduct he engaged in while he was a private citizen. *See Mohawk Indus.*, 558 U.S. at 101 (noting that for purposes of the collateral order doctrine, "the Court does not engage in an individualized jurisdictional inquiry but focuses on the entire category of which a claim belongs.") (internal citations and quotation marks omitted). Defendant does not contend that he is currently immune from suit due to his role as President of the United States, nor could he. Defendant is a frequent civil litigation plaintiff. *See*, *Donald J. Trump, et al.* v. *Paramount Global*, *et al.*, No. 2:24-cv-00236-Z (N.D. Tex.); *Donald J. Trump, et al.* v. *J. Ann Selzer, et al.*, No. 4:24-cv-449-RGE-WPK (S.D. Iowa). Plainly Defendant does not believe he is prevented by the strictures of his office from engaging in civil litigation. This accords with the Supreme Court's ruling in *Clinton v. Jones*, 520 U.S. 681, 708 (1997) ("[I]t was an abuse of discretion for the District Court to defer the trial until after the President leaves office. . . . [D]elaying trial would increase the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts.").

under the *Noerr-Pennington* doctrine, which provides immunity to citizens' petitioning activities protected by the First Amendment. *Id.* at 326–327. The district court denied summary judgment and the University appealed under the collateral order doctrine. The University "liken[ed] *Noerr-Pennington* immunity to the absolute and qualified immunity enjoyed by public officials, the denial of which is immediately appealable under [the collateral order] doctrine." *Id.* at 325.

This Court dismissed the appeal for lack of jurisdiction. *Id.* at 330. The Court reasoned that "[c]itizens who exercise their First Amendment rights of free speech and free press enjoy significant protection from defamation liability in order to prevent undue chill on the exercise of those rights," and that "an immunity *from suit* [is not] necessary to prevent an unacceptable chill of those First Amendment rights." *Id.* at 327 (emphasis in original). Thus, the Court held that "[w]hile of course there is value—to all but the most unusual litigant—in triumphing before trial, the interest protected by the *Noerr-Pennington* doctrine can be fully vindicated after trial. . . . [A]n order denying *Noerr-Pennington* immunity is effectively reviewable on

39

appeal from a final judgment, and thus is not an appealable collateral order."

*Id.* (internal citations and quotation marks omitted).[5]

This case is on all fours with *We, Inc.* Like the *Noerr-Pennington* doctrine, UPEPA "grants immunity to those groups or parties exercising the rights to protected public expression" enshrined in the First Amendment to prevent those rights from being "chilled through abuse of the judicial process." 42 Pa.C.S. § 8340.12. And like the *Noerr-Pennington* doctrine, UPEPA confers immunity "from civil liability," rather than immunity from suit. 42 Pa.C.S. § 8340.15. Under *We, Inc.*, an order denying a defendant's claimed immunity under UPEPA is therefore "effectively reviewable on

---

5 In the district court, Defendant has been afforded all the rigorous substantive protections available to defamation defendants. The district court nevertheless correctly found that the complaint was legally sufficient because, among other things (1) Defendant's statements were capable of a defamatory meaning, (2) Defendant's statements were not mere statements of opinion or political rhetoric; they were actionable statements of fact, (3) Plaintiffs have adequately alleged that Defendant acted with actual malice, (4) Defendant failed to demonstrate that his statements were substantially true. While Plaintiffs have focused this brief on jurisdictional questions, as the Court requested, Plaintiffs are confident that the Amended Complaint states a claim for defamation, false light, and IIED, and would welcome a review on the merits.

appeal from a final judgment and thus is not an appealable collateral order."
*We, Inc.*, 174 F.3d at 330.

*Geo Group* reinforces this conclusion. As discussed above, a determination under Section 8340.15 turns on a merits determination. "The right that a merits defense affords is to a finding of non-liability. And that right . . . is fully vindicable on appeal from a final judgment." *Geo Group*, 607 U.S. at 451.

It bears reminder that, even if this court reversed the district court's order, this would not terminate the litigation. Success on appeal would trigger a remand back to the district court, which then would have to assess the merits of Plaintiffs' claims under a PA-UPEPA dispositive motion rubric. In other words, this case will continue even if Defendant is right about PA-UPEPA's applicability. This reality underlines that no public interest is imperiled and no private interest is compromised by declining to provide Defendant with a special right of appeal.

