**No. 25-2230**

IN THE

# United States Court of Appeals for the Third Circuit

YUSEF SALAAM, ET AL.,

*Plaintiffs - Appellees*

v.

PRESIDENT DONALD J. TRUMP,

*Defendant - Appellant*

Appeal from the United States District Court for the Eastern District of Pennsylvania, No. 2:24-cv-05560, Hon. Wendy Beetlestone

## REPLY BRIEF FOR APPELLANT DONALD J. TRUMP

Caryn G. Schechtman
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, NY 10020
Tel. (212) 335-4500
caryn.schechtman@dlapiper.com

Josh Halpern
**JH LEGAL PLLC**
1100 H Street NW Suite 840
Washington, DC 20005
Tel. (610) 405-5531
jhalpern@jhlegalpllc.com

Karin M. Sweigart
Jesse D. Franklin-Murdock
**SWEIGART MURDOCK, LLP**
1160 Battery St., Ste. 100
San Francisco, CA 94111
Tel.: (415) 873-0123
karin.sweigart@sm-llp.com
jesse@sm-llp.com

Dated: September 1, 2026

*Counsel for Appellant President Donald J. Trump*

# TABLE OF CONTENTS

**Page**


INTRODUCTION .......... 5

ARGUMENT .......... 7

I. UPEPA'S IMMUNITY PROVISION DOES NOT CONFLICT WITH THE FEDERAL RULES .......... 7

A. Plaintiffs Do Not Defend the District Court's Erroneous Reasoning. .......... 8

B. Plaintiffs' Alternative Argument Fails Because UPEPA Supplements Rather Than Displaces the Governing Dismissal Procedures .......... 10

C. Section 8340.15(1)(ii) Establishes Substantive Immunity with Integrated Protections. .......... 12

II. THE COURT SHOULD EXERCISE JURISDICTION AND HOLD THAT UPEPA'S SUBSTANTIVE IMMUNITY APPLIES IN FEDERAL COURT. .......... 15

A. The District Court's Categorical Refusal to Recognize UPEPA Immunity in Federal Court Is an Appealable Collateral Order. .......... 16

B. The Court Should Reverse the District Court's Categorical Ruling. .......... 22

CONCLUSION .......... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbas v. Foreign Policy Grp., LLC*,
783 F.3d 1328 (D.C. Cir. 2015) .......... 11

*Abrams v. Lightolier Inc.*,
50 F.3d 1204 (3d Cir. 1995) .......... 12

*Ahmed v. Dragovich*,
297 F.3d 201 (3d Cir. 2002) .......... 23

*Berk v. Choy*,
607 U.S. 187 (2026) .......... 11

*Carbone v. Cable News Network, Inc.*,
910 F.3d 1345 (11th Cir. 2018) .......... 11

*Cohen v. Beneficial Indus. Loan Corp.*,
337 U.S. 541 (1949) .......... 21, 22

*Est. of Arrington v. Michael*,
738 F.3d 599 (3d Cir. 2013) .......... 20

*Ferri v. Ackerman*,
444 U.S. 193 (1979) .......... 13

*GEO Group, Inc. v. Menocal*,
607 U.S. 483 (2026) .......... 19

*Godin v. Schencks*,
629 F.3d 79 (1st Cir. 2010) .......... 17, 18, 21

*La Liberte v. Reid*,
966 F.3d 79 (2d Cir. 2020) .......... 11

*Lento Law Grp. PC v. Estrada*,
C.A. No. 25-2763, 2026 WL 2100471 (E.D. Pa. July 21, 2026) .......... *passim*

*Liberty Synergistics Inc. v. Microflo Ltd.*,
718 F.3d 138 (2d Cir. 2013) .................................................. 17, 18, 21

*Los Lobos Renewable Power, LLC v. Americulture, Inc.*,
885 F.3d 659 (10th Cir. 2018)................................................ 17, 18, 21

*NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*,
745 F.3d 742 (5th Cir. 2014)............................................................20

*Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*,
711 F.3d 1136 (9th Cir. 2013)..........................................................20

*Nuveen Mun. Tr. v. WithumSmith Brown, P.C.*,
692 F.3d 283 (3d Cir. 2012) ............................................................14

*Ortho Pharm. Corp. v. Amgen, Inc.*,
887 F.2d 460 (3d Cir. 1989) ............................................................23

*Paucek v. Shaulis*,
349 F.R.D. 498 (D.N.J. 2025)...........................................................12

*Praxis Props., Inc. v. Colonial Sav. Bank, S.L.A.*,
947 F.2d 49 (3d Cir. 1991) ..............................................................17

*Royalty Network, Inc. v. Harris*,
756 F.3d 1351 (11th Cir. 2014)............................................. 17, 18, 21

*Salaam v. Trump*,
C.A. No. 24-5560, 2025 WL 2375397 (E.D. Pa. Aug. 15,
2025)................................................................................... 14, 17, 19

*Shetty v. Lei*,
No. 2025-CV-2883-CI, 2026 LX 377022 (Pa. Ct. C.P.
Centre Cnty. Apr. 23, 2026)...................................................... 10, 15

*In re Tr. Under Deed of David P. Kulig Dated Jan. 12, 2001*,
175 A.3d 222 (Pa. 2017) ..................................................................13

*We, Inc. v. City of Philadelphia*,
174 F.3d 322 (3d Cir. 1999) ............................................................19

**Statutes**

42 Pa. Cons. Stat. § 8340.12 .......... 19

42 Pa. Cons. Stat. § 8340.13 .......... 13

42 Pa. Cons. Stat. § 8340.15 .......... *passim*

42 Pa. Cons. Stat. § 8340.15(1)(ii) .......... *passim*

42 Pa. Cons. Stat. § 8340.15(2) .......... 5, 8, 9

42 Pa. Cons. Stat. § 8340.16 .......... 18

42 Pa. Cons. Stat. § 8340.16(a) .......... 15

42 Pa. Cons. Stat. § 8340.16(c) .......... 10, 15

42 Pa. Cons. Stat. § 8340.17 .......... 13, 18, 19, 20

42 Pa. Cons. Stat. § 8340.18 .......... 13, 18, 22, 25

**Other Authorities**

Fed. R. Civ. P. 12 .......... *passim*

Fed. R. Civ. P. 12(b)(6) .......... *passim*

Fed. R. Civ. P. 12(c) .......... 24

Fed. R. Civ. P. 12(g)(2) .......... 24

Fed. R. Civ. P. 54(d)(2) .......... 12

Fed. R. Civ. P. 56 .......... 6, 8, 15, 24

Pa. R. Civ. P. 1028(a)(4) .......... 10, 15

## INTRODUCTION

Plaintiffs' response confirms that the district court invalidated UPEPA in federal court based on a conflict that does not exist. The President invoked Section 8340.15(1)(ii), which grants immunity when a plaintiff fails to state a claim. Plaintiffs now concede that this provision "mirrors" Rule 12(b)(6), applies the same pleading-stage standard, and therefore does not conflict with the Federal Rules. They do not defend the district court's actual reasoning, which instead relied on Section 8340.15(2)—a separate provision the President never invoked—to wrongly hold UPEPA categorically unavailable in federal court.

Unable to defend that ruling, Plaintiffs offer a novel theory on appeal. They claim, erroneously, that because Rule 12 supplies the federal procedure for testing legal sufficiency, Pennsylvania cannot attach substantive immunity to the same determination. But that collapses two distinct questions. Rule 12 governs how a federal court decides whether a complaint states a claim. UPEPA specifies the substantive consequences Pennsylvania attaches when a claim targeting protected public expression fails that test: immunity, fees, and related statutory protections. Nothing in the Federal Rules prevents those

provisions from operating together. *See Lento Law Grp. PC v. Estrada*, C.A. No. 25-2763, 2026 WL 2100471, at *11–16 (E.D. Pa. July 21, 2026).