**3.    Defendant's statement of jurisdiction wrongly suggests the appeal implicates an immunity question.**

Defendant claims that the trial court's order is a collateral order based on several arguments, none of which support the exercise of this Court's

appellate jurisdiction. *First*, Defendant says that the order constituted the "denial of immunity." *See* Appellant Brief at 7-8. But the district court did not reach the issue of immunity under PA-UPEPA. The district court denied Defendant's motion on procedural grounds based on the applicability of Federal Rules of Civil Procedure and the non-applicability of PA-UPEPA. Defendant's argument runs ahead of the narrow decision the district court actually made regarding the strictly procedural dimensions of Defendant's motion. Appx7-15.

*Second*, Defendant claims entitlement to immediate appeal on the basis that PA-UPEPA protects important First Amendment rights. *See* Appellant Brief at 8-9. This argument proves too much. No court has held that an order implicating speech is a collateral order on that basis alone. Rather, the order still must comport with the three-prong requirements of the collateral order doctrine. This Court's decision in *We, Inc.* is illustrative. There, the plaintiff sued the University of Pennsylvania for reporting the plaintiff's speech to the City of Philadelphia. *We, Inc.*, 174 F.3d at 324. The University moved for summary judgment based on a free speech defense under the *Noerr-Pennington* doctrine. *Id.* at 330. The Court explained that the First Amendment does not confer "absolute immunity" from litigation and that

"the protection afforded by *Noerr–Pennington* is no more absolute or extensive than that provided by other First Amendment guarantees." *Id.* at 327. Hence the Court ruled that the order denying the University's motion did not qualify as a collateral order. *Id.* at 330. *We, Inc.* underscores that orders are not collateral simply because they implicate the First Amendment.

*Third*, Defendant suggests that because PA-UPEPA contains an immediate appeal provision, PA-UPEPA determinations should be treated as collateral orders under federal law. *See* Appellant Brief at 9-11. Whether PA-UPEPA permits appeal as a matter of state law is irrelevant. The Pennsylvania General Assembly can expand the jurisdiction of the Pennsylvania courts; it cannot expand the jurisdiction of the federal courts. *See Pusey & Jones Co. v. Hanssen*, 261 U.S. 491, 497 (1923) (right to proceed in a federal court cannot be enlarged by a state statute).

*Finally*, Defendant misplaces reliance on *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659 (10th Cir. 2018); *Royalty Network, Inc. v. Harris*, 756 F.3d 1351 (11th Cir. 2014); *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138 (2d Cir. 2013); and *Godin v. Schencks*, 629 F.3d 79 (1st Cir. 2010). These decisions implicate differently framed state statutes and different questions on appeal. *Los Lobos*, *Liberty Synergetics*, and *Godin*

43

involve appeals from orders declining to apply the "special motion" procedures in New Mexico, California, and Georgia anti-SLAPP statutes. *Royalty Network* involves an appeal from an order declining to apply a requirement in the Georgia state statute to verify pleadings. None involved a circumstance where the state had yet to promulgate any "special motion" procedure to operationalize the immunity contained in its anti-SLAPP statute. And none involved a defendant moving to dismiss while renouncing both the state and federal procedures for doing so.

## VI.    CONCLUSION

The Court should dismiss the appeal for lack of jurisdiction or affirm the district court's order.

Respectfully submitted,


By:    /s/ Charles L. Becker
Shanin Specter
Charles L. Becker
**Kline & Specter, PC**
1525 Locust Street
Philadelphia, PA  19102
(215) 772-1000
*Attorneys for Appellees Yusef Salaam, Antron Brown, Kevin Richardson, Raymon Santana, and Korey Wise*

Dated:  July 28, 2026

## COMBINED CERTIFICATIONS

*Bar membership*. I am a member of the bar of the United States Court of Appeals for the Third Circuit.

*Word limit*. This document complies with the type-volume requirements of Fed. R. App. P. 32(a)(7)(B) because it contains 9,171 words as calculated with the word-counting feature of Microsoft Office, excluding the portions of the document exempted by Fed. R. App. P. 32(f).

*Typeface and typestyle*. This document complies with the typeface and typestyle requirements of Fed. R. App. P. 32(a)(5) because it has been prepared in 14-point Times Book Antiqua font, which is a proportionally spaced typeface, using Microsoft Word for Microsoft 365 (Version 2512).

*Identical copies*. The text of the electronic brief is identical to the text in the paper copies.

*Virus check*. The electronic brief has been scanned for viruses with Vipre Business software. No virus was detected by the software.

By:    /s/ Charles L. Becker
         Charles L. Becker

Dated:  July 28, 2026

## CERTIFICATE OF SERVICE

I certify that the foregoing was served via the Court's electronic case management system upon all counsel of record.


By:     /s/ Charles L. Becker
        Charles L. Becker


Dated: July 28, 2026