Plaintiffs also fail on jurisdiction. The district court conclusively and erroneously held that UPEPA "cannot apply in federal court," denying the President a statutory immunity from suit on a threshold legal ground wholly separate from the merits. Every court of appeals to address the immediate appealability of similar anti-SLAPP orders has exercised collateral-order jurisdiction, and Plaintiffs identify no contrary appellate authority. Their fallback objection—that the President styled his motion under UPEPA rather than Rule 12—does not change what the district court actually decided or make its categorical *Erie* holding any less final.

Nor would declining review avoid the issue. The President can invoke the same immunity through Rule 12, Rule 56, or after judgment, and the district court has already announced, in error, that UPEPA is unavailable in federal court however the issue arises. Forcing another motion and another appeal would only postpone resolution of the same pure question of law that will inevitably return to this Court in this very case.

Further delay would be especially harmful in this case, where the sitting President is being forced to defend against a frivolous defamation suit over core political speech in a presidential debate. Plaintiffs wrongly seek damages over two sentences—including the President's statement that they "pled guilty" rather than "confessed" to a crime over three decades ago—and the district court has categorically and mistakenly denied the President the immunities intended to stop precisely this kind of suit. Plaintiffs do not defend the reasoning that produced that result, and their substitute theory cannot justify it. The Court should decide the question now and reverse.

## ARGUMENT

### I. UPEPA'S IMMUNITY PROVISION DOES NOT CONFLICT WITH THE FEDERAL RULES.

Plaintiffs' response all but concedes the conflict issue. They admit that Section 8340.15(1)(ii)—the only provision the President invoked—"mirrors" Rule 12(b)(6) and applies the same pleading-stage standard. So they abandon the district court's rationale and offer a new and equally flawed one: because Rule 12 supplies the federal procedure, they claim, Pennsylvania cannot attach immunity and fees to the same determination. That theory confuses procedure with substance and fails.

Rule 12 determines whether the complaint states a claim; UPEPA determines what Pennsylvania law provides when a claim targeting protected public expression does not. The two provisions work together, not against each other. *See Lento*, 2026 WL 2100471, at *14–15.

### A. Plaintiffs Do Not Defend the District Court's Erroneous Reasoning.

The district court erroneously found a conflict only by looking beyond the provision the President invoked. Section 8340.15(1)(ii) grants immunity when a plaintiff fails to "state a cause of action upon which relief can be granted." Rule 12(b)(6) uses the same standard. Plaintiffs now concede as much: they acknowledge that Section 8340.15(1)(ii) "mirror[s]" Rule 12(b)(6), and that the two provisions impose "identical" pleading-stage standards. Resp. 19–20. There is therefore no conflict between Rule 12 and the provision actually before the district court. *See Lento*, 2026 WL 2100471, at *14.

The district court reached the opposite, erroneous, conclusion only by turning to Section 8340.15(2), which tracks Rule 56 and was never invoked. The President relied solely on the pleadings, introduced no evidence, sought no factual findings, and never asked Plaintiffs to prove their claims under a summary-judgment standard. Yet the court

hypothesized that Section 8340.15(2) might permit such review before discovery and used that hypothetical conflict to wrongly declare UPEPA categorically unavailable in federal court. App. 10–14.

Plaintiffs do not defend that flawed reasoning. Instead, they falsely accuse the President of "rewriting" UPEPA by focusing on Section 8340.15(1)(ii). Resp. 23–24. But the statute itself makes each ground for immunity independently sufficient. Section 8340.15(1)(ii) operates when a claim fails the pleading-stage standard; Section 8340.15(2) operates under the summary-judgment standard. Plaintiffs thus fail to engage with the statute's actual structure. Op. Br. 28–30. Moreover, they point to "no authority that would suggest an 'all or nothing' standard governs the direct collision question." *Lento*, 2026 WL 2100471, at *13.

The error below was therefore straightforward: the district court incorrectly invalidated UPEPA based on a conflict with a provision the President never invoked, while the provision he did invoke concededly tracks Rule 12(b)(6). *See* ACLU *Amici* Br. 10–12 (Rule 12 and UPEPA "work in tandem"); States *Amici* Br. 19–20 (both "exist side by side" and should be applied harmoniously). Plaintiffs cannot preserve that ruling by pretending otherwise. This Court should reverse

### B. Plaintiffs' Alternative Argument Fails Because UPEPA Supplements Rather Than Displaces the Governing Dismissal Procedures.

Plaintiffs abandon the district court's conflict analysis and offer a new, erroneous theory: because Rule 12 governs dismissal, Section 8340.15(1)(ii) cannot govern immunity. Resp. 21–24. That is wrong, as the provisions answer different questions. Rule 12 supplies the procedure for deciding whether a complaint states a claim; UPEPA supplies the substantive consequences when a claim targeting protected public expression fails that test. As *Lento* explained, Section 8340.15 does not "purport[ ] to establish a procedure at all." 2026 WL 2100471, at *14. It creates "a substantive right—immunity from suit," with mandatory fees, while applying the same predicate standard as Rule 12. *Id.*

Pennsylvania follows the same model in state court: UPEPA expressly permits immunity to be asserted through "other pleadings and motions," § 8340.16(c), including Pennsylvania Rule of Civil Procedure 1028(a)(4), the state analogue to Rule 12(b)(6). *See Shetty v. Lei*, No. 2025-CV-2883-CI, 2026 LX 377022, at *10–13 (Pa. Ct. C.P. Centre Cnty. Apr. 23, 2026). The procedural rule decides legal sufficiency; UPEPA determines what follows.

Plaintiffs' cases involved something fundamentally different: state procedures that displaced the Federal Rules by imposing a heavier pleading-stage burden. *See Berk v. Choy*, 607 U.S. 187, 192–98 (2026) (requiring a medical-malpractice plaintiff to submit an expert affidavit and evidentiary support not required by Rules 8 and 12); *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1332–35 (D.C. Cir. 2015) (holding that the D.C. anti-SLAPP standard conflicted because it required plaintiffs to satisfy a burden "different from and more difficult" than Rule 12); *La Liberte v. Reid*, 966 F.3d 79, 85–88 (2d Cir. 2020) (requiring the plaintiff to show a probability of prevailing at the pleading stage); *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1348–57 (11th Cir. 2018) (same). UPEPA does not. Section 8340.15(1)(ii) mirrors Rule 12(b)(6), and its immunity and fee protections are not tied to success on a competing special motion. Indeed, *Abbas* itself distinguished a statute that simply makes fees available when a defendant prevails through ordinary federal procedures. 783 F.3d at 1335, 1337 n.5 (noting that the D.C. Act did not make fees available to parties obtaining dismissal "by other means, such as under Federal Rule 12(b)(6)"). Pennsylvania enacted exactly that kind of regime. *See Lento*, 2026 WL 2100471, at *14–15.

At bottom, Plaintiffs' theory—that state laws cannot apply through federal procedure—proves too much. State-law immunities, limitations rules, releases, damages rules, and fee entitlements are routinely enforced through federal procedural rules. *See Paucek v. Shaulis*, 349 F.R.D. 498, 516–17 (D.N.J. 2025) (recognizing that substantive state-law rights may be enforced through the Federal Rules); *cf. Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1224 (3d Cir. 1995) (holding that Rule 54(d)(2) supplies the federal procedure for obtaining attorneys' fees mandated by state law). So too here. Nothing in the Federal Rules extinguishes the substantive immunity Pennsylvania attaches to dismissal.

### C. Section 8340.15(1)(ii) Establishes Substantive Immunity with Integrated Protections.

The district court never reached the question whether UPEPA is substantive because it stopped at the supposed and nonexistent conflict with the Federal Rules. Once that threshold error is corrected, the remaining *Erie* issue is straightforward. Section 8340.15 is not a rule of procedure that tells a court how to decide whether a claim fails, but rather a substantive Pennsylvania law prescribing what follows from a dismissal: the defendant "is immune," with mandatory fees, immediate

review, and related statutory protections. §§ 8340.15, 8340.17–.18. Plaintiffs' contrary arguments fail for five independent reasons.

*First*, Plaintiffs wrongly dismiss UPEPA's immunity as mere "statutory nomenclature" and "downstream reward." Resp. 8, 12–13. But Pennsylvania did more than choose a label. It declared qualifying defendants "immune," made fees mandatory when immunity attaches, and provided immediate review so the speaker is not consumed by continued litigation. The official commentary confirms the point: UPEPA's protection is "substantive in nature" and protects defendants "from the burdens of trial, not merely from ultimate judgments of liability." § 8340.13, Unif. L. Cmt. 2; § 8340.17, Unif. L. Cmt. 1. Pennsylvania courts treat such official comments as powerful "evidence of legislative intent." *In re Tr. Under Deed of David P. Kulig Dated Jan. 12, 2001*, 175 A.3d 222, 230 (Pa. 2017).

*Second*, Plaintiffs wrongly argue that Section 8340.15 cannot be substantive because it does not alter the elements of defamation or false light. Resp. 19–20. That is wrong. A State may create a cause of action and separately define substantive defenses and immunities to it. *Ferri v. Ackerman*, 444 U.S. 193, 198 (1979). UPEPA does exactly that: it leaves

the tort elements intact while adding immunity, fee-shifting, and other statutory protections for claims targeting protected public expression. *See Salaam v. Trump*, C.A. No. 24-5560, 2025 WL 2375397, at *1 n.1 (E.D. Pa. Aug. 15, 2025).

*Third*, Plaintiffs wrongly argue that applying UPEPA would not change the outcome in federal court. Resp. 20. It plainly would. If UPEPA applies, the President receives immunity, mandatory fees and expenses, immediate review, and SLAPP-back relief. If it does not, all of those protections improperly disappear solely because Plaintiffs sued in federal court. That disparity creates the very forum-shopping incentive *Erie* forbids. *See Lento*, 2026 WL 2100471, at *16 (excluding UPEPA would encourage parties "seeking to silence their critics" to choose federal court); *Nuveen Mun. Tr. v. WithumSmith Brown, P.C.*, 692 F.3d 283, 302 (3d Cir. 2012) (the outcome-determinative inquiry serves the "twin aims" of discouraging forum shopping and avoiding inequitable administration of the laws).

*Fourth*, Plaintiffs attempt to argue that UPEPA cannot operate even in Pennsylvania court because the Pennsylvania Supreme Court has not promulgated the special-motion procedure contemplated by

Section 8340.16(a). Resp. 25–26. Wrong again. Section 8340.16(c) expressly preserves the assertion of UPEPA immunity through "other pleadings and motions"; and, on that basis, Pennsylvania courts already entertain UPEPA through Rule 1028(a)(4), the state analogue to Rule 12(b)(6). *See Shetty*, 2026 LX 377022, at *10–13. The absence of a special-motion rule therefore does not disable the immunity.

*Finally*, Plaintiffs try to invoke federal procedural uniformity. Resp. 20–21. But applying UPEPA leaves federal procedure untouched. Federal courts still use Rule 12 at the pleading stage, Rule 56 after discovery, and the ordinary federal rules thereafter. UPEPA simply supplies the substantive consequences when those federal standards are met. Plaintiffs' version of "uniformity" would instead make federal court the one forum in which Pennsylvania's immunity and fee rights vanish, which is obviously untenable.

## II. THE COURT SHOULD EXERCISE JURISDICTION AND HOLD THAT UPEPA'S SUBSTANTIVE IMMUNITY APPLIES IN FEDERAL COURT.

This Court has collateral-order jurisdiction. The district court conclusively and erroneously held that UPEPA "cannot apply in federal court," wrongly denying the President a statutory immunity from suit on

a purely legal ground wholly separate from the merits. App. 13. Because UPEPA protects against the burdens of litigation itself, that right cannot be vindicated after discovery and trial. Every court of appeals to consider materially similar anti-SLAPP orders has exercised immediate jurisdiction, and Plaintiffs identify no contrary authority.

Plaintiffs instead try to argue that the President invoked UPEPA rather than Rule 12(b)(6). But the district court did not deny the motion on procedural grounds; it reached and decided the *Erie* question categorically. That ruling requires no factual development and will control any renewed invocation of UPEPA. Forcing another motion and another appeal would serve no purpose. The issue is squarely presented and ripe for decision.

### A. The District Court's Categorical Refusal to Recognize UPEPA Immunity in Federal Court Is an Appealable Collateral Order.

Every court of appeals to consider the immediate appealability of an order refusing to apply materially similar state anti-SLAPP protections has exercised collateral-order jurisdiction. *See* Op. Br. 6 (collecting cases). Plaintiffs identify no contrary appellate authority.

Their reliance on collateral-order cases involving different rights cannot overcome the uniform authority addressing the kind of order at issue.

*First*, Plaintiffs wrongly contend that the district court never conclusively decided immunity. Resp. 35. The district court held categorically that Section 8340.15 "cannot apply in federal court." App. 13; *see Salaam*, 2025 WL 2375397, at *1 n.1. Nothing was left open for later consideration. *See Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1355 (11th Cir. 2014) (nothing left "open, unfinished, or inconclusive"); *Praxis Props., Inc. v. Colonial Sav. Bank, S.L.A.*, 947 F.2d 49, 56 (3d Cir. 1991) (order is conclusive when it resolves "the discrete legal question that is the subject of th[e] appeal"). A categorical holding that UPEPA is unavailable necessarily denies the immunity UPEPA provides. That is why the First, Second, Tenth, and Eleventh Circuits have treated materially identical anti-SLAPP rulings as conclusive collateral orders. *See Godin v. Schencks*, 629 F.3d 79, 85 (1st Cir. 2010); *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 151 (2d Cir. 2013); *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 668 (10th Cir. 2018); *Royalty Network*, 756 F.3d at 1357.

*Second*, Plaintiffs argue, incorrectly, that the order is intertwined with the merits. Resp. 35. It is not. This appeal does not ask whether Plaintiffs pleaded falsity, actual malice, damages, or any other element of their claims. It asks only whether Pennsylvania's statutory immunity applies in federal court—a threshold *Erie* question independent of the tort merits. The anti-SLAPP cases—all of which Plaintiffs fail to distinguish—treat that question as separate and also sufficiently important for collateral review. *See Royalty Network*, 756 F.3d at 1356 (issue "important" because it "implicates significant constitutional guarantees and values of an exceptionally high order; specifically, the right to freedom of speech"); *Godin*, 629 F.3d at 84 (same); *Liberty Synergistics*, 718 F.3d at 150–51 (same); *Los Lobos*, 885 F.3d at 665–66. So too here.

*Third*, Plaintiffs argue, in error, that post-judgment review is enough because UPEPA is merely a defense to liability. Resp. 37–43. The statute says otherwise. UPEPA declares qualifying defendants immune, stays litigation, authorizes immediate review, mandates fees and expenses, and provides SLAPP-back relief. §§ 8340.15–.18. Its official commentary confirms that these protections are designed to shield

defendants "from the burdens of trial, not merely from ultimate judgments of liability." § 8340.17, Unif. L. Cmt. 1. The district court itself recognized as much when it stayed proceedings based on UPEPA's "text and structure." *Salaam*, 2025 WL 2375397, at *1 n.1.

Plaintiffs' contrary reliance on *Noerr-Pennington* and *GEO Group* fails because those cases involved ordinary defenses to liability, not an express statutory right to avoid litigation. *See* Resp. 36, 38–41. *Noerr-Pennington* is a judge-made doctrine created to provide only "a defense to liability, not immunity from suit." *We, Inc. v. City of Philadelphia*, 174 F.3d 322, 328 (3d Cir. 1999). *GEO Group, Inc. v. Menocal* likewise involved a defense that did not create a right to avoid suit. 607 U.S. 438, 448–51 (2026). But UPEPA is different: the Pennsylvania legislature expressly identified lawsuits themselves—and the resulting "abuse of the judicial process"—as the harm, then declared qualifying defendants immune and backed that immunity with a stay, immediate appeal, mandatory fees and expenses, and SLAPP-back relief, in order to deter plaintiffs from filing frivolous suits like this one in the first place. §§ 8340.12(1)–(2), .15–.18. Where the legislature expressly creates protection from litigation itself, collateral review preserves the right the

statute grants. *See Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 711 F.3d 1136, 1140 (9th Cir. 2013) (anti-SLAPP protections are "in the nature of an immunity from suit"); *Est. of Arrington v. Michael*, 738 F.3d 599, 604 (3d Cir. 2013) (exercising collateral-order jurisdiction over a nongovernmental statutory immunity).

Plaintiffs also improperly discount UPEPA's express right to immediate appeal. Resp. 43. That key feature directly confirms that Pennsylvania meant to protect speakers from litigation itself. "[N]umerous courts have recognized that the absence or presence of interlocutory statutory review mechanisms at the state level informs the question of whether interlocutory appeal is permissible in federal courts." *NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*, 745 F.3d 742, 750 (5th Cir. 2014). Here, UPEPA expressly provides an immediate appeal. § 8340.17. That "demonstrates" that lawmakers intended protection "from the trial itself rather than merely from liability." *NCDR*, 745 F.3d at 750 (quoting *Godin*, 629 F.3d at 85).

Finally, Plaintiffs wrongly contend that jurisdiction is lacking because reversal would not end the case. Resp. 41. But that is true in every appeal asking whether a federal court may categorically refuse to

apply state anti-SLAPP protections. Reversal in those cases simply returns the matter to the district court to apply the statute, yet every court of appeals to address the question has exercised immediate review. *See, e.g.*, *Godin*, 629 F.3d at 83–85, 92 (exercising collateral-order jurisdiction, reversing, and remanding for further proceedings under Maine's anti-SLAPP statute); *Liberty Synergistics*, 718 F.3d at 145–51, 157 (same for California's); *see also Los Lobos*, 885 F.3d at 664–68 (exercising immediate review); *Royalty Network*, 756 F.3d at 1354–57 (same).

*Cohen* itself proves the point. There, the Court reviewed an interlocutory order concerning a New Jersey statute designed to deter abusive "strike suits" by requiring plaintiffs to post security for costs and fees. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 544–546 & n.1, 548 (1949). The underlying suit would continue either way. What mattered was that, if review waited, "the rights conferred by the statute" would be "lost, probably irreparably." *Id.* at 546. UPEPA presents the same problem: its stay, immediate appeal, fee shifting, and related protections are designed to operate before the defendant bears the very costs and pressure the statute seeks to prevent. *See Los Lobos*, 885 F.3d

at 667. If review is delayed until final judgment, UPEPA's deterrent effect is lost: Plaintiffs will have continued a meritless suit without facing the "prospect of having to financially reimburse" the President if they fail. § 8340.18, Unif. L. Cmt. 1. The fact that reversal would lead to further proceedings therefore does not defeat collateral-order jurisdiction; it is precisely why the threshold immunity question must be decided now.

All three *Cohen* requirements are satisfied. The district court conclusively determined that UPEPA cannot apply in federal court; that determination is important and wholly separate from the merits of Plaintiffs' claims; and it denied the President an immunity from the burdens of litigation that cannot be vindicated after final judgment. This Court has jurisdiction.

### B. The Court Should Reverse the District Court's Categorical Ruling.

Plaintiffs cannot avoid reversal by improperly recasting the order below as procedural. The district court did not deny the President's motion because he supposedly selected the wrong vehicle. It reached the *Erie* question, and held categorically, in error, that UPEPA "cannot apply

in federal court." App. 13. That holding is the basis of the order, it is wrong, and it must be reversed.

The district court wrongly resolved the question that matters here. While noting some uncertainty over the procedural mechanism invoked by the President, App. 9, the district court squarely held that Section 8340.15 "cannot apply in federal court," because it "directly collide[s]" with the Federal Rules. App. 13–14. That categorical *Erie* holding controlled the disposition below and is the ruling before this Court.

Further, the President's motion below should be treated according to its substance. The President sought dismissal at the pleading stage because Section 8340.15(1)(ii) makes him immune when the complaint fails to state a claim. Rule 12 supplies the federal vehicle for that relief. This Court has long looked to "substance and not . . . form" in characterizing motions. *Ortho Pharm. Corp. v. Amgen, Inc.*, 887 F.2d 460, 463 (3d Cir. 1989); *see Ahmed v. Dragovich*, 297 F.3d 201, 208 (3d Cir. 2002) (court is "free to recharacterize" a motion "to match the substance of the relief requested"). The President's motion was therefore, in substance, a Rule 12(b)(6) motion invoking UPEPA's identical dismissal standard for substantive immunity.

That conclusion also avoids a pointless procedural loop. Even if the Court declined to characterize the existing motion under Rule 12, the President remains free on remand to file a Rule 12(b)(6) or Rule 12(c) motion invoking Section 8340.15(1)(ii). *Cf.* Fed. R. Civ. P. 12(g)(2). The district court has already announced the (wrong) answer: UPEPA is categorically unavailable in federal court. That same (wrong) ruling would likely govern any later invocation of UPEPA under Rule 56 or any request for its mandatory fee protections. There is no reason to require another motion, another identical *Erie* ruling, and another appeal before correcting the error already squarely presented.

The proper disposition is reversal. Section 8340.15(1)(ii) does not conflict with Rule 12(b)(6); it attaches substantive immunity when the same legal-sufficiency standard is satisfied. On remand, the district court can apply Rule 12 to Plaintiffs' claims and, if they fail—as the President has powerfully argued they do—give effect to the immunity and fee consequences Pennsylvania law attaches to that result.

## CONCLUSION

The Court should exercise collateral-order jurisdiction, reverse the district court's holding that UPEPA does not apply in federal court, and

remand for adjudication of the President's immunity and fee entitlement under Sections 8340.15 and 8340.18.

Dated: September 1, 2026

Respectfully submitted,

*/s/Josh Halpern*

Josh Halpern
**JH LEGAL PLLC**
1100 H Street NW Suite 840
Washington, DC 20005
Tel. (610) 405-5531
jhalpern@jhlegalpllc.com

Caryn G. Schechtman
**DLA PIPER LLP (US)**
1251 Avenue of the Americas,
27th Floor
New York, NY 10020
Tel. (212) 335-4500
caryn.schechtman@dlapiper.com

Karin M. Sweigart
Jesse D. Franklin-Murdock
**Sweigart Murdock, LLP**
1160 Battery St., Ste. 100
San Francisco, CA 94111
Tel.: (415) 873-0123
karin.sweigart@sm-llp.com
jesse@sm-llp.com

*Counsel for President Donald J. Trump*

## COMBINED CERTIFICATE OF COMPLIANCE

I, Josh Halpern, certify:

***Bar Membership.*** Pursuant to this Court's Local Rule 28.3(d), I am a member of the bar of this Court.

***Electronic Filing.*** Pursuant to this Court's Local Rule 31.1(c), the text in the electronic copy of this brief is identical to the text in the paper copies of the brief filed with the Court. This document complies with the requirement of this Court's Local Rule 31.1(c) because this document was scanned for viruses using Microsoft Defender, and no viruses were detected.

***Word Count.*** This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 3782 words, excluding the parts of the brief exempted from that calculation under the Federal Rules of Appellate Procedure.

***Typeface and Type-style.*** This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using the Microsoft Word processing program in 14-point Century Schoolbook font.

Dated: September 1, 2026

*/s/ Josh Halpern*
Josh Halpern

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2026, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Third Circuit using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system.

*/s/ Josh Halpern*
Josh Halpern